UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**0 5 - 1 1 8 2 3 RCL** C.A. No. _____

|  |  |
|---|---|
| TECOGEN, INC., | ) |
| | ) |
| Plaintiff, | ) **MAGISTRATE JUDGE** _____ |
| | ) |
| v. | ) |
| | ) |
| AEGIS ENERGY SERVICES, INC., | ) |
| AEGENCO, INC. and AEGIS | ) |
| GENERATION COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## **COMPLAINT**

The Plaintiff, by its attorneys, complaining of the Defendants, respectfully alleges as follows:

### **PARTIES**

1.     The Plaintiff, Tecogen, Inc. ("Tecogen"), is a corporation organized under the laws of the State of Delaware with a principal place of business located at 45 First Avenue, Waltham, Massachusetts, 02451.

2.     Upon information and belief, the Defendant, Aegis Energy Services, Inc. ("Aegis Energy"), is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 2097 Riverdale Street, Springfield, Massachusetts, 01089.

3. Upon information and belief, the Defendant, Aegenco, Inc. ("Aegenco") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 2097 Riverdale Street, Springfield, Massachusetts, 01089.

4. Upon information and belief, the Defendant, Aegis Generation Company ("Aegis Generation"), is a company with a principal place of business located at 2097 Riverdale Street, Springfield, Massachusetts, 01089. Collectively, Aegis Energy, Aegenco and Aegis Generation shall be referred to as "Defendants" or the "Aegis Group."

## JURISDICTION AND VENUE

5. This is an action for: (i) copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"); (ii) patent infringement pursuant to the patent laws of the United States, 35 U.S.C. § 101 *et seq.* (the "Patent Act"); (iii) unfair and deceptive acts or practices and unfair competition under Massachusetts General Laws Chapter 93A; and (iv) substantial and related claims of copyright infringement under the common law.

6. This Court has jurisdiction over this action under 35 U.S.C. § 101 *et seq.*, 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331 and 1338 as this action involves substantial claims arising under the Patent Act and the Copyright Act, combined with substantial and related claims for unfair competition and unfair business practices under state law.

7. Each Defendant maintains a principle place of business in this District and, additionally, transacts business in this District and, therefore, this Court has personal jurisdiction over each of the Defendants.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a) and (b) as Defendants transact affairs and have regular and established places

-2-

of business in this District, and the claims allegedly arose and are continuing to occur within this District and elsewhere.

## FACTS COMMON TO ALL COUNTS

9.    Cogeneration refers to the process by which one fuel source, such as natural gas, is used to produce both electricity and thermal energy (heat). "Distributed generation" refers to the dispersion of the generation of electricity by use of efficient on-site power producers instead of by a single central power station.

10.    Tecogen operates in the distributed generation market and is a leading manufacturer of natural gas, engine-driven commercial and industrial cogeneration systems suitable for a variety of applications, including hospitals, nursing homes, and schools. Key features of Tecogen equipment include its heat recovery capability, remote monitoring and control through Tecogen's custom developed microprocessor and its associated computer program, and a low-emission engine that meets all current environmental standards in the U.S.

11.    As part of its cogeneration business, Tecogen designs, manufacturers, sells and services the TECOGEN® Cogeneration Module CM-75 Standard ("CM-75 Standard") and the CM-75 Low Emissions models ("CM-75 Low Emissions") (collectively, the "Tecogen Modules"). The Tecogen Modules are the product of years of research, development and innovation that began in 1977. Those development efforts eventually resulted in Tecogen's introduction in 1988 of the CM-75 High Output cogeneration module, followed by Tecogen's first low-emissions modules in 1990.

12.    Since 1992, Tecogen has focused its efforts exclusively on the 75 kW Tecogen Modules and the similar 60 kW product line. Among other innovations in these products, in

-3-

1998 Tecogen replaced the original microprocessor with a new custom developed, state-of-the-art remote monitoring and control system.

