UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TECOGEN, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>AEGIS ENERGY SERVICES, INC., )<br>AEGENCO, INC. and )<br>AEGIS GENERATION COMPANY, )<br>      Defendants. )<br>) | C.A. No. 05-11823 RCL |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Pursuant to Fed.R.Civ.Prof. 26 and 37(a), plaintiff Tecogen, Inc. ("Tecogen") requests that defendants (collectively, "Aegis") completely disclose all documents and information relevant to Tecogen's unfair competition claim. This request has two components: (1) that Aegis produce all documents responsive to Document Request Nos. 6, 8, 10, and 14 and information responsive to Interrogatory Nos. 2 and 3, which seek the disclosure of all customers and prospective customers solicited by Aegis for the sale of Aegis rather than Tecogen products, and not merely the geographic and temporal cross-section of customers that Aegis has agreed to disclose to date; and (2) that Aegis remove the "Attorneys Only" confidentiality designation that Aegis has placed on some but not all of the customer site lists it has produced. The complete rather than selective disclosure of Aegis's customers and prospective customers is critical to establishing both the conduct that supports Tecogen's unfair competition claim and the appropriate measure of damages.

## BACKGROUND

This action concerns Aegis's use of its access to Tecogen's intellectual property, customers, and pricing information as Tecogen's longstanding dealer to design a knock-off product with which it entered the market as Tecogen's direct competitor.

Tecogen is in the business of designing, manufacturing, and selling "cogeneration" modules and services -- that is, modules and services that incorporate a process by which one fuel source is used to produce both electricity and thermal energy for efficiency savings to customers. These modules and services are the product of years of research, development, and innovation that began over 25 years ago.

For years, Aegis's business consisted of designing, installing, and maintaining cogeneration systems that used cogeneration modules designed and built by others. Prior to becoming Tecogen's dealer, Aegis did not design or build its own cogeneration modules.

For over twelve years, Aegis served as the exclusive dealer of Tecogen's cogeneration modules in Massachusetts and Connecticut. As Tecogen's exclusive dealer, Aegis was to promote the use and sale of Tecogen products within its territory and refrain from promoting other products deemed competitive with Tecogen's.

In June 2005, a third party consultant designed a new cogeneration system for a school project located in New York -- a location that Tecogen opted not to include in Aegis's exclusivity arrangement. The consultant's plans specified the use of Tecogen cogeneration modules. Tecogen's representative for New York submitted proposals for the installation and use of Tecogen modules in the project. Unbeknownst to Tecogen, Aegis contacted a subcontractor on the same project and submitted a competing bid for

the sale, installation, and use of cogeneration modules designed and built by Aegis. The subcontractor accepted Aegis's proposal.

As a result of the New York project, Tecogen learned that Aegis had begun manufacturing, marketing, and distributing its own cogeneration modules while engaged as a dealer of Tecogen modules. On June 24, 2005, Tecogen elected to terminate its relationship with Aegis. In September 2005, Tecogen filed this action.

Tecogen's complaint alleges that Aegis unfairly leveraged its intimate familiarity with Tecogen's product, customers, and bidding strategies and pricing information to obtain a cheap, quick, and unfair entry into the cogeneration market. In particular, Count V alleges that Aegis engaged in unfair competition and unfair and deceptive trade practices under M.G.L. c. 93A by exploiting its position as Tecogen's distributor to become Tecogen's direct competitor. In essence, by permitting access to its intellectual property and investing Aegis with a central role in developing customer contacts, Tecogen funded and accelerated Aegis's entry into Tecogen's market. For each and every Aegis module sold, distributed, or installed in place of a Tecogen module, Tecogen suffers damage.

