# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TECOGEN, INC., | ) |
|  | ) |
| Plaintiff, | ) Civil Action No. 05-11823 RCL |
|  | ) |
| v. | ) |
|  | ) |
| AEGIS ENERGY SERVICES, INC., | ) March 20, 2007 |
| AEGENCO, INC., and AEGIS | ) |
| GENERATION COMPANY | ) |
|  | ) |
| Defendants | ) *ORAL ARGUMENT REQUESTED* |
|  | ) |

## DEFENDANT AEGIS ENERGY SERVICES' OPPOSITION TO PLAINTIFF TECOGEN'S MOTION TO COMPEL DISCOVERY

Defendant, Aegis Energy Services, Inc. ("Aegis") respectfully requests that this Court reject Plaintiff, Tecogen, Inc.'s ("Tecogen") discovery of a complete list of Aegis' customers and prospective customers under an unsupportable unfair competition allegation.

Tecogen requests this information even though it has yet to identify grounds for unfair competition, with any specificity whatsoever, that would necessitate a complete list of Aegis' customers and prospective customers. Tecogen fails to establish any basis for requiring this information. This information will not further this litigation, and only give Tecogen insight to Aegis' financial position and marketing initiatives that Tecogen could exploit to its benefit years after this litigation has ended. For the reasons stated herein, Aegis respectfully requests that this Court reject Tecogen's motion to compel the discovery of this sensitive information between highly competitive adversaries.

-2-

**I.     Tecogen's Reasons For This Disclosure Are Baseless And Unsupported**

Tecogen states that Aegis was not allowed to compete with Tecogen in the marketplace since Aegis was its dealer in certain markets. "As Tecogen's exclusive dealer, Aegis was to promote the use and sale of Tecogen products within its territory and refrain from promoting other products deemed competitive with Tecogen's [products]." Tecogen's Motion to Compel, p.2. This understanding is false, and belied by Tecogen's own actions. Tecogen cannot offer any documents to establish this understanding, and in fact, there were none. During the tenure of their relationship, Tecogen never offered or insisted upon any kind of non-competition agreement with Aegis. Conspicuous by its absence in Tecogen's Motion to Compel is any reference to a contract between the parties. Tecogen artfully dodges this, referring to a "relationship" or an "arrangement" with Aegis. Id., pp.2-3. Distributorships do not go hand-in-hand with a non-competition agreement, and this distributorship was no exception. Tecogen has no basis for now asserting a non-competition "arrangement" on Aegis, when it failed to require any such restriction, contractually or otherwise, during the time that Aegis distributed Tecogen modules.

Surprisingly, Tecogen cries foul of Aegis' competition even in a geographic region where Tecogen willfully excluded Aegis from bidding (with a Tecogen module!) on a new cogeneration school project located in New York, a location that Tecogen opted not to include in any so-called "exclusivity arrangement" between the parties. Tecogen's Motion to Compel, p.2. This is because Tecogen established an affiliate, American DG, to compete directly with Aegis in this and other markets. Aegis fairly competed in New York with Tecogen and offered its own cogeneration module for the same project.

Clearly, Aegis violated no laws, nor could any of its practices be considered unfairly competing, when it designed and developed its own cogeneration module on its own time, using its own funding, and entered a market where Tecogen purposely sought to exclude Aegis. Now that Aegis is firmly in the market, Tecogen seeks a laundry list of all of Aegis' customers and prospective customers, under a baseless and unsupportable unfair competition claim.

## II. Tecogen Has No Basis For Alleging That Aegis Unfairly Competed, And Should Not Now Be Allowed To Gather Highly Competitive Information Based On This Unsupported Allegation

### 1. Unfair Competition Requires An Unlawful Act

Unfair competition is generally considered unlawful commercial conduct that the law views as unjust, giving a civil claim against a person who has been injured by the conduct. Although it is impossible to state a definitive test for determining which methods of unfair competition will be deemed unfair, "[j]udicial formulations have broadly appealed to principles of fairness and social utility. The case law, however, is far more circumscribed than such rhetoric might indicate, and courts have generally been reluctant to interfere in the competitive process." Restatement (Third) of Unfair Competition § 1, comment g (1995).

Tecogen has offered absolutely no evidence to indicate that Aegis performed any unlawful commercial conduct while it was Tecogen's distributor, or after Tecogen terminated the distributor relationship.

