# Tecogen Ex. 83

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TECOGEN, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-11823 RCL |
| | ) |
| v. | ) |
| | ) |
| AEGIS ENERGY SERVICES, INC., | ) **TECOGEN'S SUPPLEMENTAL** |
| AEGENCO, INC., and AEGIS | ) **RESPONSE TO RFP NO. 51** |
| GENERATION COMPANY, | ) |
| | ) |
| Defendants. | ) |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Court's order of April 4, 2007, plaintiff Tecogen, Inc. ("Tecogen") responds to defendant Aegis Energy Services, Inc's, Request For Production of Documents No. 51 by stating the factual basis of its unfair competition claim under M.G.L. c. 93A, §§ 2 and 11, on the facts disclosed through discovery to date, as follows:

## GENERAL OBJECTIONS

1.   Tecogen objects to the First Request to the extent that it seeks to impose obligations on Tecogen that exceed the requirements of the Federal Rules of Civil Procedure. Tecogen will respond to the First Request consistent with the Rules and with the Court's order.

2.   Tecogen's General Objections are incorporated into each of Tecogen's specific responses and objections. The stating of specific responses and objections does not constitute a waiver of the Tecogen's General Objections.

## SPECIFIC SUPPLEMENTAL RESPONSES AND OBJECTIONS TO REQUEST NO. 51

### REQUEST NO. 51

All documents and things relating to, referring to, or pertaining to, the factual basis for each allegation made in Tecogen's complaint.

### RESPONSE TO REQUEST NO. 51

Tecogen objects to this request to the extent that it is overbroad and unduly burdensome. Subject to and without waiting this objection, Tecogen states that it has produced all documents in its possession, custody, and control responsive to this request.

Answering further, Tecogen states the factual basis of its unfair competition claim under M.G.L. c. 93A, §§ 2 and 11, as developed through Aegis's responses to Tecogen's First Request for the Production of Documents and First Set of Interrogatory Requests and Tecogen's third-party subpoenas to the New York entities associated with the Lakeland Project, as follows:

Tecogen operates in the distributed generation market and is a leading manufacturer of natural gas, engine-driven commercial and industrial cogeneration systems suitable for a variety of applications, including hospitals, nursing homes, and schools. Key features of Tecogen equipment include its heat recovery capability, remote monitoring and control through Tecogen's custom developed microprocessor and its associated computer program, and a low-emission engine that meets all current environmental standards in the U.S.

As part of its cogeneration business, Tecogen designs, manufacturers, sells and services the TECOGEN® Cogeneration Module CM-75 Standard ("CM-75 Standard") and the

2

CM-75 Low Emissions models ("CM-75 Low Emissions") (collectively, the "Tecogen modules"). The Tecogen modules are the product of over 25 years of research, development and innovation. Those development efforts eventually resulted in Tecogen's introduction in 1988 of the CM-75 High Output cogeneration module, followed by Tecogen's first low-emissions modules in 1990.

Since 1992, Tecogen has focused its efforts exclusively on the 75 kW Tecogen modules and the similar 60 kW product line. Among other innovations in these products, in 1998 Tecogen replaced the original microprocessor with a new custom developed, state-of-the-art remote monitoring and control system.

Until recently, Aegis did not design or build its own cogeneration modules. Rather, its business had consisted solely of designing, installing, maintaining, and operating modular cogeneration systems that used cogeneration modules designed and built by others.

Prior to June 24, 2005, Aegis had been, for over twenty (20) years, the exclusive distributor for Tecogen's modules in Massachusetts and Connecticut. As such, for over twenty years, Aegis had designed, installed and serviced cogeneration systems in Massachusetts and Connecticut that used Tecogen modules.

As of June 2005, Aegis Energy was a distributor but not the exclusive distributor for Tecogen modules in the State of New York, south of Orange and Dutchess Counties. That portion of New York was serviced by several non-exclusive entities including All Systems Cogeneration, Aegis Energy, AES-NJ Cogen Co., Inc., and AmericanDG, which is an affiliate of Tecogen.

3

In or around June 2005, a third party consultant designed a new cogeneration system for the Lakeland Central School District, which was located in the non-exclusive territory in New York. The consultant's plans for that new system specified the use of Tecogen modules. Tecogen's affiliate, AmericanDG, submitted to the project's lead contractor/consultant a proposal for the installation and use of Tecogen modules in the project.

Aegis also submitted a proposal that called for the installation and use of Tecogen modules at the Lakeland site. However, after Aegis failed to agree to Tecogen's terms for the timely payment for the Tecogen modules Aegis proposed to purchase for the Lakeland project, Aegis submitted a new bid for the sale, installation and use in that project of cogeneration modules designed and built by Aegis. Because Aegis was privy to Tecogen's confidential pricing information, Aegis knew exactly how to price its proposal so its own Aegis modules could be sold to Lakeland at a lower price than the Tecogen modules. The subcontractor accepted Aegis' proposal.