13.     Until recently, the Aegis Group did not design or build its own cogeneration modules. Rather, its business had consisted solely of designing, installing, maintaining, and operating modular cogeneration systems that used cogeneration modules designed and built by others. Prior to June 24, 2005, Aegis Energy had been, for over twenty (20) years, the exclusive distributor for Tecogen's Modules in Massachusetts and Connecticut. As such, for over twenty years, Aegis Energy had designed, installed and serviced cogeneration systems in Massachusetts and Connecticut that used Tecogen Modules.

14.     As of June 2005, neither Aegis Energy nor any of the other Defendants was an exclusive distributor for Tecogen Modules in the State of New York, south of Orange and Dutchess Counties. Rather, that portion of New York was being serviced by several non-exclusive entities including All Systems Cogeneration, Aegis Energy, AES-NJ Cogen Co., Inc., and AmericanDG, which is an affiliate of Tecogen. This territory was an open territory with none of these companies being the exclusive distributor.

15.     In or around June 2005, a third party consultant designed a new cogeneration system for a school project located in New York. The consultant's plans for that new system specified the use of Tecogen Modules. Tecogen's affiliate submitted to the project's lead contractor/consultant a proposal for the installation and use of Tecogen Modules in the project.

16.     On information and belief, on June 16, 2005, the principals of Aegis Energy incorporated Aegenco. Aegenco and the other Defendants subsequently communicated with a subcontractor on the New York school project and submitted a bid for the sale, installation and use in that project of cogeneration modules newly designed and built by the Aegis Group. The subcontractor accepted the Aegis Group's proposal. As of the date of this Complaint, at least

-4-

one and possibly more cogeneration modules built by the Aegis Group have been shipped to the project site in New York and await installation.

17.     The New York project was the first time Tecogen's senior management learned that the Aegis Group had begun manufacturing, marketing and distributing its own cogeneration modules, which are known as the Aegen Thermo Power 75 ("TP-75") and a low emissions version, the TP-75 LE ("TP-75 LE") (collectively, the "Aegis Modules"). As is apparent from a side-by-side comparison of the two product lines, in designing and building its own cogeneration modules, the Aegis Group has copied significant aspects of the Tecogen Modules.

18.     Among other things, the Aegis Modules are about the same dimensions and weight as the Tecogen Modules. They sit on what looks to be an exact copy of the Tecogen platform right down to the forklift holes. The major components in the Aegis Modules, such as the engine and generator, are painted the same distinctive blue color as the Tecogen Modules' major components. The general specifications for the product lines are almost identical. Additionally, the Aegis Group has used the exact same or a substantially similar General Motors engine, as well as the same model generator made by Marathon Electric. It also appears that Tecogen designed components – specifically the special oil pan and proprietary exhaust manifold castings designed by Tecogen and manufactured by a third party – are likewise part of the Aegis product.

19.     The similarities between the product lines is further reinforced by a comparison of the installation manuals. The Aegis Modules' installation manual is practically a carbon copy of Tecogen's installation manual ("Tecogen Installation Manual") in all material respects. The Aegis Installation Manual employs the same organizational structure as the Tecogen Installation Manual, using virtually the same section headings and sub-headings, in the same order. Furthermore, in the vast majority of sections and sub-sections, the text of the Aegis Installation

Manual is identical or substantially similar to text of the Tecogen Installation Manual. In places, Aegis has copied whole sentences and, in some cases, paragraphs, verbatim, from the Tecogen Installation Manual.

20.     As serious as the obvious copyright infringement of the Tecogen Installation Manual may be, it pales in comparison to the software copyright infringement evidenced by a review of the Aegis Installation Manual's descriptions of the functionality in the Aegis Modules. By way of background, the "brains" of every Tecogen Module is the state-of-the-art microprocessor referenced above, which stores the computer program that implements and controls various aspects of the cogeneration module's functionality described throughout Tecogen's manual. All of that software was custom developed in-house at Tecogen. As frequently happens in software development, there are aspects of the software's performance and the resulting functionality in the cogeneration module that reflect arbitrary decisions made by the programmers who designed the software and who wrote the code to implement the program. As such, those arbitrary elements and decision points can act like "signatures" in terms of identifying proprietary computer programs.