In February 2006, Tecogen served Aegis with its First Request for the Production of Documents and First Set of Interrogatories. Document Request Numbers 6, 8, 10, and 14 directly address Tecogen's unfair competition claim by seeking the disclosure of customers and prospects that Aegis may have contacted or solicited about the sale of Aegis modules:

Number 6:

All documents (including drafts thereof) submitted or sent by Aegis or on Aegis' behalf to a contractor, subcontractor, consultant, engineer, architect, supplier,

vendor, customer, buyer, project owner, user or any third party concerning any aspect of any Aegis Module or Aegis Services.

Number 8:

All documents (including drafts thereof) received by Aegis from a contractor, subcontractor, consultant, engineer, architect, supplier, vendor, customer, buyer, project owner, user or any third party concerning any aspect of any Aegis Module or Aegis Services.

Number 10:

All documents (including drafts thereof) concerning the purchase or sale of an Aegis Module, including but not limited to submittals, bids, proposals, purchase orders, invoices, contracts, agreements and correspondence and email relevant to the same.

Number 14:

All documents (including drafts thereof) reflecting or concerning communications between, among, and/or including Aegis and any third party concerning Aegis Modules or Aegis Services.

Interrogatory Numbers 2 and 3 seek to elicit the same information:

Interrogatory No. 2:

Identify all persons with whom you communicated concerning the purchase, sale, delivery, supply, use, or installation of an Aegis Module or Aegis Services, and the dates of such communications.

Interrogatory No. 3:

Identify all persons to whom you submitted or sent documents concerning the purchase or sale of Aegis Module or Aegis Services, including but not limited to submittals, bids, proposals, purchase orders, invoices, contracts, agreements, and correspondence and email relevant to the same, and the dates on which you submitted or sent such documents.

In its written objections to each of these Document Requests, Aegis stated as follows: "Defendants object to this request to the extent that it is overly broad and calls for company confidential or trade secret information. Subject to this and the foregoing general objections, defendants will not make any confidential documents available prior

to stipulation to, and entry of, a protective order in this action." Likewise, in its written responses to the Interrogatories, Aegis stated that "[u]pon entry of a mutually agreed protective order with the Court, defendants will produce a representative sample of persons" sought by the Interrogatories. Aegis produced no documents or information that it deemed confidential.

Accordingly, in July 2006, Tecogen and Aegis agreed to a protective order. The protective order applies to proprietary and commercially sensitive information -- including customer lists -- designated "Confidential" or "Confidential - Attorneys Eyes Only" by either party. Designating documents confidential substantially restricts the persons to whom they may be disclosed. Documents designated "Confidential" may only be disclosed to persons identified in Paragraph 5A of the protective order. Documents designated "Confidential - Attorneys Eyes Only" may only be disclosed to a much narrower audience, principally counsel for the parties, the court, and deposition and trial witnesses. Because the utility of materials designated "Confidential - Attorneys Eyes Only" may be compromised by the limited audience allowed to review them, the protective order sets a high threshold: the "Confidential - Attorneys Eyes Only" designation applies only to "Confidential Material that the designating party reasonably believes contains information, the disclosure of which will cause irreparable harm to the competitive position of the designating party." ¶ 3A. The burden of persuasion falls on the designating party if a confidentiality designation is challenged. ¶ 6B.

By letter dated October 26, 2006, Tecogen requested that Aegis respond fully to the Document Requests and Interrogatories in view of the protective order, specifically referencing Aegis's incomplete responses to Document Request Nos. 6, 8, 10 and 14 and

Interrogatory Nos. 2 and 3.  On December 12, 2006, Aegis responded with a production of documents, all of which were designated "Confidential - Attorneys Only," including documents authored by and addressed to Tecogen.  Aegis did not respond to Interrogatory Nos. 2 and 3.