### 2. Tecogen Unfair Competition Claim Relies On An Unsupported Allegation That Aegis Exploited Tecogen's Intellectual Property

Tecogen succinctly states its unfair competition claim as follows:

-3-

> Tecogen's overriding claim is that Aegis exploited its familiarity with Tecogen's product to design and ultimately enter into competition with a knock-off product. Even assuming that Aegis's use of this familiarity to go from Tecogen's dealer to competitor did not violate any term of the dealership arrangement, it is still unfair: it allowed Aegis to enter Tecogen's market without the investment of time and resources required for developing a genuinely *sui generis* product. Without this appropriation, it may have taken Aegis longer to enter the market; indeed, without it, Aegis may have never entered the market.

Tecogen's Motion to Compel, n.1, pp.8-9.

First, Tecogen has absolutely no basis for claiming that the Aegis cogeneration module is a "knock-off" product. In fact, Tecogen dropped its patent infringement claim when it was shown conclusively that the cogeneration module designs were distinctly different. If Aegis' cogeneration module really was a "knock-off", this Court would still be entertaining Tecogen's patent infringement allegation. Tecogen's reference of Aegis' unique cogeneration module design as a "knock-off" product is mere hyperbole that Tecogen continues to proffer as a way to convey an *appearance* of "unfairness" for which it cannot establish any factual basis. In fact, absent patent and copyright protection under federal statute, Tecogen has no other rights to exclusivity of its cogeneration module design.

Tecogen further states that Aegis used its access to Tecogen's intellectual property, customers, and pricing information to unfairly compete with Tecogen. Tecogen's Motion to Compel, p.1. This argument fails for a number of reasons.

Intellectual property generally refers to a legal recognition of a property right in certain kinds of information. Patents, trademarks, copyrights, and trade secret rights serve to define different aspects of this legal protection. As discussed above, there is no longer a claim to patent infringement. Tecogen should be estopped from attempting to rely on its now defunct patent infringement allegation in an attempt to expand discovery under an

unsupportable unfair competition claim that alleges Aegis built unfairly a "knock-off" product, when in fact it did not.

Aside from the defunct patent infringement cause of action, if the intellectual property that Tecogen claims Aegis has exploited is the alleged copying of Tecogen's software code or its Installation Manual, these allegations are already present in Tecogen's copyright infringement claims, and any claim of unfair competition due to alleged copyright infringement is preempted by federal statute. "A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a). Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." Kodadek v. MTV Networks Inc., 152 F.3d 1209, 1212, 47 USPQ2d 1956, 1959 (9th Cir. 1998) (citing, 1 Melville B. Nimmer, Nimmer on Copyright § 1.01 [B]). In Kodadek, the Ninth Circuit Court of Appeals preempted a California state unfair competition claim that broadly prohibited any "unlawful, unfair or fraudulent business practice." Kodadek, 152 F.3d at 1212, 47 USPQ2d at 1959. Under Massachusetts law, unfair competition is similarly broad. "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L., c.93A, § 2. Any unfair competition claim that Tecogen asserts regarding alleged copying of its software code or its Installation Manual is completely addressed and thus preempted by the federal copyright statute.

Consequently, the only intellectual property that Tecogen's unfair competition claim may address must necessarily relate to some alleged, inappropriate use of

Tecogen's trade secrets. Under Massachusetts law, trade secrets are defined as "anything which constitutes, represents, evidences, or records *secret or confidential* scientific, technical, merchandising, production, management or commercial information." M.G.L., c.93, § 2 (emphasis added). However, trade secret protection is unavailable for information that is not actually secret. Storage Technology Corp. v. Custom Hardware Engineering & Consulting Inc., 421 F.3d 1307, 1319, 76 USPQ2d 1065, 1074 (Fed. Cir. 2005) (citing Jet Spray Cooler, Inc. v. Crampton, 282 N.E.2d 921, 925, 174 USPQ 272, 275 (Mass. 1972) ("The crucial issue to be determined in cases involving trade secrets, therefore, is whether the information sought to be protected is, in fact and in law, confidential.")).

In Jet Spray, the Massachusetts Supreme Court held that "one seeking to prevent the disclosure or use of trade secrets or information must demonstrate that he pursued an active course of conduct designed to inform [others] that such secrets and information were to remain confidential." Jet Spray, 282 N.E.2d at 925, 174 USPQ at 275 (citing J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 260 N.E.2d 723, 731, 357 Mass. 728, 738, 166 USPQ 443, 447-448 (Mass. 1970) ("[O]ne who claims that he has a trade secret must exercise eternal vigilance ... to all persons to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it.")). Additionally, a party cannot appropriate information that is in the public domain as its proprietary trade secret. CVD, Inc. v. Raytheon Co., 769 F.2d 842, 850, 227 USPQ 7, 11-12 (1st Cir. 1985).