The Lakeland project was the first time Tecogen learned that Aegis had begun manufacturing, marketing and distributing its own cogeneration modules to compete against Tecogen's modules. As is apparent from a side-by-side comparison of the two companies' product lines, in designing and building its own cogeneration modules, the Aegis Group has copied significant aspects of the Tecogen modules. The similarities between the product lines is further reinforced by a comparison of the installation manuals. The Aegis modules' installation manual is practically a carbon copy of Tecogen's installation manual in all material respects.

4

As an authorized and trusted distributor, installer and service provider for the Tecogen modules, Aegis had access to Tecogen's modules and its intellectual property for years. Given the number and breadth of similarities between the text of the manuals, the design of the modules, and the functionality of the Aegis modules as described in its manual, and Aegis' privileged access to Tecogen's modules, manuals and intellectual property, it is evident that Aegis developed its own cogeneration module product line by copying, and/or assembling together components that copy, Tecogen's firmware, software, designs, components, text, drawings and related intellectual property.

At no time has Tecogen given Aegis its written or oral consent, a license or any other grant of a right to: (a) make, use, offer to sell or sell a module that makes any use of the Tecogen modules' designs, configurations, systems, methods, text, firmware or software; or (b) reproduce, make derivative works of, or distribute copyright protected material from Tecogen's installation manual.

Tecogen devoted years of time and resources to the development of its modules. By virtue of simply using copies of Tecogen's product designs, components, configurations, software and manual, Aegis has (a) saved at least hundreds of thousands of dollars in research and development costs that Tecogen had to incur to develop its own products, and (b) been able to bring its products to the market in far less time than it would have taken had Aegis designed and built its own modules and related materials through its own development and design efforts.

Additionally, Aegis took advantage of its position as Tecogen's distributor to steer business away from Tecogen and towards Aegis. Before the Lakeland project, Aegis had a Massachusetts project, which it has disclosed and identified in discovery as "Whitney".

This appears to have been an energy project in which Aegis retained ownership of the module it installed at Whitney and sold energy produced by that module to the site owner. Whitney is an example of a "bait and switch" type sale in which Aegis unfairly traded on Tecogen's excellent name, reputation, goodwill and products and Aegis' status as the exclusive Massachusetts distributor for Tecogen's modules, to get its foot in the door with the prospective customer and then, instead of installing a Tecogen module at the site, installing its own Aegis module, thus depriving Tecogen of a sale. In this regard, Tecogen believes the evidence will show that Aegis used Tecogen's modules and product information to begin the selling process and then late in the transaction Aegis quietly substituted its own module for the Tecogen module.

The Whitney sale appears to have been closed in September 2004, which is well before the Lakeland project and before Tecogen knew Aegis had built and was selling and/or installing its own modules instead of Tecogen modules. Tecogen is continuing -- through discovery -- to identify other sites at which Aegis engaged in a similar type of bait and switch sale.

In conclusion, Tecogen asserts that the following constitute unfair competition and unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11: (1) Aegis' actions in taking advantage of its position as an authorized and trusted Tecogen distributor to secretly copy Tecogen's intellectual property to make "knock-off" modules to compete against Tecogen's modules, and then to secretly sell or install its own knock-off modules in place of Tecogen's modules; (2) Aegis' actions in taking advantage of its insider knowledge of Tecogen's pricing structure and bidding strategies to submit lower bids to sell or install Aegis' own modules

6

to undercut other bids to sell or install Tecogen modules; (3) Aegis' actions in secretly building its own module which it then sold and/or installed, without Tecogen's knowledge or consent, in place of Tecogen's modules under circumstances where Aegis was Tecogen's exclusive distributor and Tecogen believed, due to Aegis' failure to disclose its actions, that Aegis was representing Tecogen and trying to sell Tecogen modules.

Tecogen is claiming for its damages all profits it lost as a result of every sale or installation by Aegis of an Aegis module instead of a Tecogen module. At present, Aegis is the party best situated to quantify these damages because it alone knows when it made its first sale or installation of an Aegis module, and how many modules it has sold or installed since that time. However, Tecogen will be serving interrogatories on Aegis in which Tecogen requests that Aegis produce the accounting and financial information relevant to each of those Aegis module transactions to further quantify the damages claimed here.

Dated: April 24, 2007

Responses by,

TECOGEN, INC.,

By its attorneys,

Julie A. Frohlich (BBO #554707)
Derek B. Domian (BBO #660568)
GOULSTON & STORRS, PC
400 Atlantic Avenue
Boston, MA 02110
Tel: (617) 482-1776
Fax (617) 574-4112

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail (by hand) on April 24, 2007

7