21.     Page after page in the Aegis Installation Manual describes functionality that can only be implemented through software. And, the functionality that is described is the same as that which is implemented by the proprietary software stored in Tecogen's microprocessor, right down to many of those arbitrary elements and decision points that are the signatures placed in that computer program by Tecogen's programmers. On information and belief, the Aegis Modules incorporate and use firmware and/or software that use Tecogen's firmware and/or software.

22.     As a distributor, installer and service provider for the Tecogen Modules, the Aegis Group had access to the Tecogen Installation Manual, and Tecogen's Modules and its intellectual

property for years. Given the number and breadth of similarities between the text of the
manuals, the design of the modules, and the functionality of the Aegis Modules as described in
its manual, and Aegis' privileged access to Tecogen's modules, manuals and intellectual
property, it is evident that Aegis has developed its own cogeneration module product line by
copying, and/or assembling together components that copy, Tecogen's firmware, software,
designs, components, text, drawings and related intellectual property.

23.     At no time has Tecogen given the Defendants its written or oral consent, a license
or any other grant of a right to: (a) make, use, offer to sell or sell a module that makes any use of
the Tecogen Modules' designs, configurations, systems, methods, text, firmware or software; or
(b) reproduce, make derivative works of, or distribute copyright protected material from
Tecogen's Installation Manual.

24.     These unauthorized acts by the Aegis Group have caused Tecogen extensive
damage. Among other things, on information and belief the Aegis Modules have been sold,
distributed and/or installed in place of Tecogen Modules, resulting in lost profits to Tecogen and
unlawfully obtained actual profits for the Aegis Group.

25.     Additionally, Tecogen devoted years of time and resources to the development of
its modules. By virtue of simply using copies of Tecogen's product designs, components,
configurations, software and manual, the Aegis Group has (a) saved at least hundreds of
thousands of dollars in research and development costs and (b) been able to bring its products to
the market in far less time than it would have taken had the Aegis Group designed and built its
own modules and related materials through its own development and design efforts.

26.     On or about August 8, 2005, Tecogen sent a letter to Aegis Energy in which
Tecogen put the Aegis Group on notice (a) of the intellectual property rights Tecogen claims in
its modules as described herein and (b) of Tecogen's belief that the Aegis Modules infringe

-7-

Tecogen's intellectual property rights and proprietary information. Despite this notice, on information and belief, the Aegis Group is continuing to make, market, offer to sell, sell, distribute, install and use the infringing Aegis Modules.

## COUNT I

### (Statutory Copyright Infringement of Installation Manual)

27.    The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 26 hereof with the same force and effect as if herein set forth at length.

28.    Tecogen is owner of all copyright rights in the Tecogen Installation Manual.

29.    On August 31, 2005, Tecogen filed a complete and accurate application, fee and deposit material with the U.S. Copyright Office for registration of the Tecogen Installation Manual. Accordingly, effective August 31, 2005, Tecogen registered the Tecogen Installation Manual with the U.S. Copyright Office.

30.    Under Section 106 of the Copyright Act, Tecogen has the exclusive right, among other things, to reproduce, prepare derivative works, and distribute the Tecogen Installation Manual.

31.    The Defendants, without the permission or consent of Tecogen, have reproduced and distributed, and continue to reproduce and distribute, substantial portions of the Tecogen Installation Manual. In doing so, Defendants have violated Tecogen's exclusive rights in such manual, including but not limited to the rights of reproduction and distribution. Defendants' actions constitute infringement of Tecogen's copyrights and its exclusive rights under Section 106 of the Copyright Act.