By letter dated January 19, 2007, Tecogen asked again for a full response to Document Request Nos. 6, 8, 10, and 14.  For example, Aegis's December 12 document production identified a number of project sites for which Aegis had sold or proposed to sell Aegis cogeneration modules, but included actual documentation -- e.g., contracts, proposal terms, sales prices, correspondence -- with respect to only a few of the sites.  In addition, Tecogen requested that Aegis respond to Interrogatories Nos. 2 and 3.  Finally, Tecogen requested that Aegis remove the "Confidential - Attorneys Only" designation from the documents produced in December.  Tecogen explained its disagreement with the designations: they appeared more habitual than reasoned; they unnecessarily constrained the utility of the documents by effectively limiting their review to attorneys; and they failed to meet the "irreparable harm" standard in view of Tecogen's disclosure of substantially similar information without the designation.

On February 26, 2007, Aegis made a supplemental document production.  Counsel for Aegis stated that the documents identified three customers located in Massachusetts or Connecticut to whom Aegis had sold Aegis modules while engaged as Tecogen's dealer.  Aegis refused to disclose any other customers "to the extent it calls for the identification of Aegis customers outside of Massachusetts and Connecticut, and to the extent it calls for discovery after the distributorship between Aegis and Tecogen was terminated by Tecogen."  Moreover, Aegis agreed to remove the "Confidential -

Attorneys Only" designation from some but not all of substantially similar types of customer site lists. Aegis's apparent basis for disclosing only a cross-section of customers and prospects was *its* theory of Tecogen's unfair competition claim: to be unfair, the conduct must have violated the dealership agreement.

Beginning in late 2006 and continuing through February 2007, on numerous occasions counsel for Tecogen asked Aegis's counsel to produce all information responsive to the outstanding Document and Interrogatory Requests, and not only those entities located in Massachusetts and Connecticut to which Aegis sold its modules prior to the termination of the dealership agreement. Counsel for Tecogen also requested the removal of the "Confidential - Attorneys Only" designation from all documents, and not only those that Aegis deemed relevant. On March 5, 2007, counsel for Tecogen formalized these requests in a Local Rule 37.1 conference. Aegis, however, has repeatedly declined to produce the requested information and documents.

## ARGUMENT

Tecogen is entitled to (1) the disclosure of all customers and potential customers to whom Aegis sold or proposed to sell Aegis cogeneration modules, whether or not these customers were covered by Aegis's dealership agreement with Tecogen; and (2) the removal of the "Confidential - Attorneys Only" designation from all customer site lists, whether or not Aegis deems these lists relevant.

I.   The Disclosure of Customers and Prospects Is Relevant

The disclosure of Aegis's customers and potential customers falls easily within the broad definition of relevance under the discovery rules. "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be

considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D.Mass. 1984) (emphasis in original) (internal citations omitted). *See also Microwave Research Corp. v. Sanders Associates, Inc.*, 110 F.R.D. 669, 672 (D.Mass. 1986) (relevance under rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case.") (internal citations omitted).

Aegis cannot contend that there is *no possibility* that the information sought will advance Tecogen's unfair competition claim. This claim alleges that Aegis engaged in unfair business practices by exploiting its close relationship with Tecogen to design a substantially identical product with which Aegis directly competed with Tecogen both during and after its engagement as Tecogen's dealer. This unfair practice goes beyond what Aegis was doing *while* Tecogen's dealer; it concerns everything Aegis was able to do *because* it was Tecogen's dealer. Thus, Aegis's unfair conduct -- and the damages Tecogen suffered and continues to suffer as a result of it -- did not end when the dealership agreement ended. Aegis's apparent contention that only conduct implicating customers covered by the exclusive dealership arrangement supports an unfair competition claim is an exceedingly narrow view of the law, and not one that Tecogen must accept at this stage in the litigation.[1]

---

[1] In short, Aegis's contention is only half correct. Conduct that violates Aegis's dealership arrangement may constitute unfair competition. It does not follow, however, that conduct that does not violate the dealership agreement cannot support an unfair competition claim. Tecogen's overriding claim is that Aegis exploited its familiarity with Tecogen's product to design and ultimately enter into competition with a knock-off product. Even assuming that Aegis's use of this familiarity to go from Tecogen's dealer to competitor did not violate any term of the dealership arrangement, it is still unfair: it allowed Aegis to enter Tecogen's market without the investment of time and resources required for developing a genuinely *sui generis* product. Without this appropriation, it may have taken Aegis longer to enter the market; indeed,