Tecogen has offered no evidence whatsoever to establish that it exercised "eternal vigilance" in the protection of its trade secrets, e.g., through proper document marking or

through the execution of any confidential nondisclosure agreement with Aegis. In fact, Tecogen is well aware that the documents given to Aegis over the years in the form of technical specifications, manuals, schematics, and the like, were passed on to third party customers. None of these documents were ever treated as proprietary or confidential. Tecogen's cogeneration module design is in the public domain, protected solely to the extent that Tecogen can assert patent or copyright claims under federal statute. Tecogen has not offered any evidence that would identify information it considers to be trade secrets that Aegis was in some way obligated to keep confidential. Any allegation that Aegis unfairly competed with Tecogen by exploiting properly protected trade secrets is unsubstantiated and without merit. Furthermore, Tecogen has failed to draw any link from any alleged exploitation of Tecogen's trade secrets to the requested discovery of Aegis' customer list and prospective customer list.

### 3. *Tecogen Impermissibly Seeks To Expand Its Discovery Concerning Aegis' Activities Performed After Tecogen Terminated Its Relationship With Aegis*

Tecogen admits that it terminated its relationship with Aegis on June 24, 2005. Tecogen's Motion to Compel, p.3. Prior to that time, Tecogen claims that there was an "exclusivity arrangement" with Aegis in Massachusetts and Connecticut. To the extent that Tecogen seeks information regarding Aegis' customers in Massachusetts and Connecticut prior to June 24, 2005, Tecogen already has this information since Aegis marketed and sold only Tecogen cogeneration modules with the exception of three identified instances where a customer did not want to purchase a Tecogen cogeneration module, or only wanted to lease a cogeneration module. Aegis has already identified those three customers. There were no other Aegen cogeneration module sales in Massachusetts or Connecticut prior to June 24, 2005. To the extent that Aegis may have

received "leads" from Tecogen, obviously Tecogen already has the identification of these customers. Tecogen stretches its argument further by hypothesizing that "while the ultimate sale may have been to a customer outside of Massachusetts or Connecticut, it may have been leveraged through an existing relationship with a covered customer to whom Aegis agreed to promote only Tecogen products." Tecogen's Motion to Compel, p.9. Once again, this is mere attorney argument without any factual basis. First, there were no so-called "covered" customers. Second, there was never any agreement to promote only Tecogen products to the exclusion of all others. Third, there was absolutely no obligation by Aegis, in fact or in law, to relay third party leads to Tecogen. Moreover, regardless of these points, Tecogen certainly has a list of all of the customers that purchased Tecogen units, and could easily verify its hypothesis regarding so-called "leveraged" information without a listing of Aegis' customers and prospective customers.

Aegis objects to Tecogen's request for the identification of customers or prospective that Aegis solicited and marketed. The parties were free to compete with one another, and any "exclusivity arrangement" did not prohibit this activity. Moreover, Aegis' activities represented legitimate competition between the two companies, as Tecogen itself exercised. Aegis maintains its objection regarding the discovery of customers or prospective customers in Massachusetts and Connecticut that were established after June 24, 2005.

Tecogen readily admits that there was no "exclusivity arrangement" between the parties outside of Massachusetts and Connecticut. Even if Tecogen argues that the so-called "exclusivity arrangement" prohibited Aegis from competing with Tecogen, which it did not, Tecogen cannot assert the same argument with respect to geographic regions

outside Massachusetts and Connecticut. In fact, as stated *supra*, Tecogen competed directly with Aegis through its affiliate American DG in New York, and actively sought to exclude Aegis from bidding on at least one New York project. Aegis competed fairly with Tecogen in these markets. Consequently, any customer or prospective customer list for sales outside Massachusetts and Connecticut could not possibly be relevant to an unfair competition claim, where the parties actively and fairly competed with one another.

### III. Tecogen's Request For The Removal Of "Confidential – Attorneys Eyes Only" Designation Should Be Rejected

Tecogen has requested that Aegis remove its "Confidential – Attorneys Eyes Only" designation regarding the identification of some customers that purchased Aegen cogeneration modules *after* June 24, 2005. Aegis elected to provide the complete chart with a higher level of confidentiality to the pages that identified these customers, rather than redact this information, which it certainly could have done. The customers were solicited by Aegis in a fair, competitive process after Tecogen terminated its relationship with Aegis. For the reasons stated *supra*, Tecogen is not entitled to this highly sensitive and confidential information that will harm Aegis if disclosed, and has only a remote connection at best to an unfair competition claim that cannot stand independent of the copyright claim. Allowing Tecogen's officers or employees access to this information provides a complete picture of Aegis' marketing endeavors and initiatives, and opens the door for future solicitations of lucrative service contracts years after this litigation ends. This information will not further Tecogen's unfair competition claim, and to the extent that some post-June 24, 2005 customers have been identified, there is no need for this information to go beyond Tecogen's attorneys. Furthermore, Tecogen has been found to

deliver false information to customers and prospective customers regarding the Aegen modules (see Aegis' counterclaim for Tortious Interference with Prospective Business Relations), an activity which irreparably harms Aegis' relationships with its customers. A list of Aegis' prospective customers would provide Tecogen with the opportunity to do more harm.