-8-

32.    As a direct and proximate result of the foregoing acts of infringement by the

Defendants, Tecogen has been damaged and continues to suffer damages in an amount to be

determined at trial.

## COUNT II

### (Statutory Copyright Infringement of Computer Program)

33.    The Plaintiff repeats and realleges each and every allegation contained in

paragraphs 1 through 32 hereof with the same force and effect as if herein set forth at length.

34.    Tecogen is owner of all copyright rights in the computer program used in the

Tecogen Modules.

35.    On August 31, 2005, Tecogen filed a complete and accurate application, fee and

deposit material with the U.S. Copyright Office for registration of the computer program used in

the Tecogen Modules. Accordingly, effective August 31, 2005, Tecogen registered the computer

program used in the Tecogen Modules with the U.S. Copyright Office.

36.    Under Section 106 of the Copyright Act, Tecogen has the exclusive right, among

other things, to reproduce, prepare derivative works, and distribute the computer program used in

the Tecogen Modules.

37.    On information and belief, the Defendants, without the permission or consent of

Tecogen, have incorporated into the Aegis Modules software that reproduces copyright protected

portions of the computer program used in the Tecogen Modules, and are using and distributing

the same with every installation of an Aegis Module. In doing so, Defendants have violated

Tecogen's exclusive rights in such software, including but not limited to the rights of

reproduction and distribution. Defendants' actions constitute infringement of Tecogen's

copyrights and exclusive rights under Section 106 of the Copyright Act.

38.     As a direct and proximate result of the foregoing acts by the Defendants, Tecogen has lost profits and been damaged to date in an amount in excess of Five Hundred Thousand Dollars ($500,000.00).

## COUNT III

### (Common Law Copyright Infringement)

39.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 hereof with the same force and effect as if herein set forth at length.

40.     Tecogen is owner of the copyright in the Tecogen Installation Manual, the computer program used in the Tecogen Modules, and in the design of certain components used in Tecogen's Modules.

41.     On information and belief, the Defendants, without the permission or consent of Tecogen, have reproduced and distributed, and are continuing to reproduce and distribute, modules containing components and computer program that infringe Tecogen's common law copyright rights.

42.     . As a direct and proximate result of the foregoing acts by the Defendants, Tecogen has lost profits and been damaged to date in an amount in excess of Five Hundred Thousand Dollars ($500,000.00).

## COUNT IV

### (Patent Infringement)

43.     Tecogen repeats and realleges each and every allegation contained in paragraphs 1 through 42 hereof with the same force and effect as if herein set forth at length.

44.     Tecogen is the owner by assignment of U.S. Patent No. 5,033,264 entitled "Compact Cogeneration System", which was duly and legally issued by the U.S. Patent and Trademark Office on July 23, 1991 (the '"264 Patent"). A copy of the '264 Patent is attached hereto as Exhibit A and incorporated herein by reference.

45.     The claims in the '264 Patent describe a system and method for a compact cogeneration system having a catalytic converter integral with an exhaust gas heat exchanger.

46.     The Aegis Group's TP-75LE Module includes an "Exhaust Gas Heat Exchanger & Emissions Control Package". On information and belief, the catalytic converter in that package is connected directly to and integral to the exhaust gas heat exchanger, all of which is within the module cabinet.

47.     On information and belief, the Defendants have been and are infringing, contributing to infringement, and/or inducing others to infringe the '264 Patent by making, using, offering for sale and selling cogeneration modules that are covered by one or more of the claims of the '264 Patent.

48.     Defendants' acts of infringement have occurred within this District and elsewhere throughout the United States.

49.     On information and belief, Defendants have had actual notice and knowledge of the '264 Patent, but despite such notice and knowledge, have deliberately committed and continue to commit the aforesaid acts of direct, contributory and/or induced infringement of the

'264 Patent. Accordingly, Defendants' infringement has been, and continues to be, willful, deliberate, and in conscious disregard for the rights of Tecogen under the '264 Patent.