The complete rather than selective disclosure of Aegis's customers and potential customers is critical to Tecogen's unfair competition claim in at least two respects. First, it is critical to determining Tecogen's full measure of damages. Each sale made by Aegis is a sale lost by Tecogen. Tecogen suffers this injury whether the sale is made to a customer in Massachusetts or New York, in 2004 or 2006. With respect to geography, therefore, Aegis should be compelled to disclose customers and prospects in any area in which Tecogen also operates. With respect to time, Aegis should be compelled to disclose sales made both before and after the termination of the dealership agreement. Lost profits is a major component of G.L. c. 93A damages. *See Cambridge Plating Co., Inc. v. NAPCO, Inc.*, 890 F.Supp. 55 (D.Mass. 1995). The information sought bears directly on the extent of Tecogen's lost profits.

Second, sales made to customers outside of Massachusetts or Connecticut or after June 2005 may still implicate unfair conduct that occurred while Aegis was engaged as Tecogen's dealer. It is not only unfair conduct for Aegis to have sold an Aegis product to covered customers while engaged as Tecogen's dealer; it is unfair conduct to have solicited a covered customer or proposed the sale of an Aegis product while engaged as Tecogen's dealer. While the solicitation may have occurred prior to June 2005, the consummation may not have occurred until after June 2005. Moreover, while the ultimate sale may have been to a customer outside of Massachusetts or Connecticut, it may have been leveraged through an existing relationship with a covered customer to whom Aegis agreed to promote only Tecogen products. These "pipeline" deals -- sales and leads put in motion while Tecogen's dealer but only realized after termination -- are

---

without it, Aegis may have never entered the market. Given this unfair advantage, every time Tecogen loses a sale to Aegis's knock-off product, it suffers harm.

relevant even under Aegis's narrow view of Tecogen's unfair competition claim. Under the dealership agreement, Aegis was obligated to promote Tecogen's interests. Tecogen is entitled to the disclosure of all sales that may trace their roots to a breach of that obligation.

Accordingly, Aegis should be compelled to produce all documents responsive to Document Requests Numbers 6, 8, 10, and 14 and all information responsive to Interrogatories 2 and 3 without the geographic and time constraints Aegis has placed on its production.

## II.   The "Confidential - Attorneys Eyes Only" Designation is Unwarranted

Likewise, Aegis cannot restrict the production of relevant information by selectively designating it "Confidential - Attorneys Eyes Only." Aegis has produced approximately eleven customer site lists in response to requests for this information. It has designated four of the lists "Attorneys Only." In doing so, it has effectively concealed them from precisely those persons most likely to understand their significance and materiality to Tecogen's unfair competition claim: Tecogen.

Aegis's selective designation is either haphazard or based on considerations that have nothing to do with confidentiality. The customer site lists are virtually identical: one column identifies the customer site; one column identifies whether the site is located in Massachusetts or Connecticut; and one column identifies the date. From these lists, Aegis chose to designate four "Confidential - Attorneys Only" (documents 001357, 001358, 001359, and 001364). The only apparent distinction that separates these four from all others is their date. The four lists identify sites associated with dates after June 2005.

As such, Aegis has simply spun its relevance objection into a confidentiality designation. Relevance and confidentiality are entirely separate concepts. Under the protective order, a party may designate materials "Attorneys Eyes Only" if it reasonably believes the materials contain information the disclosure of which will cause "irreparable harm." If the designation is challenged, the designating party carries the burden of persuasion with respect to proving irreparable harm. Aegis cannot meet its burden.