Tecogen incorrectly argues, "Aegis is not irreparably harmed by producing information that it deems irrelevant." Tecogen's Motion to Compel, p.11. This argument misses the point. It is the relevancy of this sensitive, highly confidential information to Tecogen's unsupportable unfair competition claim that is in dispute.

Aegis respectfully submits that the identification of certain post-June 24, 2005 customers should remain designated as "Confidential – Attorneys Only."

### IV.  An Assessment Of Damages Does Not Require The Identification Of Customers Or Prospective Customers

As a fall back position, Tecogen argues that it needs Aegis' list of customers and prospective customers to assess the damages it may be afforded if it were to prevail on its unfair competition claim. Aegis would agree that an itemization of the number of sales of cogeneration modules prior to June 24, 2005 would be relevant to damages of Tecogen's unfair competition claim; however, this analysis need not include an identification of the customers. Simply stated, for a damage assessment, Tecogen needs to know *how many* Aegen cogeneration modules were sold prior to June 24, 2005. A list that identifies customers, or a list that identifies *prospective* customers for which no sales have been made, does nothing to further Tecogen's damage analysis.

## V.     Conclusion

Aegis respectfully requests that this Court reject Tecogen's attempts to secure Aegis' customer and prospective customer lists under the auspices of an unsupportable and baseless unfair competition claim. The information requested would irreparably harm Aegis, providing Tecogen with insight into Aegis' present and future marketing endeavors, and give Tecogen an additional opportunity to tortiously interfere with Aegis' business relations. Tecogen's unfair competition claim relies on its assertion that Aegis exploited its knowledge of Tecogen's intellectual property. This assertion is erroneous and misguided. Aegis' cogeneration module is distinctly different and does not infringe Tecogen's patent. Insomuch as Tecogen's unfair competition claim relates to copyright infringement, it is covered by federal statute, and thus preempted. Moreover, any allegation that Aegis unfairly competed with Tecogen by exploiting trade secrets is unsubstantiated and without merit. Tecogen has offered no evidence whatsoever to establish that it exercised "eternal vigilance" in the protection of any of its trade secrets, and Tecogen's cogeneration module design is in the public domain, save any patent or copyright protection under federal statute. Last, an identification of customers and certainly prospective customers would not advance any damages analysis. Tecogen's discovery request based on a meritless unfair competition claim should be rejected.

[Signature block on next page]

Respectfully submitted,

**AEGIS ENERGY SERVICES, INC.,**

By its attorneys,

/s/ R. Curcio

Anthony P. DeLio
Peter W. Peterson
Robert Curcio
DELIO & PETERSON, LLC
121 Whitney Avenue
New Haven, CT 06510
(203) 787-0595
Admitted *Pro Hac Vice*


William A. Zucker, BBO # 541240
David Himelfarb, BBO# 649596
McCARTER ENGLISH
265 Franklin Street
Boston, MA 02110
(617) 449-6500

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing DEFENDANT AEGIS ENERGY SERVICES' OPPOSITION TO PLAINTIFF TECOGEN'S MOTION TO COMPEL DISCOVERY, was filed electronically. Notice of the filing will be sent to those who are currently on the list to receive email notices by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

In addition, a copy of the foregoing DEFENDANT AEGIS ENERGY SERVICES' OPPOSITION TO PLAINTIFF TECOGEN'S MOTION TO COMPEL DISCOVERY, was also mailed by first class mail, postage prepaid, to counsel of record for the plaintiff, as follows:

      Julie A. Frohlich, Esq.
      Derek B. Domian, Esq.
      Goulston & Storrs, PC
      400 Atlantic Avenue
      Boston, MA 02110

By: /s/ R. Curcio

      Anthony P. DeLio
      Peter W. Peterson
      Robert Curcio
      DELIO & PETERSON, LLC
      121 Whitney Avenue
      New Haven, CT 06510
      (203) 787-0595
      Admitted *Pro Hac Vice*

      William A. Zucker, BBO # 541240
      David Himelfarb, BBO# 649596
      McCARTER ENGLISH
      265 Franklin Street
      Boston, MA 02110
      (617) 449-6500

      Attorneys for Defendants