50.     Tecogen has been damaged by Defendants' infringement of the '264 Patent and will continue to be damaged in the future unless Defendants are permanently enjoined.

## COUNT V

### (Unfair Competition and Unfair and Deceptive Acts or Practices in violation of State Law)

51.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 hereof with the same force and effect as if herein set forth at length.

52.     The aforesaid acts of Defendants, including but not limited to, their actions in taking advantage of their position as a Tecogen distributor to copy Tecogen's intellectual property, using the same to make "knock-off" modules, and then selling their own knock-off modules in place of Tecogen's modules, constitute unfair competition and unfair and deceiptive acts or practices in violation of Sections 2 and 11 of the Massachusetts Consumer Protection Act, M.G.L.A. c. 93A.

53.     As a direct and proximate result of the foregoing acts by the Defendants, Tecogen has lost profits and been damaged to date in an amount in excess of Five Hundred Thousand Dollars ($500,000.00).

WHEREFORE, the Plaintiff prays that the Court:

1.     Enter judgment on each of Counts I, II, III, IV and V in favor of the Plaintiff and against each Defendant, and award the Plaintiff damages under each count in an amount to be determined at trial;

2.    Award the Plaintiff statutory double or triple damages;

3.    Permanently enjoin Defendants from making, using, offering to sell, selling,

reproducing or distributing cogeneration modules or installation manuals for the same

that infringe the Plaintiff's intellectual property rights;

4.    Award the Plaintiff its costs and reasonable attorneys' fees in this action; and

5.    Order such other and further relief as the Court may deem just and proper under

all the circumstances.

## JURY DEMAND

The Plaintiff hereby demands trial by jury.

TECOGEN, INC.,

By its attorneys,

Julie A. Frohlich (BBO# 554707)
Goulston & Storrs
A Professional Corporation
400 Atlantic Avenue
Boston, MA  02110-3333
(617) 482-1776

Dated:  September 7, 2005

GSDOCS-1523839-1

# Exhibit A

## United States Patent [19]

### Cabral

[11] Patent Number: **5,033,264**

[45] Date of Patent: **Jul. 23, 1991**

[54] **COMPACT COGENERATION SYSTEM**

[75] Inventor: **Richard E. Cabral, Tewksbury, Mass.**

[73] Assignee: **Tecogen Inc., Waltham, Mass.**

[21] Appl. No.: **367,383**

[22] Filed: **Jun. 16, 1989**

[51] Int. Cl.⁵ ................................................. F01N 3/20
[52] U.S. Cl. ......................................... 60/274; 60/298;
      60/301; 60/320; 422/171; 422/172; 422/173
[58] Field of Search ................. 60/274, 298, 301, 320,
      60/321; 422/171–173

[56]       **References Cited**

**U.S. PATENT DOCUMENTS**

3,041,149  6/1962  Houdry ................................ 422/173

**FOREIGN PATENT DOCUMENTS**

2904700  8/1980  Fed. Rep. of Germany ........ 60/320

|        |        |       |            |
|--------|--------|-------|------------|
| 345    | 1/1982 | Japan | 60/298     |
| 5422   | 1/1983 | Japan | 60/298     |
| 34413  | 2/1984 | Japan | 60/320     |
| 90915  | 5/1985 | Japan | 60/298     |

*Primary Examiner*—Douglas Hart
*Attorney, Agent, or Firm*—Lorusso & Loud

[57]       **ABSTRACT**

A compact cogeneration system in which a catalytic converter is positioned within otherwise unused space in an exhaust gas heat exchanger employed to heat water. Exhaust gases from an internal combustion engine of a packaged cogeneration system are directed through a single- or two-stage catalytic converter in a central cylindrical housing of the heat exchanger, then are diverted to pass in counterflow over a water-containing coil in an annulus surrounding the housing.