First, Aegis is not irreparably harmed by producing information that it deems irrelevant. Aegis has agreed to produce substantially similar site lists without the designation. It is implausible that producing site lists for years up to 2005 will not cause Aegis irreparable harm, but producing site lists for 2005 to the present will -- simply because Aegis considers the latter irrelevant to Tecogen's unfair competition claim. A relevance objection (based on an arguable interpretation of the law) dressed as a confidentiality designation fails under the protective order.

Second, even if Aegis were claiming that it would suffer irreparable harm for disclosing this information, this claim is belied by Tecogen's own disclosures. In its document production, Tecogen produced quarterly reports and sales forecasts for years 2004 to 2006 (the date of the production). These reports and forecasts identified customer sites, order dates, purchase amounts, and probability of sale consummation (that is, it identified customers all along the forecast spectrum, from prospect to sale). These documents disclosed exactly the same information that Aegis's customer site lists disclosed, and more. Tecogen did not mark these documents "Confidential - Attorneys Eyes Only." It trusted that a "Confidential" designation would adequately protect its commercially sensitive information under the protective order. Under the protective

order, "Confidential" materials may still only be used for purposes of this litigation, and may still only be disclosed to limited and enumerated persons.[2]

The harm with designating documents "Confidential - Attorneys Eyes Only" is that it substantially restricts the intelligibility of the information produced. Tecogen's unfair competition claim partly rests on a comparison of Aegis's sales activities with Tecogen's. This comparison not only requires the identification of customers that Tecogen once had or was close to having that Aegis now has or is close to having, it requires a more intimate familiarity with the market and professional networks to identify less obvious relationships among Tecogen's and Aegis's customers and prospects. Tecogen is in a much better position than counsel to make these identifications. Tecogen understands its market. It will know whether Customer Y solicited by Aegis can be traced to Customer X to which Aegis was introduced as Tecogen's representative. More so than counsel, Tecogen will immediately and accurately identify where Aegis has engaged in competition with Tecogen.

## CONCLUSION

For the foregoing reasons, Tecogen seeks an order compelling Aegis to make a complete rather than selective disclosure of information concerning its unfair competition claim. In particular, Tecogen requests that Aegis (1) produce all documents responsive to

---

[2] Indeed, Tecogen agrees to limit the disclosure of the information sought to three persons at Tecogen with most knowledge of Tecogen's customer base: Robert Panora, President; Jeffrey Glick, Regional Sales Manager; and Wes Schuster, formerly Executive Vice President and currently outside consultant. These three persons, moreover, will sign the undertaking attached to the protective order, which provides under the pains and penalties of perjury that they have read the protective order, that they agree to be bound by it, that they will not use confidential information for any purposes other than those permitted under the protective order, and that a violation of the protective order may subject them to sanctions and other remedies. Rather than the broad and unfettered publication that Aegis intimates in support of its designation, Tecogen intends to proceed on the most limited and guided disclosure sufficient to render the information disclosed intelligible.

Document Requests Numbers 6, 8, 10, and 14 and respond fully to Interrogatories Numbers 2 and 3 without the geographical and time constraints that Aegis has placed on its production; and (2) remove the "Attorneys Only" designation from documents 001357, 001358, 001359, and 001364.

TECOGEN, INC.

By its attorneys,

/s/ Derek B. Domian
_____
Julie A. Frohlich (BBO #554707)
Derek B. Domian (BBO #660568)
GOULSTON & STORRS, PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776

Dated:  March 6, 2007

## RULE 37.1 CERTIFICATION

I, Derek Domian, certify that on March 5, 2007 at 3:30, I spoke with Robert Curcio, counsel for Aegis, by telephone in a good faith effort to narrow or resolve the areas of disagreement to the greatest possible extent. The phone conversation lasted for approximately thirty minutes. We have been unable to reach agreement with respect to the two discovery matters discussed herein.

/s/ Derek B. Domian
_____
Derek B. Domian