6 Claims, 3 Drawing Sheets



F I G . 1

(PRIOR ART)



FIG. 2



Case 1:05-cv-11823-RCL    Document 1-2    Filed 09/07/2005    Page 4 of 6

# FIG. 3



**1**

## COMPACT COGENERATION SYSTEM

### BACKGROUND OF THE INVENTION

The present invention relates generally to cogeneration systems, and specifically to an improved cogeneration system having an exhaust heat exchanger with an integral catalytic converter element.

Cogeneration is an energy-production process involving the simultaneous generation of thermal (e.g. process steam) and electrical energy by using a single primary heat source. It can be employed whenever there is a need for the two energy forms and whenever on-site electric power generation is justified or when thermal-energy users are in close proximity to an electric power generation site. For example, packaged natural gas fueled cogeneration systems are available from Tecogen, Inc. of Waltham, Massachusetts, assignee of the present invention, in several different output ratings (e.g., 60 KW of electrical power, 440,000 BTU/hr thermal output as hot water). Such cogeneration systems are often used by hospitals, health clubs having large heated swimming pools, greenhouses, schools and light industry.

Fuel saving is a major incentive for use of cogeneration. Since all heat-engine-based electric power systems exhaust heat to the environment, the exhausted heat can frequently be used to meet all or part of the on-site or local thermal energy needs. Use of the exhausted heat does not normally affect the amount of primary fuel used, yet it can lead to a saving in all or part of the fuel that would otherwise be used for the thermal-energy process.

The cogeneration system toward which the present invention is directed utilizes a fossil fuel burning internal combustion engine in which exhaust gas is directed through a heat exchanger to heat water for use as "hot water". This exhaust gas is generally at 1000°-2500° F. entering the heat exchanger, and in passing through the heat exchanger heats water circulating through a coil whose external surfaces are contacted by the exhaust gas. Before the exhaust gas can be discharged into the atmosphere, it may require a treatment in a catalytic converter which heretofore has been provided as a separate unit upstream of the heat exchanger. The converter may typically contains a noble metal catalyst, a material which promotes the reduction of $NO_x$ and conversion of the carbon monoxide and hydrocarbons which result from partly burned or unburned fuel to carbon dioxide and water vapor. The exhaust gas is thus sufficiently clean for discharge into the atmosphere.

A principal disadvantage of known cogeneration systems with catalytic converters is that the systems are large and bulky, requiring considerable space and external plumbing of their separate, interconnected components. The cost of such cogeneration systems accordingly may be higher than desired. A decrease in size of the system would reduce costs and result in a cogeneration system which could fit the space requirements of a larger number of potential users.

Accordingly it is a principal object of the present invention to provide a cogeneration system having a catalytic converter and which is compact and space efficient.

It is a particular object of the invention to provide a single or multi-stage catalytic converter arranged

**2**

within the housing of an exhaust gas heat exchanger of a packaged cogeneration system.

Another object of the present invention is to provide a cogeneration system that can be economically produced and thus available to a wide range of users.

These and other objects and advantages of the present invention will be evident from the description which follows.

### SUMMARY OF THE INVENTION

The present invention is a compact cogeneration system having a catalytic converter integral with an exhaust gas heat exchanger. The system eliminates cumbersome separately-coupled elements by incorporating a catalytic converter within the unused space in the exhaust gas heat exchanger. The catalytic converter material, instead of being provided in a separate element, is positioned as a single-stage or two-stage arrangement within a central housing in the heat exchanger. Gas flows within the heat exchanger are directed so as to pass exhaust gases from the engine first through the central housing containing the catalytic converter, then in counterflow over a coil containing water to be heated. The savings in space, exhaust plumbing, insulation blankets and heater packaging are substantial.

The invention will be better understood with reference to the following detailed description of preferred embodiments of the invention, taken together with the attached drawing, in which like reference numbers represent like elements throughout the various figures.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a schematic diagram of a prior art cogeneration system;

FIG. 2 is a cross-sectional view of one embodiment of the exhaust gas heat exchanger of a cogeneration system of the present invention; and

FIG. 3 is a cross-sectional view of another embodiment of the exhaust gas heat exchanger of the cogeneration system of the present invention.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

A prior art cogeneration system with a catalytic converter is shown in schematic form in FIG. 1. The cogeneration system includes an internal combustion engine 20 which powers an electrical generator 22 such as an induction generator and produces exhaust gas. The exhaust gas from the engine 20 travels first through a catalytic converter 24, where harmful components of the exhaust gas are eliminated or reduced. The clean gases then flow to an exhaust gas heat exchanger 26, which is separate from and connected in series with the catalytic converter 24. Included in the heat exchanger are one or more coils (not shown) through which water is directed to absorb heat from the exhaust gas as the gas passes over the coils, producing hot water for use as desired. The cooled exhaust gas then leaves the heat exchanger 26 and is expelled to the environment.

FIG. 2 is a cross-sectional view of an exhaust gas heat exchanger 30 of a cogeneration system according to the present invention and which contains an integral catalytic converter 32. The heat exchanger 30 includes an outer shell 36, preferably formed of stainless steel, and some or all of whose outer surface may be covered by insulation 38. A housing 40, preferably cylindrical, is mounted within and spaced from the outer shell 36 and

5,033,264

**3**

is surrounded by a water coil 42 which may have externally-mounted, or integral, fins 44 as extended heat transfer surfaces, and through which water is circulated from an inlet 46 to an outlet 48. The interior of the housing 40 is packed with catalytic converter material 50 such as honeycomb ceramic plated with a catalyst such as platinum. This material may be similar to that used in catalytic converters employed in automobile exhaust systems. A preferred material is $NO_x$ reduction catalyst Part No. 41013001 which may be obtained from Engelhard Corporation of Edison, New Jersey. The honeycomb material may be wrapped in a mesh screen to retain it in the housing 40.

The heat exchanger 30 illustrated in FIG. 2 includes a two-stage catalytic converter, with air injection through an injector tube 54 between the first stage 56 and the second stage 58 to be used in applications where low emissions of both $NO_x$ and CO are required. Air injection, combined with the catalytic material of the second stage 58, coverts carbon monoxide produced in the first stage into carbon dioxide. As a result, the gases exiting the second stage 58 have low levels of $NO_x$ and CO. The integral catalytic converter/heat exchanger configuration is particularly significant in reducing overall length of packaged cogeneration systems.

FIG. 3 illustrates an exhaust gas heat exchanger 61 with an integral single-stage catalytic converter 32. The exhaust gas heat exchanger 61 is identical to the two-stage heat exchanger 30 except that the air injection tube 54 and the second stage 58 of the catalytic converter 32 of the embodiment of FIG. 2 are not required. The heat exchanger 61 may be utilized where low emissions of carbon monoxide are not required, at a resulting reduction in cost and complexity.

In operation of the exhaust gas heat exchanger 30 of a cogeneration system as illustrated in FIG. 2, exhaust gas from the internal combustion engine (not shown), typically having a temperature of between 1000° F. to 2500° F., flows through an inlet 59 and transition duct 60 into the catalytic converter 32 within the housing 40 of the heat exchanger 30, as shown by the arrows 62 of FIG. 2. The exhaust gas travels through the catalytic converter material 18 which removes harmful gases. The exhaust gas exiting the catalytic converter 32 then reverses direction and, as shown by the arrows 64, travels through the annulus between the housing 40 and the outer shell 36 around the water-containing coil 42 to raise the water temperature. The exhaust gas then leaves the heat exchanger 30 through an outlet 66, typically at a temperature of about 250° F., and heated water exiting the coil 42 may be used for any desired purpose.

Variations and modifications of the embodiments described will be apparent to those skilled in the art without departing from the spirit and scope of the invention. Accordingly, only such limitations should be imposed on the invention as are set forth in the appended claims.

What is claimed is:

1. A compact heat exchanger for heating water with, and cleaning, the exhaust gas of an internal combustion engine of a cogeneration system comprising:

an outer shell having

**4**

gas inlet means for entry of exhaust gas from said engine,

gas outlet means for outflow of exhaust gas,

water inlet means for entry of water to be heated, and

water outlet means for outflow of water;

a housing positioned within and spaced from said outer shell to form a flow channel therebetween;

a coil in communication with said water inlet means and said water outlet means and positioned in said flow channel between said housing and said outer shell;

catalytic converter material within said housing;

wherein said housing is connected to said gas inlet means to receive exhaust gas from said engine and to direct said exhaust gas through the catalytic converter material.

2. The compact heat exchanger of claim 1 wherein an end of said housing opposite said gas inlet means defines an outlet for exit of exhaust gas from said housing, and said compact heat exchanger further includes means for directing exhaust gas received from said housing in counterflow through said flow channel.

3. The compact heat exchanger of claim 1 wherein said catalytic converter material comprises a first stage and a second stage in spaced-apart, series arrangement within said housing, and further comprising means for injecting air into a gap formed between said stages.

4. A method for heating water with, and cleaning, the exhaust gas of an internal combustion engine of a cogeneration system comprising:

providing an apparatus including

a container having gas inlet means for entry of exhaust gas from said engine, gas outlet means for outflow of exhaust gas from said container, water inlet means for entry of water into said container, and water outlet means for outflow of water from the apparatus

a housing positioned within said container;

a coil within said container in communication with said water inlet means and said water outlet means and surrounding said water housing; and

catalytic converter material within said housing;

adding water to be heated in said apparatus through said water inlet means to said coil;

passing said exhaust gas through said gas inlet means;

passing the exhaust gas through the catalytic converter material;

passing the exhaust gas into contact with external surfaces of the coil whereby the water in the coil is heated by the exhaust gas; and

passing the heated water through the water outlet means.

5. The method of claim 6 wherein said step of passing the exhaust gas into contact with external surfaces of the coil includes diverting the outflow of exhaust gas from said catalytic converter material to pass in counterflow to the flow of exhaust gas through said catalytic converter material.

6. The method of claim 7 wherein said step of passing the exhaust gas through the catalytic converter material comprises passing the exhaust gas through a first stage of catalytic converter material and then passing injected air and the exhaust gas through a second stage of catalytic converter material.

*  *  *  *  *

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)___TECOGEN, INC. v. AEGIS ENERGY SERVICES, INC.___

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☑ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

05 - 11823 RCL

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐     NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐     NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐     NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐     NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐     NO ☑

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐     Central Division ☐     Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☑     Central Division ☐     Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐     NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME___Julie A. Frohlich___

ADDRESS___Goulston & Storrs, 400 Atlantic Avenue, Boston, MA  02110___

TELEPHONE NO.___617-574-6402___

(CategoryForm.wpd - 5/2/05)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Tecogen, Inc.

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Julie A. Frohlich, Esq., Goulston & Storrs, 400 Atlantic Avenue, Boston, MA 02110    617-574-6402

## DEFENDANTS

Aegis Energy Services, Inc., Aegenco, Inc., and Aegis Generation Company

County of Residence of First Listed Defendant **Hampden**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

Deborah A. Basile, Esq., Doherty, Wallace, Pillsbury and Murphy, P. C., One Monarch Place, Suite 1900, Springfield, MA 01144

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 U.S.C. § 101 et seq. and 35 U.S.C. § 101 et seq.

Brief description of cause:
Making and selling cogeneration modules that infringe plaintiffs' copyright and patent rights, and related acts

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 09/07/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____