# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TECOGEN, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-11823 RCL |
| | ) |
| v. | ) |
| | ) |
| AEGIS ENERGY SERVICES, INC., | ) July 28, 2008 |
| AEGENCO, INC., and AEGIS | ) |
| GENERATION COMPANY | ) |
| | ) |
| Defendants | ) |

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Aegis Energy Services, Inc., and Aegenco Inc. (collectively hereinafter, "Defendants" or "Aegis") respectfully submit this Memorandum of Law in opposition to plaintiff Tecogen's Motion For Partial Summary Judgment. Aegis submits that for reasons stated herein, there are genuine issues of material fact that would require defendants' tortious interference counts and their unfair competition count to go to trial.

## I.    Introduction

Tecogen has moved for summary judgment on Aegis' separate counts for intentional interference with contractual relations involving Tecogen's tortious actions against Aegis on the Chemung County project (Count I), and on the Lakeland School District project (Count II). In addition, Tecogen has glossed over Aegis' unfair competition claim (Count III) as a repackaging of the Counts I and II.

In Tecogen's Memorandum of Law in Support of It's Motion For Partial Summary Judgment (Docket No. 41), a number of selected facts are presented in an attempt to paint a picture of Tecogen's actions as simply robust competition between competitors in the marketplace. However, Tecogen's picture is purposely blurred, insomuch as Tecogen has excluded many facts that support Aegis' intentional interference and unfair competition claims.

Aegis respectfully submits that Tecogen's version of the facts to be gleaned from its affidavits and documents are too disparate to admit it as a set of undisputed material facts, and accordingly, Tecogen's summary judgment on these issues is inappropriate and must be denied.

## II.    Applicable Law

### a. Specific facts must show that there is a genuine issue for trial

Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions to file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

For the reasons stated herein, Aegis respectfully submits that there are abundant specific facts to demonstrate that Tecogen tortiously interfered with Aegis' contracts, and competed unfairly in its course of action.

### b. The law on Intentional Interference with Contractual Relations

The Massachusetts courts adopted the tort of intentional interference in the early 1870's. In Walker v. Cronin, 107 Mass. 555 (1871), the Court was presented with the issue of "whether it is actionable for one person to entice another to refuse to perform a contract made with a third, where no relation of master and servant exists." Walker, 107 Mass. at 561 & 564. The Walker Court found that "[t]he intentional causing of such loss to another, without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong." Id.

The Restatement (Second) of Torts has defined this tort as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts, § 766 (1979).

2

Under Massachusetts law, in an action for intentional interference with contractual relations, the plaintiff must prove that (1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. See, Harrison v. Netcentric Corp., 433 Mass. 465, 476, 744 N.E.2d 622, 632 (Mass. 2001); Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 397, 668 N.E.2d 333 (1996); Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994); Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476, 589 N.E.2d 1241, 1245 (1992). In other words, to establish a claim of intentional interference with contractual relations, a plaintiff must show, among other things, that "he had a contract with a third party [and] the defendant knowingly induced the third party to break that contract." Magerer v. John Sexton & Co., 912 F.2d 525, 531 (1st Cir. 1990) (citing, United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20, 21 (1990)).

Aegis respectfully submits that the evidence and deposition testimony unequivocally support the legal test for intentional interference with contractual relations, and at the very least, present genuine issues of material fact that overcome a motion for summary judgment.

### III.    Intentional Interference with Contractual Relations

As the Court may appreciate, the actions that led to Aegis' intentional interference claims are numerous, and pertinent activities are fact intensive. Aegis submits that the facts presented herein strongly support its claims for tortious interference, and contradict Tecogen's assertions. Aegis respectfully submits that the activities identified below raise genuine issues of material fact for which Tecogen's summary judgment should be denied.

a.     Lakeland School District Project

On June 21, 2004, Aegis proposed the installation of cogeneration systems for the Lakeland School District (the "Lakeland Project") to the designated engineering firm for the project, Energy Concepts Engineering ("Energy Concepts") of Rochester, New York. Exhibit L.[1] This proposal included, *inter alia,* installation of eleven (11) turnkey systems "per the Energy Concepts drawings dated March 17, 2004." Id. As a buyer and reseller of Tecogen cogeneration modules, Aegis considered proposing, and ultimately did propose, Tecogen cogeneration modules for the Lakeland Project.

Tecogen states that it was aware of the Lakeland Project through a sale representative, R.L. Kistler, in late 2003. Docket No. 41, p.9. Through another Tecogen sales representative, Advanced Comfort Systems, bids were sent out to J&M Heating and A/C, Inc., of New Rochelle, New York ("J&M") for eleven Tecogen cogeneration modules. Id. Tecogen was also very much aware that it was J&M who was responsible for issuing the purchase order (PO) for the cogeneration modules. This was confirmed by Mr. Jeffrey Glick, the Regional Sales Manager for Tecogen for the east coast, Mississippi east, and other parts of the country. Mr. Glick identified himself as Tecogen's point man for this kind of project. Glick Dep., p.16, l.23 -p.17, l.15; Exhibit EE.

On April 18, 2005, Aegis submitted two price quotations to J&M for the Lakeland Project; one price quotation was for the delivery of Tecogen cogeneration modules, and the other was for the delivery of Aegis' Aegen cogeneration modules. The quotation for the Aegen modules was given at the request of J&M for another manufacturer's product.

---

[1] Exhibit references continue from Defendant's Motion for Summary Judgment, which ended on Exhibit K.

On April 27, 2005, Aegis received a purchase order (PO) from J&M for the delivery of eleven *Tecogen* cogeneration modules for the Lakeland Project. Exhibit M. A valid contract and beneficial business relationship was thus established between Aegis and J&M. Aegis had bid successfully with *Tecogen* cogeneration modules for the Lakeland Project and intended to deliver these modules based on this purchase order.

On May 2, 2005, Aegis executed Purchase Order No. 05-475LV to Tecogen for twelve (12) cogeneration modules in support of the April 27, 2005 contract with J&M for the Lakeland Project. Exhibit N. Tecogen's Regional Sales Manager, Mr. Glick, confirmed that Tecogen would not likely receive a purchase order for cogeneration modules from a representative before the representative had a purchase order from a mechanical contractor in their hand. Glick Dep., p.70, ll.15-18; Exhibit EE.

Tecogen was aware that Aegis had bid on the Lakeland Project, and that Aegis had taken a lead position. Tecogen told its sales representatives to "back away" from the project.

> Q. But you are aware they [Aegis] are bidding on Lakeland?
> A. It's now very obvious. In fact, the way I'm writing to Lee [Vardakas of Aegis], it looks as though he is taking the lead. I'm sure already told Ray Hickey [Sales Engineer for Advanced Comfort Systems] and those guys that, you know, back away, they are involved.

Glick Dep., p.71, ll.7-13; Exhibit EE.

On May 6, 2005, Tecogen sent pricing information to Aegis for the Lakeland Project. Exhibit O. Tecogen increased the price of its cogeneration modules to include other representatives, such as Ray Hickey of Advanced Comfort Systems, who were involved in the presale activities. Additionally, as part of this quotation, Tecogen required substantial intermediate payments. Effectively, Tecogen would build two or four cogeneration modules, but would not order parts for the next two or four modules until

the first two or four modules were paid in full. Exhibit O, p.4, n.4. Tecogen had never before required these terms and conditions from Aegis. Tecogen was aware that buyers such as Aegis could not meet this payment scheme unless the funds from the project were structured accordingly, i.e., funds would have to be paid upfront by the mechanical contractor. However, Mr. Glick admitted that he sent these pricing terms and conditions without ever seeing a proposed payment schedule for the project. Glick Dep., p.69, ll.10-24; Exhibit EE. Tecogen had started putting up obstacles, making it more difficult for Aegis to deliver on its contract with J&M.

On May 17, 2005, Tecogen revised its pricing based on discussions with Lee Vardakas of Aegis. Exhibit P. In this price quotation, Tecogen introduced the condition of a two-party check. Tecogen further states that in order to meet the Lakeland Project delivery dates, it would need a new purchase order from Aegis by May 20, 2005. Exhibit P, p.1. Mr. Glick confirmed that Tecogen had never before asked for a two-party check from any of its representatives or from Aegis. Glick Dep., p.76, ll.6-18; Exhibit EE.

Later that same day, May 17, 2005, Aegis revised its purchase order, Purchase Order No. 05-475LV REVISED, based on the negotiated pricing schedule with increased prices, and submitted the revised PO to Tecogen. Aegis asks for written confirmation of acceptance. Exhibit Q.

At this time, May 17, 2005, it is undisputed that Aegis has a purchase order from J&M to deliver eleven *Tecogen* cogeneration modules for the Lakeland Project, which Aegis has accepted. Aegis has also submitted its revised purchase order to Tecogen for these cogeneration modules.

Tecogen *internally* accepts this purchase order.

6

> Q. To your knowledge, did Tecogen accept this purchase order?
> A. Let me say, I believe, we started to order components based on this. It was entered into our production schedule, so I believe we did. *Internally we accepted it.*

Glick Dep., p.78, ll.6-11 (emphasis added); Exhibit EE.

> Q. When you fill out an order entry form and enter it into your system so that manufacturing can start ordering parts, does that mean Tecogen has accepted the purchase order?
> Ms. Frohlich: Objection.
> A. It means that we are going to go buy the parts like you said. We are going to start cutting some Pos for parts. *For all intents and purposes, we have accepted it.*

Glick Dep., p.93, ll.9-18 (emphasis added); Exhibit EE.

When Tecogen began ordering parts for the cogeneration modules, it required that Aegis provide a bond to insure payment. Exhibit R. On May 25, 2005, Aegis submitted to Tecogen a copy of the bond. Exhibit S. Mr. Glick acknowledged that this satisfied Tecogen's requirement. Glick Dep., p.99, ll.15-19; Exhibit EE. Consequently, by May 25, 2005, Aegis had met all of Tecogen's payment terms and conditions, and was ready to fulfill its contract with J&M to supply *Tecogen* cogeneration modules for the Lakeland Project.

However, Tecogen changed its mind. Even though Tecogen was already competing with Aegis through Tecogen's affiliate, AmericanDG ("ADG"), Tecogen started to view Aegis as a more significant competitor. Independent of, and in spite of, the purchase order that Aegis had been awarded from J&M for the Lakeland Project with *Tecogen* cogeneration modules, Tecogen changed course in an attempt to scuttle the deal.

> Q. What actions did you take or were instructed to take based on the information that you now had?
> A. Well, I know at that point that all information, all communication with Aegis whether it be commercial, technical, would stop right then and there.
> Q. I want to make sure I'm clear. All information with Aegis would stop?

A. Right. I wasn't going to call and give them prices. We weren't going to
talk about business. All of a sudden, we had a competitor in our
neighborhood, in our backyard.

Glick Dep. p.41, l.23 – p.42, l.12; Exhibit EE.

On June 3, 2005, Tecogen effectively went around Aegis and J&M and sent a
letter directly to Atlantic Energy Services, Inc., of Saratoga Springs, New York, the
energy service company (ESCO) for the Lakeland Project, questioning the current
(Aegis) proposal, insomuch as Aegis had not bid the Tecogen cogeneration modules in a
"factory packaged" integrated system.[2] Exhibit T. The letter highlighted, *inter alia*,
inconsistent workmanship, warranty deficiencies, and factory testing, if the system is not
integrated. Id. This letter was sent even though Mr. Glick had acknowledged that Aegis
had successfully performed their own form of an integration system with Tecogen
cogeneration modules before, and was sure that Aegis was going to do the same for the
Lakeland Project. Glick Dep., p.103, l. 14 – p.104, l.8; Exhibit EE.

Sometime between June 3 and June 6, 2005, Tecogen and its affiliate, ADG,
visited Atlantic Energy and discussed direct pricing for twenty-five cogeneration
modules, eleven of which would be for the Lakeland Project. Tecogen's proposal to
Atlantic Energy was to "supply units directly to Atlantic Energy Services based on each
project's schedule." Exhibit U. If Atlantic Energy agreed to Tecogen's proposal, Aegis
would be effectively phased out of supplying cogeneration modules for the Lakeland
Project. Mr. Glick acknowledged that Tecogen was doing this *deliberately* to remove
Aegis from the Lakeland Project.

Q. Does this proposal phase out Aegis in this contract?
A. I think, at this point, we are absolutely doing that.

---

[2] Atlantic Energy Services, along with Energy Concepts, and the project's architect, are the entities driving
the Lakeland Project.

Q. *Is it being done deliberately?*
A. *At this point, I believe so, yes.*
Glick Dep., p.115, ll.11-16 (emphasis added); Exhibit EE.

Q. At the time you received the PO from Aegis, you were under the impression that Aegis had received a purchase order from J&M, correct?
A. We were.
Q. So Aegis had the contract, correct?
Ms. Frohlich: Objection.
A. Aegis had the contract, correct.
Q. *You are deliberately trying to phase Aegis out of that contract with this proposal to Atlantic, correct?*
A. *That is correct.*
Glick Dep., p.116, ll.1-12 (emphasis added); Exhibit EE.

As a consequence of Tecogen's deliberate and improper conduct and interference, Atlantic Energy removed from J&M the responsibility of purchasing cogeneration modules for the Lakeland Project, thus nullifying the contract between J&M and Aegis. Exhibit V. Atlantic Energy had bit on Tecogen's bait, and decided to purchase eleven cogeneration modules directly from Tecogen. Id., ¶ 2.

Aegis had lost its contract with J&M to supply *Tecogen* cogeneration modules for the Lakeland Project. Aegis was compelled to prepare and bid yet again on the Lakeland Project. On June 14, 2005, Aegis submitted a price quotation to Atlantic Energy. Exhibit W. In order to stay competitive with Tecogen's twenty-five unit offer, Aegis was forced to offer cogeneration modules at significantly reduced prices for the eleven Lakeland Project cogeneration modules, as well as other modules for various Atlantic Energy projects. Id.

Based on Aegis' new offer to Atlantic Energy, and J&M's insistence that it keep the responsibility for choosing and supplying the cogeneration modules, Atlantic Energy reconsidered, and rescinded its June 10, 2005 letter (Exhibit V) to J&M, allowing J&M to be responsible once again for the purchase and installation of the cogeneration units as

originally agreed. Exhibit X. J&M promptly awarded the Lakeland contract to Aegis for *Aegen* cogeneration modules.

In summary, the evidence shows that Aegis had a valid purchase order from J&M for eleven *Tecogen* cogeneration modules for the Lakeland Project. Aegis then submitted a purchase order to Tecogen for the Lakeland Project. Tecogen acknowledged Aegis' contract with J&M and internally accepted Aegis' PO, ordering parts for the cogeneration module build. Tecogen was aware that Aegis had designed and developed its own cogeneration module, and presented obstacles in the form of contract terms and conditions for Aegis' purchase of the cogeneration modules. In an eleventh hour bid to remove Aegis from the Lakeland Project, Tecogen then bypassed Aegis and J&M, going to Atlantic Energy Services, in an admittedly deliberate attempt to usurp Aegis' contract with J&M, and provide cogeneration modules directly from Tecogen to Atlantic Energy. Tecogen's deliberate interference was initially successful. This forced Aegis to submit a bid for twenty units, nine more than the Lakeland Project, at a significantly reduced price in order to remain in consideration for the Lakeland Project. Aegis ultimately won the Lakeland contract from J&M (again), but only after spending a significant amount of time and energy addressing Tecogen's deliberate interference, and at a significant loss of profit.

Aegis respectfully submits that the evidence incontrovertibly demonstrates that (1) Aegis had a contract with J&M; (2) Tecogen knowingly and deliberately interfered with that contract; (3) Tecogen's interference, in addition to being intentional, was improper in motive and means; and (4) Aegis was harmed by Tecogen's tortious actions. Tecogen's motion for summary judgment on this issue should be denied.

      b.     Chemung County Project

As discussed above, Tecogen, through its deliberate actions, had forced Aegis to offer Atlantic Energy a bid for twenty cogeneration modules, which represented many more modules than were required for the Lakeland Project. Aegis was compelled to offer these cogeneration modules at extremely low prices just to remain a player in the mix. Four of the additional cogeneration modules in Aegis' bid were for a project at Chemung County Health Center in Elmira, New York ("Chemung County Project"). On June 17, 2005, Atlantic Energy awarded Aegis a purchase order for Aegen cogeneration modules for the Chemung County Project. Exhibit Y. Up to this point, the project was in a competitive bidding mode. Although Tecogen had bid on the Chemung County Project through its representative, Advanced Comfort Systems, it did not secure a purchase order award from Atlantic Energy. On June 23, 2005, Aegis confirmed receipt *and* acceptance of Atlantic Energy's purchase order. Exhibit Z. A valid contract and beneficial business relationship was initiated between Aegis and Atlantic Energy for the Chemung County Project. Tecogen was now in damage control.

On July 18, 2005, Tecogen sent a letter to Mr. Robert Page of Chemung County Health Center – Nursing Facility, stating that it was very surprised and dismayed to learn that it had not been awarded the contract.[3] Exhibit AA, pp.3-6. Tecogen also sent this letter to the engineering firm in charge of the Chemung County Project, Clough Harbor Associates. Exhibit AA, p.2. Once again, Tecogen interfered with an Aegis contract award, and this time ultimately usurped Aegis' contract for Chemung County.

---

[3] This is an exact letter of one previously sent on July 11, 2005 to Atlantic Energy for the Lakeland Project. Exhibit BB. Tecogen was pressing on all fronts to remove Aegis from these projects.

In its letter, Tecogen called into question the certification of the Aegis' cogeneration modules, including the New York State Interconnect Requirement ("NYSIR") and The California Rule 21, and referred to the Aegis cogeneration module as an "uncertified appliance." Exhibit AA. The assertions in this letter are false. For example, in its letter, Tecogen opportunistically omitted that a type-tested relay may be used in-line with a cogeneration module to meet the NYSIR, and that Aegis' design employs this relay, thus meeting the NYSIR. Additionally, given that the Chemung County Project and the Lakeland Projects are in New York, the reference to the Aegis' modules not meeting The California Rule 21 was clearly subterfuge for unknowing purchasers. The rule does not apply to New York.

On July 22, 2005, Tecogen sent an email from Mr. Wes Schuster, its executive vice president, to its sales representatives, requesting that they take actions to covertly obtain Aegis' price quotation for the Chemung County Project. Exhibit CC. This knowledge would give Tecogen the opportunity to offer a sweetheart deal to Atlantic Energy in an effort to dislodge Aegis from the Chemung County Project. Tecogen's interference was deliberate and tortious. In his email, Mr. Schuster states, "These prices are one time only prices and are *purely to dislodge Aegis* from winning these orders and more importantly from starting servicing in these territories." Id. (emphasis added).

Tecogen did covertly obtain a copy of Aegis' quote, and on July 29, 2005, sent a low-ball price quotation to Atlantic Energy through its representative Advanced Comfort Systems. Exhibit DD. That same day, Atlantic Energy informed Aegis that it was rescinding its purchase order for Aegen cogeneration modules for the Chemung County

Project. All of this activity occurred *after* Aegis had been awarded the June 17, 2005 purchase order for the Chemung County Project.

The combination of the letter to Robert Page and the low-ball offer served to dislodge Aegis from the Chemung County Project.

Tecogen states that it did not cause Aegis' bid to fail. Docket No. 41, p.13. However, Tecogen fails to mention that Aegis was the cogeneration company first awarded a purchase order for the Chemung County Project with *Aegen* cogeneration modules, independent of Tecogen's efforts to get a *Tecogen* module specified for the project. It was only after Tecogen's concerted damage control efforts to dislodge Aegis from the Chemung County and Lakeland Projects, that Aegis' purchase order for the Chemung County Project was rescinded.

It is undisputed that Aegis received a purchase order for the Chemung County Project. It is undisputed that after this contract award, Tecogen sent letters to Atlantic Energy and Chemung County officials questioning the decision and certification of the Aegis' cogeneration modules. It is undisputed that Tecogen covertly acquired Aegis' bid for the Chemung County Project and through its sales representative, Advanced Comfort Systems, submitted a lower price quotation to Atlantic Energy in an effort to *dislodge* Aegis from the Chemung County Project. It is undisputed that Atlantic Energy rescinded its purchase order and Aegis lost the Chemung County Project.

The evidence demonstrates that (1) Aegis had a contract with Atlantic Energy; (2) Tecogen knowingly and deliberately interfered with that contract; (3) Tecogen's interference, in addition to being intentional, was improper in motive and means; and (4) Aegis was harmed by Tecogen's tortious actions.

Given the above specific facts regarding the Chemung County Project, Aegis respectfully submits that the evidence presents, *at the very least*, genuine issues of material fact for which Tecogen's motion for summary judgment should be denied.

      c.    Architects and Engineers are not precluded from considering and accepting other cogeneration manufactures not listed in the specification

Tecogen makes numerous references and goes to great lengths to impress on this Court that a *Tecogen* cogeneration module was specified by the planning entities, architects and engineering firms for the Lakeland and Chemung County Projects. Tecogen has failed to mention that in both projects, the architects and engineers are not precluded from considering other cogeneration module manufacturers that are comparable or equal. This of course is abundantly clear in the Lakeland Project, where Aegis' *Aegen* cogeneration modules were indeed accepted, and are successfully installed and currently in operation.

Mr. Chris Cafer, an associate with Energy Concepts Engineering, the engineering firm on the Lakeland Project, testified that other manufacturers would not be excluded from consideration:

> Q. Looking at the specification, even though you stated that W.A. Kraft might require substantive changes to be implemented in the Lakeland Project, you still listed them in this specification. Why is that?
> A. Because they could provide a product that would have handled the application.
> ...
> In many projects, if it's publicly funded, you have a mandatory responsibility to bid three vendors in there and in most cases you'll find very full well that out of three vendors, one of them is going to be superior for some reason in its nature, its size, its operating performance, its efficiency.
> ...
> That doesn't mean that the other product is a detriment in any way or inferior in a major way.

Q. You had said "three vendors," but yet you only listed two. *Does this mean that this specification is open to more that these two vendors* [W.A. Kraft & Tecogen]?
A. *Could be, yes.*
...
There is a constant conversation as to who a viable entity would be for the selection of products. *There doesn't have to be a minimum quantity of selections at that point. It becomes the most appropriate selections at that point and that's a discussion with the performance contractor.* They will typically look to us and say who fits this application. We initially dictate that and then they look at it from a standpoint of yes, we would like to work with them, no; we would not like to work with them; we had experiences, good, bad or indifferent; budget considerations, whatever. ...
Q. Does the architect rely on Energy Concepts to make the decision as to which manufacturer best meets the specification?
A. Yes. And that's almost solely because their qualification and experiences, this is not what they do, this is what we do. So they rely on us for the cogen input to that.

Cafer Dep., p.21 @ 10:30 – p.25 @ 10:35 (emphasis added); Exhibit FF.

In fact, Mr. Cafer specifically stated that there was no absolute criterion to select a Tecogen cogeneration module just because it was listed in the specification.

Q. Is a functional equivalent cogen acceptable under these contract provisions?
A. Yes. If we've been asked and had the opportunity to evaluate it through that criteria that I gave you earlier, of which that's certainly all of the items, yes.
Q. *So you did not have to use a Tecogen cogen for this project? That wasn't an absolute criteria?*
A. *No, it wasn't absolute.* Tecogen was certainly used as an acceptable product.

Cafer Dep. p.33 @ 10:47 – p.34 @ 10:48 (emphasis added); Exhibit FF.

Tecogen's emphasis to this Court that having its product listed in the specification somehow gives it an entitlement to contract selection is misplaced. Although getting specific equipment listed in the specification would certainly be beneficial in the bidding cycle, and is typically an advantage for dominant manufacturers in the industry, this is by no means indicative of an ultimate contract award. The lead engineers on these projects

15

are not bound to the manufacturers listed in the specification. They can, and often do, deviate from the listed manufacturers.

## IV.    Unfair Competition

Tecogen states that its challenged conduct must rise to a "level of rascality that would raise an eyebrow of someone injured in the rough and tumble world of commerce." Docket No. 41, p.19.

Regarding the Tecogen letters questioning the certification of the Aegis cogeneration modules, first, it is at the very least a genuine issue of material fact whether aspects of those letters were true, exaggerated, or deliberately misleading, and whether the letters played a detrimental role in dislodging Aegis from the Chemung County Project. The letters clearly got the attention Tecogen sought, and proved pivotal in reexamining Aegis' contract award from Atlantic Energy for the Chemung County Project. For the reasons stated above, Aegis submits that the statements made in these letters are false, and included exaggerations and misleading material, and were pivotal in Atlantic Energy rescinding its contract with Aegis.

Second, although Tecogen dismisses the effect of these letters on the Lakeland Project because Tecogen failed to dislodge Aegis' contract with J&M for Aegen cogeneration modules, it is clear that Aegis had to spend time and money to vigorously defend its reputation and goodwill to the allegations Tecogen presented to Energy Concepts, Atlantic Energy, and Lakeland officials. The credibility and viability of Aegis' cogeneration module was on the line, and Atlantic Energy was actively considering the Aegis cogeneration modules for other projects as well (Aegis had a twenty module price quotation on the table). In its all out effort to dislodge Aegis on these projects, Tecogen

certainly did "raise an eyebrow" with a damaging letter that was inaccurate and misleading.

Moreover, Tecogen's bid to dislodge Aegis from the Lakeland Project at all costs forced Aegis to forgo its winning bid with *Tecogen* cogeneration modules, and resubmit at a substantially lower price (and much less profit) a bid with Aegis' *Aegen* cogeneration modules. Tecogen's eleventh hour visit to Atlantic Energy with its affiliate ADG, a direct competitor of Aegis, offering a sweetheart deal for twenty-five cogeneration modules, eleven of which were for the Lakeland Project, was to the complete detriment to Aegis (and J&M) and certainly raises an eyebrow.

Furthermore, Tecogen's covert actions to obtain Aegis' winning purchase order and then submit a low-ball quotation to Atlantic Energy with the sole intent of dislodging Aegis from the Chemung County Project certainly raises an eyebrow.

Tecogen's actions outside of its intentional interference with Aegis' contracts go beyond healthy competition in the free market, and demonstrate unfair practices.

In regards to Tecogen's undermining of its relationship with Aegis, from Mr. Glick's testimony it is evident that although Tecogen was aware that Aegis had won the purchase order from J&M on the Lakeland project, it acted deliberately to remove Aegis from those projects. Tecogen's actions commenced *before* Tecogen had terminated its relationship with Aegis. According to Mr. Glick, Tecogen made a concerted and deliberate effort not to talk about the project business with Aegis, and to deliberately phase Aegis out of the contract; a contract in which Tecogen would have profited as well, selling eleven *Tecogen* cogeneration modules had Aegis been allowed to go forward with its winning bid. Tecogen had sought to remove Aegis from these projects at any cost.

Aegis respectfully submits that there exist genuine issues of material fact, and requests that this Court deny Tecogen's motion for summary judgment for Aegis' unfair competition claim.

Respectfully submitted,

**AEGIS ENERGY SERVICES INC., and AEGENCO, INC.**

Date: July 28, 2008                    By:    /s/ Robert Curcio
                                              Anthony P. DeLio
                                              Peter W. Peterson
                                              Robert Curcio
                                              **DELIO & PETERSON, LLC**
                                              121 Whitney Avenue
                                              New Haven, CT 06510
                                              Tel.: (203) 787 – 0595
                                              Fax: (203) 787 – 5818
                                              Attorneys for Defendants
                                              *Pro Hac Vice*

                                              William A. Zucker, BBO # 541240
                                              David Himelfarb, BBO# 649596
                                              McCARTER ENGLISH
                                              265 Franklin Street
                                              Boston, MA 02110
                                              (617) 449-6500
                                              Attorneys for Defendants

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, was filed electronically on July 28, 2008. Notice of the filing will be sent to those who are currently on the list to receive email notices by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:    /s/ Robert Curcio
        Anthony P. DeLio
        Peter W. Peterson
        Robert Curcio
        DELIO & PETERSON, LLC
        121 Whitney Avenue
        New Haven, CT 06510
        (203) 787-0595
        Admitted *Pro Hac Vice*

        William A. Zucker, BBO # 541240
        David Himelfarb, BBO# 649596
        McCARTER ENGLISH
        265 Franklin Street
        Boston, MA 02110
        (617) 449-6500

        Attorneys for Defendants

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**L**



**AEGIS ENERGY SERVICES INC.**

413/746-5400 • FAX 413/746-3242
WWW.AEGISENERGYSERVICES.COM

2097 RIVERDALE STREET, WEST SPRINGFIELD, MA 01089 • P.O. BOX 2511, SPRINGFIELD, MA 01101-2511

June 21, 2004

Mr. William Cristofaro
Energy Concepts Engineering
3445 Winton Place, Suite 102
Rochester, NY 14623

<u>Cogeneration System Description for Lakeland School District</u>

<u>Walter Panas</u>

Installation of a Turnkey 300 KW cogeneration system located in existing boiler room per Energy Concepts drawings dated March 17, 2004.

The cogeneration system includes:

- ❖ Four (4) 75KW cogeneration modules.
- ❖ Four (4) Pump module station complete with pump and thermostatic mixing valve.
- ❖ Use of new mechanical room(constructed by others) to house cogeneration modules.
- ❖ Hydronic distribution(Type L copper and Schedule 40 steel) to chiller heat medium loop, and domestic hot water thermal load, and radiator system including pumps, heat exchangers, control valves.  Hydronic piping to WFC chillers from main loop not included(secondary loop)
- ❖ Cogeneration natural gas piping from 4" boiler room gas service to cogeneration units including regulators and valve train to supply a minimum of 24" w.c. for each unit.
- ❖ Cogeneration exhaust piping (schedule 40 Steel) including emissions package (3-way NSCR catalyst), exhaust silencer and marine adapter.  Flues will terminate 30" above boiler room roofline.
- ❖ Electrical interconnection with Con Ed utilizing the standard induction generator electrical interface and utility grade relay package.  Electrical interconnection point will be at the #52 Breaker including conduit, wiring, and related electrical devices.
- ❖ Electrical load following software provisions.
- ❖ Glycol based heat dissipation system located outside mechanical room to keep system operational when thermal loads are light.
- ❖ All cogeneration system temperature controls for integration with new DDC network provided by others.
- ❖ Proper fresh air ventilation for cogeneration modules.
- ❖ Drawing package including shop drawings, submittals, and as-built drawings.
- ❖ System startup including factory authorized startup of cogeneration modules.
- ❖ Other appurtenances to make the system operational.

The System Excludes:

- ❖ Any Applicable Sales/use taxes.
- ❖ Any utility charges including metering assessments
- ❖ Any Asbestos Abatement

**Budget Turnkey Installed Cost**            $ 598,000.00

## VanCortlandville

Installation of a Turnkey 75 KW cogeneration system located in existing boiler room per Energy Concepts drawings dated March 17, 2004.

The cogeneration system includes:

- ❖  One (1) 75KW cogeneration module.
- ❖  One (1) Pump module station complete with pump and thermostatic mixing valve.
- ❖  Use of existing boiler room to house cogeneration module.
- ❖  Hydronic distribution(Type L copper and Schedule 40 steel) to hydronic space heating and domestic hot water, and radiator thermal load including pumps, heat exchangers, control valves.
- ❖  Cogeneration natural gas piping boiler room gas service to cogeneration unit including regulators and valve train to supply a minimum of 24" w.c. for each unit.
- ❖  Cogeneration exhaust piping (schedule 40 Steel) including emissions package (3-way NSCR catalyst), exhaust silencer and marine adapter. Flue will terminate outside of boiler room in a sidewall configuration.
- ❖  Electrical interconnection with Con Ed utilizing the standard induction generator electrical interface and utility grade relay package. Electrical interconnection point will be at the #52 Breaker including conduit, wiring, and related electrical devices.
- ❖  Electrical load following software provisions.
- ❖  Glycol based heat dissipation system located on boiler room roof to keep system operational when thermal loads are light.
- ❖  All cogeneration system temperature controls for integration with new DDC network provided by others.
- ❖  Proper fresh air ventilation for cogeneration modules.
- ❖  Drawing package including shop drawings, submittals, and as-built drawings.
- ❖  System startup including factory authorized startup of cogeneration modules.
- ❖  Other appurtenances to make the system operational.

The System Excludes:

- ❖  Any Applicable Sales/use taxes.
- ❖  Any utility charges including metering assessments
- ❖  Any Asbestos Abatement

**Budget Turnkey Installed Cost**            $ 188,000.00

## Copper Beech

Installation of a Turnkey 225 KW cogeneration system located in mechanical room per Energy Concepts drawings dated March 17, 2004.

The cogeneration system includes:

❖ Three (3) 75KW cogeneration modules.
❖ Three (3) Pump module station complete with pump and thermostatic mixing valve.
❖ Use of new mechanical room(constructed by others) to house cogeneration modules.
❖ 100 ft of 4" Hydronic distribution(Type L copper and Schedule 40 steel) to hydronic space heating and domestic hot water thermal load including pumps, heat exchangers, control valves. Piping will be configured in a primary/secondary arrangement with redundancy on primary loops.
❖ Cogeneration natural gas piping from new mechanical room gas service to cogeneration units including regulators and valve train to supply a minimum of 24" w.c. for each unit.
❖ Cogeneration exhaust piping (schedule 40 Steel) including emissions package (3-way NSCR catalyst), exhaust silencer and marine adapter. Flues will terminate 30" above mechanical room roof-line.
❖ Electrical interconnection with Con Ed utilizing the standard electrical interface. Electrical interconnection point will be at the electrical room switchboards located adjacent to the mechanical area including conduit, wiring, and related electrical devices.
❖ Motor control center for pumps, fans, feeders, etc...
❖ Electrical load following hardware and software provisions.
❖ Glycol based heat dissipation system located outside mechanical room to keep system operational when thermal loads are light.
❖ All cogeneration system temperature controls with integration with new DDC network(provided by others) and wiring.
❖ Proper fresh air ventilation for cogeneration modules.
❖ Drawing package including shop drawings, submittals, and as-built drawings.
❖ System startup including factory authorized startup of cogeneration modules.
❖ Other appurtenances to make the system operational.

The System Excludes:

❖ Any Applicable Sales/use taxes.
❖ Any utility charges including metering assessments
❖ Any Asbestos Abatement

**Budget Turnkey Installed Cost**        $ 447,000.00

## Lakeland High School

Installation of a Turnkey 225 KW cogeneration system located in mechanical room per Energy Concepts drawings dated March 17, 2004.

The cogeneration system includes:

❖ Three (3) 75KW cogeneration modules.
❖ Three (3) Pump module station complete with pump and thermostatic mixing valve.
❖ Use of new mechanical room(constructed by others) to house cogeneration modules.
❖ 100 ft of 4" Hydronic distribution(Type L copper and Schedule 40 steel) to hydronic space heating and domestic hot water thermal load including pumps, heat exchangers, control valves. Piping will be configured in a primary/secondary arrangement with redundancy on primary loops.
❖ Cogeneration natural gas piping from new mechanical room gas service to cogeneration units including regulators and valve train to supply a minimum of 24" w.c. for each unit.
❖ Cogeneration exhaust piping (schedule 40 Steel) including emissions package (3-way NSCR catalyst), exhaust silencer and marine adapter. Flues will terminate 30" above mechanical room roof-line.

- ❖ Electrical interconnection with Con Ed utilizing the standard electrical interface. Electrical interconnection point will be at the electrical room switchboards located adjacent to the mechanical area including conduit, wiring, and related electrical devices.
- ❖ Motor control center for pumps, fans, feeders, etc…
- ❖ Electrical load following hardware and software provisions.
- ❖ Glycol based heat dissipation system located outside mechanical room to keep system operational when thermal loads are light.
- ❖ All cogeneration system temperature controls with integration with new DDC network(provided by others) and wiring.
- ❖ Proper fresh air ventilation for cogeneration modules.
- ❖ Drawing package including shop drawings, submittals, and as-built drawings.
- ❖ System startup including factory authorized startup of cogeneration modules.
- ❖ Other appurtenances to make the system operational.

The System Excludes:

- ❖ Any Applicable Sales/use taxes.
- ❖ Any utility charges including metering assessments
- ❖ Any Asbestos Abatement

**Budget Turnkey Installed Cost**          $ 466,000.00

Regards,

Lee Vardakas
Operations Manager

E
X
H
I
B
I
T

M

04/27/2005   10:15   9146332775                    J&M HEATING 2 A/C                    PAGE   01/01
Case 1:05-cv-11823-RCL     Document 8-3     Filed 10/19/2005     Page 2 of 28

**J & M HEATING AND A/C, INC.**
48 GRAND STREET
NEW ROCHELLE, NY 10801

# Purchase Order

Show this Purchase Order Number
on all correspondence, invoices,
shipping papers and packages.

16229

TEL. (914) 632-4433
FAX. (914) 632-4772

| DATE | REQUISITION NO. |
|------|-----------------|
| 4/21/05 | 2070 |

TO: Aegis Energy Services, inc.
2097 Riverdale Street
West Springfield, MA. 01089
FAX: 413-746-3242

SHIP TO: Lakeland Schools
Energy Performance Contract
Lakeland CSD.

| REQUISITIONED BY | WHEN SHIP | SHIP VIA | F.O.B. POINT | TERMS |
|------------------|-----------|----------|--------------|-------|
| attn: Lee Vardakas | | | | |

| QTY. ORDERED | QTY. RECEIVED | STOCK NO. / DESCRIPTION | UNIT PRICE | TOTAL |
|--------------|---------------|--------------------------|-----------|-------|
| | | Lakeland HS. | | |
| (3) | | Clecogen CH-75LE Cogen Units | | |
| | | (75 KW, 60 HZ, 208 V, 3-phase) | | |
| | | Copper Beech MS. | | |
| (3) | | Clecogen CH-75LE Cogen Units | | |
| | | (75 KW, 60 HZ, 460 V, 3-phase) | | |
| | | Walter Panas HS. | | |
| (4) | | Clecogen CH-75LE Cogen Units | | |
| | | (75 KW, 60 HZ, 460 V, 3-phase) | | |
| | | Van Cortlandville E.S. | | |
| (1) | | Clecogen CH-75LE Cogen Unit | | |
| | | (75 KW, 60 HZ, 208 V, 3-phase) | ‡ | |
| | | All as per plans & specifications | | |
| | | All as per AES proposal dated 4/18/05 | | |
| | | submit (10) copies equip. specifications | | |
| | | release pending approved submittals | | |
| | | tax exempt, freight allowed | | |
| | | Complete Startup of equip. included | | |

Please send _____ copies of your invoice.
Order is to be entered in accordance with price, delivery and specifications shown above.
Notify us immediately if you are unable to ship as specified.          *Thank You!*

AUTHORIZED BY

E
X
H
I
B
I
T

N

# AEGIS ENERGY SERVICES

P.O. Box 2511
Springfield, MA 01101-2511

2097 Riverdale Street
West Springfield, MA 01089

# F A X   C O V E R   S H E E T

DATE:     May 2, 2005                    PAGE  1  OF  2

TO:     JEFF/ TECOGEN

PHONE:   781-466-6481
FAX:     781-466-6466

FROM:   LEE VARDAKAS

PHONE:   (413) 746-5400
FAX:     (413) 746-3242

RE:     PO for NY
CC:     _____

*MESSAGE*

| URGENT ☐ | For your review ☒ | Reply ASAP ☐ | Please comment ☐ |



**AEGIS ENERGY SERVICES INC.**

413/746-5400 • FAX 413/746-3242
WWW.AEGISENERGYSERVICES.COM

2097 RIVERDALE STREET, WEST SPRINGFIELD, MA 01089 • P.O. BOX 2511, SPRINGFIELD, MA 01101-2511

# PURCHASE ORDER

| DATE: 5/2/2005 | JOB NAME: NY | P.O. # 05-475LV |
|---|---|---|

| TO: TECOGEN | SHIP TO: CUSTOMER PICKUP |
|---|---|
| 45 FIRST AVENUE | |
| P.O. BOX 9046 | |
| WALTHAM, MA 02454-9046 | |
| ATTN: JEFF | BILL TO: AEGIS ENERGY SERVICES INC. |
| PHONE: 781-466-6481 | P.O. BOX 2511 |
| FAX: 781-466-6466 | SPRINGFIELD, MA 01101-2511 |

PURCHASE ORDER NUMBER MUST APPEAR ON
ALL INVOICES, BILLS AND PACKING LISTS.

| QUANTITY | DESCRIPTION | PRICE EACH | PRICE TOTAL |
|---|---|---|---|
| 8 | TECOGEN CM-75LE COGENERATION MODULE 480 V, 3-PHASE | $51,397.00 | $411,176.00 |
| 8 | LEVEL 1 EMISSIONS SHIPPED LOOSE | $6,976.00 | $55,808.00 |
| 4 | TECOGEN CM-75 COGENERATION MODULE 208 V, 3-PHASE | $53,809.00 | $215,236.00 |
| 4 | LEVEL 1 EMISSIONS SHIPPED LOOSE | $6,976.00 | $27,904.00 |
| | | | $0.00 |

DELIVERY: STARTING JULY 1, 2005 THRU AUGUST 15TH, 2005

TERMS: NET 30 DAYS

TOTAL     $710,124.00

ATTN.: JEFF GLICK

LEE VARDAKAS
PURCHASER

E
X
H
I
B
I
T

O

# TECOGEN

### TECOCHILL™
### *The Driving Force in Cooling*

45 First Ave.
Waltham, MA 02254-9046

# FAX COVER SHEET



EXHIBIT
#14
8/08/07  GB

| | | | |
|---|---|---|---|
| **DATE:** | 5/6/05 | **FROM:** | **JEFFREY GLICK** |
| | | **PHONE:** | 781-466-6481 |
| **TO:** | **LEE VARDAKAS** | **FAX:** | 781-466-6466 |
| **COMPANY:** | AEGIS ENERGY SERVICES | **RE:** | LAKELAND CSD PROJECT |
| **FAX:** | 413-746-3242 | **CC:** | |

Number of pages including cover sheet: 7

Lee,

I have attached pricing pages with several different pricing scenarios for the Lakeland CSD CM-75 modules. The scope of supply for all of the pricing models includes the CM-75 module, emissions control system shipped loose, extended one-year warranty on all equipment supplied by Tecogen, and a commission to the Tecogen representative who were involved in the presale activities.

The added cost to each CM-75 supplied for this project is around $6,000.

One set of pricing pages is based on what I am calling "Discounted Terms". These prices are based on the current (pre June 1st) prices. Particular attention must be paid to the Terms section I have sent along. Tecogen will not honor these prices if the payment terms are not met. If Aegis Energy is not able to meet these terms, the higher prices shown on the "Post June 1, 2005" pricing page will have to apply.

Management here at Tecogen is very serious about managing our cash position going forward. As a result, we will not put more than four units into production without full payment for all previous shipments.

I will be in the office next week to discuss any questions you might have regarding these prices.

Regards,

Jeff Glick

---

*Visit our HomePage at "www.tecogen.com"*

# LAKELAND CSD
## Price Quotation

**TECOGEN** 
Natural Gas Engine-Driven Products

TECOCHILL®
TECOFROST®
COGENERATION

Quote Number: Discounted Terms

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA 02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 480V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 480V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil, jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Full One-Year Warranty | 1 |
| Pre June 1, 2005 Correction | 1 |
| NY State Commission Due | 1 |
| **Total Price** | $64,504 |

T 0325

# LAKELAND CSD
## Price Quotation

**TECOGEN** 
Natural Gas Engine-Driven Products

TECOCHILL®
TECOFROST®
COGENERATION

Quote Number: Discounted Terms

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA 02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 208V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 208V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil, jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Full One-Year Warranty | 1 |
| Pre June 1, 2005 Correction | 1 |
| NY State Commission Due | 1 |
| **Total Price** | **$67,240** |

T 0326

# LAKELAND CSD
## Price Quotation (Discounted Terms)

Pricing and Terms

1. Based on pricing released in January, 2005. Pricing subject to change without notice.
2. Prices are good for 60 days and are FOB Factory.
3. Unless otherwise specified, pricing is for the equipment and services specifically listed above only. The pricing does not include the following: taxes, insurance, rigging, installation, disassembly and re-assembly (if required), permitting, service/maintenance or extended warranties (unless listed), training, or any other item or service not listed above.
4. Payment terms are Net 15 days. Tecogen will release for production a maximum of 4 units at a time. If payment terms are not met, prices will revert to the higher Post June 1, 2005 prices.

Last Revision: Jeffrey Glick, Tecogen on 05/06/05          page 2/2          Printed 05/06/05 (Version 2005.0.5)

T 0327

# LAKELAND CSD
## Price Quotation

**TECOGEN** 
Natural Gas Engine-Driven Products

TECOCHILL®
TECOFROST®
COGENERATION

Quote Number: Post June 1, 2005 Prices

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA 02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 480V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 480V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil, jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Full One-Year Warranty | 1 |
| NY State Commission Due | 1 |
| **Total Price** | **$67,076** |

T 0328

## LAKELAND CSD
## Price Quotation



**TECOGEN**
Natural Gas Engine-Driven Products

*TECOCHILL®*
*TECOFROST®*
*COGENERATION*

Quote Number: Post June 1, 2005 Prices

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA  02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 208V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 208V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil, jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Full One-Year Warranty | 1 |
| NY State Commission Due | 1 |
| **Total Price** | $69,937 |

T 0329

# LAKELAND CSD
## Price Quotation (Full Price Terms)

Pricing and Terms

1. Based on pricing released in January, 2005. Pricing subject to change without notice.

2. Prices are good for 60 days and are FOB Factory.

3. Unless otherwise specified, pricing is for the equipment and services specifically listed above only. The pricing does not include the following: taxes, insurance, rigging, installation, disassembly and re-assembly (if required), permitting, service/maintenance or extended warranties (unless listed), training, or any other item or service not listed above.

4. Payment terms are Net 30 days.  Tecogen will release for production a maximum of 2 units at a time.  Tecogen will not release additional units for production until all previous shipments have been paid in full.

Last Revision: Jeffrey Glick, Tecogen on 05/06/05          page 2/2          Printed 05/06/05  (Version 2005.0.5)

T 0330

**E
X
H
I
B
I
T

P**

# TECOGEN

### TECOCHILL ™
*The Driving Force in Cooling*

45 First Ave.
Waltham, MA 02254-9046

# FAX COVER SHEET

| | | | |
|---|---|---|---|
| **DATE:** | 5/17/05 | **FROM:** | **JEFFREY GLICK** |
| | | **PHONE:** | 781-466-6481 |
| **TO:** | **LEE VARDAKAS** | **FAX:** | 781-466-6466 |
| **COMPANY:** | AEGIS ENERGY SERVICES | **RE:** | LAKELAND CSD PROJECT |
| **FAX:** | 413-746-3242 | **CC:** | |

Number of pages including cover sheet: 4

**EXHIBIT**
# 75

Lee,

Based on our telephone conversation on Monday I wanted to provide you with an updated price quotation along with potential shipping schedule for the eleven CM-75 units you requested. The pricing has been modified to reflect two changes, first the removal of the one-year warranty and second, a reduction in the overall price to minimize the impact the commission payment has on Aegis. Based on these two changes the revised pricing would be as follows:

CM-75HE:    $61,092
CM-75LE:    $63,759

If these prices are acceptable to Aegis Energy Systems, the proposed shipping schedule for the eleven units would be as follows:

First three high voltage units: July 22nd.
Remaining eight units (four high voltage and four low voltage): August 19th.

To meet these dates Tecogen would need a purchase order before this Friday (5/20/05). In addition, Tecogen will require payment for these units to be made with a two-party check. This payment method is to assure timely payment.

I should be in the office all day today if you have any questions on this information.

Regards,



Jeff Glick

# LAKELAND CSD
# Price Quotation



**TECOGEN**
Natural Gas Engine-Driven Products

TECOCHILL®
TecoFROST®
COGENERATION

Quote Number: Discounted Terms

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA  02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 480V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 480V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Quantity Discount | 1 |
| Pre June 1, 2005 Correction | 1 |
| NY State Commission Due | 1 |
| **Total Price** | $61,092 |

T  0305

# LAKELAND CSD
## Price Quotation


**TECOGEN**
Natural Gas Engine-Driven Products

TECOCHILL®
TecoFROST®
COGENERATION

Quote Number: Discounted Terms

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA 02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered |
|---|---|
| **TECOGEN® CM-75, 208V Cogeneration Unit** | |
| Base Unit | 1 |
| · Induction Generator (75 kW, 60 Hz, 208V, 3-phase) | |
| · Industrial Natural Gas Engine | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | |
| · Engine Heat Recovery (from engine oil jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | |
| · Acoustic Enclosure (indoor-type) | |
| · Single Steel Base | |
| · Microprocessor-Based Controls | |
| · Standard Electrical Protective Switchgear | |
| · Open Protocol Interface (Modbus-based) | |
| · Remote Monitoring and Control System (RMCS), including Modem | |
| · Complete Factory Assembly | |
| · ETL Product Listing on Entire Cogen Module | |
| · IEEE P1547/D07 Compliance | |
| · Factory Run-Test at Full Capacity | |
| · O&M Manuals | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | |
| **Factory-Installed Options** | |
| · Emissions Control Level 1 | 1 |
| **Special Options** | |
| Quantity Discount | 1 |
| Pre June 1, 2005 Correction | 1 |
| NY State Commission Due | 1 |
| **Total Price** | $63,759 |

T 0306

# LAKELAND CSD
# Price Quotation (Discounted Terms)

Pricing and Terms
1. Based on pricing released in January, 2005. Pricing subject to change without notice.
2. Prices are good for 60 days and are FOB Factory.
3. Unless otherwise specified, pricing is for the equipment and services specifically listed above only. The pricing does not include the following: taxes, insurance, rigging, installation, disassembly and re-assembly (if required), permitting, service/maintenance or extended warranties (unless listed), training, or any other item or service not listed above.
4. Payment terms are Net 30 days.

Last Revision: Jeffrey Glick, Tecogen on 05/17/05          page 2/2          Printed 05/17/05  (Version 2005.0.5)

# LAKELAND CSD
# CONFIDENTIAL TURN-IN



**TECOGEN**
Natural Gas Engine-Driven Products

TECOCHILL®
TECOFROST®
COGENERATION

**Quote Number: Discounted Terms**

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA  02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered | List Price | Quote Price Mult.: 0.640 |
|---|---|---|---|
| **TECOGEN® CM-75, 480V Cogeneration Unit** | | | |
| Base Unit | 1 | $84,320 | $53,965 |
| · Induction Generator (75 kW, 60 Hz, 480V, 3-phase) | | | |
| · Industrial Natural Gas Engine | | | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | | | |
| · Engine Heat Recovery (from engine oil, jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | | | |
| · Acoustic Enclosure (indoor-type) | | | |
| · Single Steel Base | | | |
| · Microprocessor-Based Controls | | | |
| · Standard Electrical Protective Switchgear | | | |
| · Open Protocol Interface (Modbus-based) | | | |
| · Remote Monitoring and Control System (RMCS), including Modem | | | |
| · Complete Factory Assembly | | | |
| · ETL Product Listing on Entire Cogen Module | | | |
| · IEEE P1547/D07 Compliance | | | |
| · Factory Run-Test at Full Capacity | | | |
| · O&M Manuals | | | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | | | |
| **Factory-Installed Options** | | | |
| · Emissions Control Level 1 | 1 | $10,900 | $6,976 |
| **Special Options** | | | |
| Quantity Discount | 1 | (-$1,750) | (-$1,750) |
| Pre June 1, 2005 Correction | 1 | (-$2,570) | (-$2,570) |
| NY State Commission Due | 1 | $4,473 | $4,473 |
| **Totals** | | | |
| Total Price | | $95,371 | $61,092 |
| Commission: 0.0% | | | $0 |
| Net to Tecogen | | | $61,092 |

T 0308

# LAKELAND CSD
# CONFIDENTIAL TURN-IN



**TECOGEN**
Natural Gas Engine-Driven Products

TECOCHILL®
TecoFROST®
COGENERATION

Quote Number: Discounted Terms

| PREPARED FOR: | PREPARED BY: |
|---|---|
| Lee Vardakas | Jeffrey Glick |
| Aegis Energy Services | Tecogen |
| | 45 First Avenue |
| | Waltham, MA  02451 |
| | Phone: 781-466-6481 |
| | FAX: 781-466-6466 |

| Item | Quantity Ordered | List Price | Quote Price Mult.: 0.640 |
|---|---|---|---|
| **TECOGEN® CM-75, 208V Cogeneration Unit** | | | |
| Base Unit | 1 | $88,500 | $56,640 |
| · Induction Generator (75 kW, 60 Hz, 208V, 3-phase) | | | |
| · Industrial Natural Gas Engine | | | |
| · Emissions Controls Option (Level 1 type, including fully packaged emission control system and microprocessor-based air/fuel ratio controller) | | | |
| · Engine Heat Recovery (from engine oil jacket, and exhaust manifolds using direct jacket cooling and exhaust heat recovery) | | | |
| · Acoustic Enclosure (indoor-type) | | | |
| · Single Steel Base | | | |
| · Microprocessor-Based Controls | | | |
| · Standard Electrical Protective Switchgear | | | |
| · Open Protocol Interface (Modbus-based) | | | |
| · Remote Monitoring and Control System (RMCS), including Modem | | | |
| · Complete Factory Assembly | | | |
| · ETL Product Listing on Entire Cogen Module | | | |
| · IEEE P1547/D07 Compliance | | | |
| · Factory Run-Test at Full Capacity | | | |
| · O&M Manuals | | | |
| · Standard TECOGEN® Cogeneration Parts and labor Warranty on Module  (Covers defects in parts for 6 months from date of start-up, 12 months from the date of shipment, or 1500 hours of operation, whichever occurs earliest. For best, broadest coverage TECOGEN recommends that Owner enter into separate full maintenance agreement with Tecogen) | | | |
| **Factory-Installed Options** | | | |
| · Emissions Control Level 1 | 1 | $10,900· | $6,976 |
| **Special Options** | | | |
| Quantity Discount | 1 | (-$1,827) | (-$1,827) |
| Pre June 1, 2005 Correction | 1 | (-$2,696) | (-$2,696) |
| NY State Commission Due | 1 | $4,668 | $4,668 |
| **Totals** | | | |
| Total Price | | $99,543 | $63,759 |
| Commission: 0.0% | | | $0 |
| Net to Tecogen | | | $63,759 |

T 0309

E
X
H
I
B
I
T

Q

# AEGIS ENERGY SERVICES

P.O. Box 2511
Springfield, MA 01101-2511

2097 Riverdale Street
West Springfield, MA 01089

# F A X   C O V E R   S H E E T

**DATE:**    May 17, 2005                    **PAGE 1 OF 2**

**TO:**    JEFF/ TECOGEN

PHONE:    781-466-6481
FAX:        781-466-6466

**FROM:**    LEE VARDAKAS

PHONE:    (413) 746-5400
FAX:        (413) 746-3242

**RE:**    PO for NY

CC:    _____

## *MESSAGE*

Please send written confirmation of acceptance
of this P.O,

—Lee

| URGENT☐ | For your review☒ | Reply ASAP☐ | Please comment☐ |



**AEGIS ENERGY SERVICES INC.**

413/746-5400 • FAX 413/746-3242
WWW.AEGISENERGYSERVICES.COM

2097 RIVERDALE STREET, WEST SPRINGFIELD, MA 01089 • P.O. BOX 2511, SPRINGFIELD, MA 01101-2511

# PURCHASE ORDER

DATE: 5/17/2005  JOB NAME: LAKELAND SCHOOL DISTR     P.O. # 05-475LV REVISED

| TO: TECOGEN | SHIP TO: CUSTOMER PICKUP |
|---|---|
| 45 FIRST AVENUE<br>P.O. BOX 9046<br>WALTHAM, MA 02454-9046 | |
| ATTN.: JEFF<br>PHONE: 781-466-6481<br>FAX: 781-466-6466 | BILL TO: AEGIS ENERGY SERVICES INC.<br>P.O. BOX 2511<br>SPRINGFIELD, MA 01101-2511 |

PURCHASE ORDER NUMBER MUST APPEAR ON
ALL INVOICES, BILLS AND PACKING LISTS.

| QUANTITY | DESCRIPTION | PRICE EACH | PRICE TOTAL |
|---|---|---|---|
| 7 | TECOGEN CM-75LE COGENERATION MODULE<br>480 V, 3-PHASE | $61,092.00 | $427,644.00 |
| 7 | LEVEL 1 EMISSIONS SHIPPED LOOSE | $0.00 | $0.00 |
| 4 | TECOGEN CM-75 COGENERATION MODULE<br>208 V, 3-PHASE | $63,759.00 | $255,036.00 |
| 4 | LEVEL 1 EMISSIONS SHIPPED LOOSE | $0.00 | $0.00 |
| | | | $0.00 |

DELIVERY: STARTING JULY 22, 2005 THRU AUGUST 19TH, 2005

TERMS: NET 30 DAYS

TOTAL     $682,680.00

ATTN.: JEFF GLICK

LEE VARDAKAS
PURCHASER

E
X
H
I
B
I
T

R

*3 Identical Units*

# Order Entry Form

RSM Sign-Off: _____

## General Information

OrderEntryDate: 5/20/05

ChillerModel: CM-75LE

Probability of Receiving Order: 90

## To be Entered by Home Office

SiteNo.: _____

Existing Site ☐

CustomerNo.: 1070

SerialNo.: _____

SaleNo.: 583    OrderNo.: _____

## Site Information

SiteName: Lakeland High School

SiteAddress1: 1349 East Main Street

SiteAddress2: Lakeland Central School District

SiteCity: Shrub Oak

SiteState: NY    SiteZip: 10588

SiteFacilityType: School

SitePhone: 914-528-0000

SiteFax: 914-528-0521

SiteContact: _____

SiteContactTitle: _____

SiteContact2: _____

SiteContactTitle2: _____

## Buyer Information

BuyerName: Aegis Energy Services

BuyerAddress1: P.O. Box 2511

BuyerAddress2: _____

BuyerCity: Springfield

BuyerState: MA    BuyerZip: 01101

BuyerPONumber: 05-475LV-Revised

BuyerPODate: 5/17/05

POAmount: $63,760

PaymentTerms: Net 30

TermsAcceptable: ☐

CommentsOnTerms: Need copy of Project bond

TypeOfSale: Commission

BuyerPhone: 413-746-5465

BuyerFax: 413 746-3247

BuyerContact: Lee Vardakas

BuyerContactTitle: _____

BuyerContact2: _____

BuyerContactTitle2: _____

BuyerNewCustomer: ☐

UCCFormRequired: ☐

UCCFormReceived: ☐

SubmittalCopies: _____

SubmittalDate: _____

SubmittalRecipient: _____

OMcopies: _____

OMDate: _____

OMRecipient: _____

OrderEntryDate: _____    Model: _____    SalesManager: _____

Page 1 of 3



EXHIBIT
#MT
8/28/07 43

T 0291

*L*

# Order Entry Form

RSM Sign-
Off: _____

### Sales Rep Information

| | | | |
|---|---|---|---|
| RepTerritoryName: | *New York* | RegionalSalesMgrName: | *Glick* |
| RepFirmName | *Advanced Comfort Systems* | RepFirmName2 | *R. Li Kaster* |
| RepSalesperson: | *Ray Hickey* | RepSalesperson2: | *Brian Willemsen* |
| SpecCommission: | | SpecCommission2: | *$ 2334* |
| OrderCommission: | *$ 2334* | OrderCommission2: | |
| InstallCommission: | | InstallCommission2: | |

### Shipping Information

| | | | |
|---|---|---|---|
| ShipName: | *Aegis to Pickup* | ShipContact: | |
| ShipAddress1: | | ShipPhone: | |
| ShipAddress2: | | ShipFax: | |
| ShipCity: | | RequiredByDate: | *8/19/05* |
| ShipState: | ShipZip: | DeliveryPenalty: ☐ | |
| | | ShipNotificationTimeRequired: | |

ShipInstructions:

### Startup Company

| | | | |
|---|---|---|---|
| StartupCoName: | *Aegis* | StartupCoPhone: | |
| StartupCoAddress1: | | StartupCoFax: | |
| StartupCoAddress2: | | StartupCoContact: | |
| StartupCoCity: | | EstimatedStartUpDate: | |
| StartupCoState: | Zip: | | |

### Service Company

| | | | |
|---|---|---|---|
| ServiceCoName: | *T.B.D.* | ServiceCoPhone: | |
| ServiceCoAddress1: | | ServiceCoFax: | |
| ServiceCoAddress2: | | ServiceCoContact: | |
| ServiceCoCity: | | | |
| ServiceCoState: | Zip: | | |

OrderEntryDate:          Model:                              SalesManager:

T 0292

# Order Entry Form

RSM Sign-Off: _____

## General Options

| | | |
|---|---|---|
| CertificationTest: ☐ | EngHeatRecovery: ☐ | Silencer: _____ |
| MEALabel: ☐ | ExhaustHX: ☐ | Size: [____]  Hospital Grade: ☐ |
| Enclosure: ☐ | LoadHX: ☐ | Expansion Joints:  Total Qty (not per Engine): [__]  Size: [____] |
| LowTemperature: ☐ | BoostPump: ☐ | |
| BulkOilSystem: ☐ | CondenserWaterBox: ☐ | ExpansionTankw/o: ☐  Reversed Connections: ☐ |
| 50HZConversion: ☐ | 250PSIEvap: ☐ | ExpansionTankw/: ☐  Coil Gaurds: ☐ |
| ComputerConnection: ☐ | 250PSICond: ☐ | MountingPads: ☐  MountingSprings: ☐ |
| Voltage: _208_ | | ExhaustCatalyst: _Level 1_ |
| EngineModel: _GM 7.4L LE_ | | CompressorModel: _____ |

## Warranty Options

5-15: ☐          SpecialWarranty: _____

5YRComp: ☐      5YRParts: ☐

## Air-Cooled Options

DumpHX: ☐      Radiator: ☐      RemoteACCondenser: ☐      LoAmbientCondenser: ☐

## HT Options

CompressorBlanket: ☐      FullTimeCompOilPump: ☐

## Special Options

| | | |
|---|---|---|
| FreightIncluded: ☐ | DismantlingSupervision: ☐ | SpecialOptions: |
| StartupIncluded: ☐ | ServiceContractIncluded: ☐ | |
| InstallationIncluded: ☐ | SpecialTrainingIncluded: ☐ | |
| PermittingIncluded: ☐ | | |

OrderEntryDate: _____        Model: _____        SalesManager: _____

T 0293

*One Single Unit*

# Order Entry Form

RSM Sign-Off: _____

## General Information

OrderEntryDate: `5/20/05`

ChillerModel: `Cm-75LE`

Probability of Receiving Order: `90`

## To be Entered by Home Office

SiteNo.: _____

Existing Site ☐

CustomerNo.: `1070`

SerialNo.: _____

SaleNo.: `583`     OrderNo.: _____

## Site Information

SiteName: `VanCourtlandville Elementary school`     SitePhone: `914-528-1354`

SiteAddress1: `3100 East Main street`     SiteFax: `914-528-1376`

SiteAddress2: `Lakeland Central School District`     SiteContact: _____

SiteCity: `Mohegan Lake`     SiteContactTitle: _____

SiteState: `NY`     SiteZip: `10547`     SiteContact2: _____

SiteFacilityType: `school`     SiteContactTitle2: _____

## Buyer Information

BuyerName: `Aegis Energy Services`     BuyerPhone: `413-746-5400`

BuyerAddress1: `P.O. Box 2511`     BuyerFax: `413-746-3242`

BuyerAddress2: _____     BuyerContact: `Lee Vardakas`

BuyerCity: `Springfield`     BuyerContactTitle: _____

BuyerState: `MA`     BuyerZip: `01101`     BuyerContact2: _____

BuyerPONumber: `05-475LV` `Revised`     BuyerContactTitle2: _____

BuyerPODate: `5/17/05`     BuyerNewCustomer: ☐

POAmount: `$63,760`     UCCFormRequired: ☐

PaymentTerms: `Net 30`     UCCFormReceived: ☐

SubmittalCopies: _____

TermsAcceptable: ☐     SubmittalDate: _____

CommentsOnTerms: `Net 30` `Need Copy of Project Bond`     SubmittalRecipient: _____

OMcopies: _____

OMDate: _____

TypeOfSale: `Commission`     OMRecipient: _____

OrderEntryDate: _____     Model: _____     SalesManager: _____

Page 1 of 3

T 0294

$L$

# Order Entry Form

RSM Sign-
Off: _____

### Sales Rep Information

| | | | |
|---|---|---|---|
| RepTerritoryName: | *New York* | RegionalSalesMgrName: | *Glick* |
| RepFirmName | *Advanced Comfort Systems* | RepFirmName2 | *Reliastler* |
| RepSalesperson: | *Ray Hickey* | RepSalesperson2: | *Brian Willemsen* |
| SpecCommission: | | SpecCommission2: | *$2334* |
| OrderCommission: | *$2334* | OrderCommission2: | |
| InstallCommission: | | InstallCommission2: | |

### Shipping Information

| | | | |
|---|---|---|---|
| ShipName: | *Aegis to Pick up* | ShipContact: | |
| ShipAddress1: | | ShipPhone: | |
| ShipAddress2: | | ShipFax: | |
| ShipCity: | | RequiredByDate: | *8/19/05* |
| ShipState: | ShipZip: | DeliveryPenalty: | ☐ |
| | | ShipNotificationTimeRequired: | |

ShipInstructions: _____

### Startup Company

| | | | |
|---|---|---|---|
| StartupCoName: | *Aegis* | StartupCoPhone: | |
| StartupCoAddress1: | | StartupCoFax: | |
| StartupCoAddress2: | | StartupCoContact: | |
| StartupCoCity: | | EstimatedStartUpDate: | |
| StartupCoState: | Zip: | | |

### Service Company

| | | | |
|---|---|---|---|
| ServiceCoName: | *TBD* | ServiceCoPhone: | |
| ServiceCoAddress1: | | ServiceCoFax: | |
| ServiceCoAddress2: | | ServiceCoContact: | |
| ServiceCoCity: | | | |
| ServiceCoState: | Zip: | | |

OrderEntryDate: _____    Model: _____    SalesManager: _____

T 0295

# Order Entry Form

RSM Sign-Off: _____

## General Options

| | | |
|---|---|---|
| CertificationTest: ☐ | EngHeatRecovery: ☐ | Silencer: ☐ |
| MEALabel: ☐ | ExhaustHX: ☐ | Size: ☐  Hospital Grade: ☐ |
| Enclosure: ☐ | LoadHX: ☐ | Expansion Joints:  Total Qty ☐  Size: ☐ |
| LowTemperature: ☐ | BoostPump: ☐ | (not per Engine): |
| BulkOilSystem: ☐ | CondenserWaterBox: ☐ | ExpansionTankw/o: ☐  Reversed Connections: ☐ |
| 50HZConversion: ☐ | 250PSIEvap: ☐ | ExpansionTankw/: ☐  Coil Gaurds: ☐ |
| ComputerConnection: ☐ | 250PSICond: ☐ | MountingPads: ☐  MountingSprings: ☐ |
| Voltage: 208 | | ExhaustCatalyst: Level 1 |
| EngineModel: GM 7.4L L.E. | | CompressorModel: |

## Warranty Options

| | |
|---|---|
| 5-15: ☐ | SpecialWarranty: |
| 5YRComp: ☐  5YRParts: ☐ | |

## Air-Cooled Options

DumpHX: ☐    Radiator: ☐    RemoteACCondenser: ☐    LoAmbientCondenser: ☐

## HT Options

CompressorBlanket: ☐    FullTimeCompOilPump: ☐

## Special Options

| | | |
|---|---|---|
| FreightIncluded: ☐ | DismantlingSupervision: ☐ | SpecialOptions: |
| StartupIncluded: ☐ | ServiceContractIncluded: ☐ | |
| InstallationIncluded: ☐ | SpecialTrainingIncluded: ☐ | |
| PermittingIncluded: ☐ | | |

OrderEntryDate: _____    Model: _____    SalesManager: _____

T 0296

*4   Identical   Units*

# Order Entry Form

RSM Sign-
Off: _____

## General Information

OrderEntryDate: `5/20/05`
ChillerModel: `CM-75HE`

Probability of
Receiving Order: `90`

## To be Entered by Home Office

SiteNo.: [          ]                    SerialNo.: [          ]
Existing Site ☐
CustomerNo.: `1070`                    SaleNo.: `583`    OrderNo.: [          ]

## Site Information

SiteName: `Walter Panas High School`    SitePhone: `914-739-2823`
SiteAddress1: `Lakeland Central School District`    SiteFax: `914-739-3545`
SiteAddress2: `300 Croton Ave.`    SiteContact: [          ]
SiteCity: `Cortlandt Manor`    SiteContactTitle: [          ]
SiteState: `NY`    SiteZip: `10567`    SiteContact2: [          ]
SiteFacilityType: `School`    SiteContactTitle2: [          ]

## Buyer Information

BuyerName: `Aegis Energy Services`    BuyerPhone: `413-746-5400`
BuyerAddress1: `P.O. Box 2511`    BuyerFax: `413-746-3242`
BuyerAddress2: [          ]    BuyerContact: `Lee Vordakas`
BuyerCity: `Springfield`    BuyerContactTitle: [          ]
BuyerState: `MA`    BuyerZip: `01101`    BuyerContact2: [          ]
BuyerPONumber: `05-475-LK Revised`    BuyerContactTitle2: [          ]
BuyerPODate: `5/17/05`    BuyerNewCustomer: ☐
POAmount: `$61,092`    UCCFormRequired: ☐
PaymentTerms: `Net 30`    UCCFormReceived: ☐
    SubmittalCopies: [          ]
TermsAcceptable: ☐    SubmittalDate: [          ]
CommentsOnTerms: `Need Copy of Project bond`    SubmittalRecipient: [          ]
    OMcopies: [          ]
    OMDate: [          ]
TypeOfSale: `Commission`    OMRecipient: [          ]

OrderEntryDate: _____    Model: _____    SalesManager: _____

Page 1 of 3

T 0297

*H*

# Order Entry Form

RSM Sign-
Off:                  _____

## Sales Rep Information

| RepTerritoryName: | *New York* | RegionalSalesMgrName: | *Glick* |
| RepFirmName: | *Advanced Comfort Systems* | RepFirmName2: | *R.L. Kistler* |
| RepSalesperson: | *Ray Hickey* | RepSalesperson2: | *Brian Willemsen* |
| SpecCommission: | | SpecCommission2: | *$ 2237* |
| OrderCommission: | *$ 2237* | OrderCommission2: | |
| InstallCommission: | | InstallCommission2: | |

## Shipping Information

| ShipName: | *Aegis To Pickup* | ShipContact: | |
| ShipAddress1: | | ShipPhone: | |
| ShipAddress2: | | ShipFax: | |
| ShipCity: | | RequiredByDate: | *8/19/05* |
| ShipState: | ShipZip: | DeliveryPenalty: ☐ | |
| | ShipNotificationTimeRequired: | | |
| ShipInstructions: | | | |

## Startup Company

| StartupCoName: | *Aegis* | StartupCoPhone: | |
| StartupCoAddress1: | | StartupCoFax: | |
| StartupCoAddress2: | | StartupCoContact: | |
| StartupCoCity: | | EstimatedStartUpDate: | |
| StartupCoState: | Zip: | | |

## Service Company

| ServiceCoName: | *TBD* | ServiceCoPhone: | |
| ServiceCoAddress1: | | ServiceCoFax: | |
| ServiceCoAddress2: | | ServiceCoContact: | |
| ServiceCoCity: | | | |
| ServiceCoState: | Zip: | | |

OrderEntryDate:                    Model:                                        SalesManager:

T 0298

# Order Entry Form

RSM Sign-Off: _____

## General Options

| | | | |
|---|---|---|---|
| CertificationTest: ☐ | EngHeatRecovery: ☐ | Silencer: ☐ | |
| MEALabel: ☐ | ExhaustHX: ☐ | Size: ☐ | Hospital Grade: ☐ |
| Enclosure: ☐ | LoadHX: ☐ | Expansion Joints: | Total Qty ☐    Size: ☐ |
| LowTemperature: ☐ | BoostPump: ☐ | (not per Engine): | |
| BulkOilSystem: ☐ | CondenserWaterBox: ☐ | | |
| 50HZConversion: ☐ | 250PSIEvap: ☐ | ExpansionTankw/o: ☐ | Reversed Connections: ☐ |
| ComputerConnection: ☐ | 250PSICond: ☐ | ExpansionTankw/: ☐ | Coil Gaurds: ☐ |
| Voltage: _480_ | | MountingPads: ☐ | MountingSprings: ☐ |
| EngineModel: _GM 7.4L LE_ | | ExhaustCatalyst: _Level 1_ | |
| | | CompressorModel: | |

## Warranty Options

| | | |
|---|---|---|
| 5-15: ☐ | SpecialWarranty: | |
| 5YRComp: ☐ | 5YRParts: ☐ | |

## Air-Cooled Options

| | | | |
|---|---|---|---|
| DumpHX: ☐ | Radiator: ☐ | RemoteACCondenser: ☐ | LoAmbientCondenser: ☐ |

## HT Options

| | |
|---|---|
| CompressorBlanket: ☐ | FullTimeCompOilPump: ☐ |

## Special Options

| | | |
|---|---|---|
| FreightIncluded: ☐ | DismantlingSupervision: ☐ | SpecialOptions: |
| StartupIncluded: ☐ | ServiceContractIncluded: ☐ | |
| InstallationIncluded: ☐ | SpecialTrainingIncluded: ☐ | |
| PermittingIncluded: ☐ | | |

OrderEntryDate:                Model:                          SalesManager:

T 0299

3 Identical Units

## Order Entry Form

RSM Sign-Off: _____

### General Information

OrderEntryDate: 5/20/05

ChillerModel: Cm-75 HE

Probability of Receiving Order: 90

### To be Entered by Home Office

SiteNo.: 

Existing Site ☐

CustomerNo.: 1070

SerialNo.: 

SaleNo.: 583    OrderNo.: 

### Site Information

SiteName: Lakeland Copper Beech Middle School

SiteAddress1: Lakeland Central School District

SiteAddress2: 3401 Old Yorktown Road

SiteCity: Yorktown Heights

SiteState: NY    SiteZip: 10598

SiteFacilityType: 

SitePhone: 914-245-1885

SiteFax: 914-245-1259

SiteContact: 

SiteContactTitle: 

SiteContact2: 

SiteContactTitle2: 

### Buyer Information

BuyerName: Argus Energy Services

BuyerAddress1: P.O. Box 2511

BuyerAddress2: 

BuyerCity: Springfield

BuyerState: MA    BuyerZip: 01101

BuyerPONumber: 05-475LV Revised

BuyerPODate: 5/17/05

POAmount: 361,092

PaymentTerms: Net 30

TermsAcceptable: ☐

CommentsOnTerms: Need copy of Project Bond

TypeOfSale: Commission

BuyerPhone: 413-746-5400

BuyerFax: 413-746-3242

BuyerContact: Lee Vardakas

BuyerContactTitle: 

BuyerContact2: 

BuyerContactTitle2: 

BuyerNewCustomer: ☐

UCCFormRequired: ☐

UCCFormReceived: ☐

SubmittalCopies: 

SubmittalDate: 

SubmittalRecipient: 

OMcopies: 

OMDate: 

OMRecipient: 

OrderEntryDate: _____    Model: _____    SalesManager: _____

Page 1 of 3

T 0300

# Order Entry Form

RSM Sign-
Off:    _____

## Sales Rep Information

| | | | |
|---|---|---|---|
| RepTerritoryName: | *New York* | RegionalSalesMgrName: | *Glick* |
| RepFirmName: | *Advanced Contact Systems* | RepFirmName2: | *Rili Kistler* |
| RepSalesperson: | *Roy Kelley* | RepSalesperson2: | *Brian Willemsen* |
| SpecCommission: | | SpecCommission2: | *$2237* |
| OrderCommission: | *$2237* | OrderCommission2: | |
| InstallCommission: | | InstallCommission2: | |

## Shipping Information

| | | | |
|---|---|---|---|
| ShipName: | *Aeges to Pickup* | ShipContact: | |
| ShipAddress1: | | ShipPhone: | |
| ShipAddress2: | | ShipFax: | |
| ShipCity: | | RequiredByDate: | *— one unit July 7th* |
| ShipState: | ShipZip: | DeliveryPenalty: ☐ | *Two units July 22nd* |
| | | ShipNotificationTimeRequired: | |

ShipInstructions:

## Startup Company

| | | | |
|---|---|---|---|
| StartupCoName: | *Aegis* | StartupCoPhone: | |
| StartupCoAddress1: | | StartupCoFax: | |
| StartupCoAddress2: | | StartupCoContact: | |
| StartupCoCity: | | EstimatedStartUpDate: | |
| StartupCoState: | Zip: | | |

## Service Company

| | | | |
|---|---|---|---|
| ServiceCoName: | *TBD* | ServiceCoPhone: | |
| ServiceCoAddress1: | | ServiceCoFax: | |
| ServiceCoAddress2: | | ServiceCoContact: | |
| ServiceCoCity: | | | |
| ServiceCoState: | Zip: | | |

OrderEntryDate:          Model:                    SalesManager:

T 0301

# Order Entry Form

RSM Sign-
Off: _____

## General Options

| | | |
|---|---|---|
| CertificationTest: ☐ | EngHeatRecovery: ☐ | Silencer: [          ] |
| MEALabel: ☐ | ExhaustHX: ☐ | Size: [    ]  Hospital Grade: ☐ |
| Enclosure: ☐ | LoadHX: ☐ | Expansion |
| LowTemperature: ☐ | BoostPump: ☐ | Joints:  Total Qty [  ]  Size: [    ] |
| BulkOilSystem: ☐ | CondenserWaterBox: ☐ | (not per Engine): |
| 50HZConversion: ☐ | 250PSIEvap: ☐ | ExpansionTankw/o: ☐  Reversed Connections: ☐ |
| ComputerConnection: ☐ | 250PSICond: ☐ | ExpansionTankw/: ☐  Coil Gaurds: ☐ |
| Voltage: [480] | | MountingPads: ☐  MountingSprings: ☐ |
| EngineModel: [7.4L  LE] | | ExhaustCatalyst: [Level 1] |
| | | CompressorModel: [          ] |

## Warranty Options

5-15: ☐

5YRComp: ☐    5YRParts: ☐    SpecialWarranty: [                    ]

## Air-Cooled Options

DumpHX: ☐    Radiator: ☐    RemoteACCondenser: ☐    LoAmbientCondenser: ☐

## HT Options

CompressorBlanket: ☐    FullTimeCompOilPump: ☐

## Special Options

FreightIncluded: ☐    DismantlingSupervision: ☐    SpecialOptions:

StartupIncluded: ☐    ServiceContractIncluded: ☐

InstallationIncluded: ☐    SpecialTrainingIncluded: ☐

PermittingIncluded: ☐

OrderEntryDate: _____    Model: _____    SalesManager: _____

Page 3 of 3

T 0302

E
X
H
I
B
I
T

S

FROM                          FAX NO. : 14137463242          May. 25 2005 07:59AM  P1

# AEGIS ENERGY
# SERVICES

P.O. Box 2511
Springfield, MA 01101-2511
2097 Riverdale Street
West Springfield, MA 01089

# F A X   C O V E R   S H E E T

**DATE:**    **May 25, 2005**                    **PAGE  1  OF  3**

**TO:**      **JEFF/TECOGEN**

   PHONE:   <u>781-466-6481</u>
   FAX:     <u>781-466-6466</u>

**FROM:**    **LEE VARDAKAS**

   PHONE:   (413) 746-5400
   FAX:     (413) 746-3242

**RE:**      <u>Bond for Lakeland</u>
   CC:      _____



EXHIBIT
#18
8/08/07   63

*MESSAGE*

| URGENT ☐ | For your review ☒ | Reply ASAP ☐ | Please comment ☐ |

T  0084

# THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA



015-022-496

# SUBCONTRACT
# PAYMENT BOND

**Any singular reference to Principal, Surety, Obligee or other party shall be considered plural where applicable.**

**PRINCIPAL (SUBCONTRACTOR)**
**(Name and Address):** J & M HEATING AND AIR CONDITIONING, INC.
48 GRAND STREET
NEW ROCHELLE, NEW YORK 10801

**OBLIGEE (CONTRACTOR)**
**(Name and Address):** ATLANTIC ENERGY SERVICES, INC
92 CONGRESS SREET, 2ND FLOOR
SARATOGA SPRINGS, NEW YORK 12866

**SURETY (Name and Address of Surety Company Office):**
LIBERTY MUTUAL INSURANCE COMPANY
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036

**SUBCONTRACT**
**Date:**
**Amount:** $ 3,359,256.00
**Description of Project (Name and Location):** MECHANICAL WORK FOR LAKELAND CENTRAL SCHOOL
DISTRICT ENERGY PERFORMANCE PROJECT

**BOND**
**Date (Not earlier than Subcontract Date):** March 14 2005
**Penal Amount:** $ 3,359,256.00

**SUBCONTRACTOR AS PRINCIPAL**
**Company:**     (Corporate Seal)

J & M HEATING AND AIR CONDITIONING, INC.

**Signature:** _____ VP.
**Name and Title:** 3-14-05

**Witness:** _____
**(Any additional signatures appear on page attached)**

**SURETY**
**Company:**     (Corporate Seal)

LIBERTY MUTUAL INSURANCE COMPANY

**Signature:** _____
**Name and Title:** DENNIS M. O'BRIEN - ATTORNEY-IN-FACT

**Attach Power of Attorney**

**Witness:** _____
WILLIAM D. HAAS - ATTORNEY-IN-FACT

**FOR INFORMATION ONLY**
**AGENT or BROKER:**
**(Name, Address and Telephone)** USI NORTHEAST
555 PLEASANTVILLE ROAD
BRIARCLIFF MANOR, NEW YORK 10510
914-747-6300

AGC DOCUMENT NO. 607 • SUBCONTRACT PAYMENT BOND • 1988

T 0082

CONR 391 (8/94)

(Acknowledgment by principal, unless it be a corporation)
**STATE OF NEW YORK**

COUNTY OF _____  SS:

On this _____ day of _____ before
me personally came _____, to me
known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged that
he/she executed the same.

_____
Notary Public _____ County

(Acknowledgment by principal, if a corporation)
**STATE OF NEW YORK**

COUNTY OF _Westchester_  SS:

On this _14_ day of _March_ _2005_; before
me personally came _Edward J. Horvath_ to me
known who being by me duly sworn, did depose and say that he/she resides in _Mamaroneck, N.Y._
the _Vice President_ of the _JH Heating and A/C Inc_ ; that he/she is
corporation described in and which executed the foregoing instrument; that he/she knew the seal of said corporation; that the
seal affixed to said instrument was such corporate seal; that it was so affixed by order of the Board of Directors of said
corporation, and that he/she signed his/her name thereto by like order.

PATRICIA A. WOODWARD
Notary Public, State of New York
No. 4973154
Qualified in Westchester County
Commission Expires October 15, 2006

_Patricia A. Woodward_ _WESTCHESTER_
Notary Public _____ County

(Acknowledgment by Surety Company)
**STATE OF NEW YORK**

COUNTY OF WESTCHESTER  SS:

On this _14TH_ day of _MARCH_ _2005_ ; before
me personally came DENNIS M. O'BRIEN to me
known who being by me duly sworn, did depose and say that he/she resides in
NORTH MERRICK, NEW YORK
the ATTORNEY-IN-FACT of the LIBERTY MUTUAL INSURANCE COMPANY ; the
corporation described in and which executed the within instrument; that he/she knows the seal of said corporation; that the seal
affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation,
and that he/she signed his/her name thereto by like order.

_____
Notary Public _____ County

ALICE McCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6078342
Qualified in Dutchess County
Commission Expires June 02, 2007

S-4116/GEEF 2/98

T 0083

**E
X
H
I
B
I
T

T**

Glick, Jeffrey

**From:** Glick, Jeffrey
**Sent:** Friday, June 03, 2005 2:47 PM
**To:** 'tbrock@atlanticenergyservices.com'
**Cc:** 'tcasabonne@atlanticenergyservices.com'; Schuster, Wes
**Subject:** Advantages of Single Source Supply of Tecogen Integrated CM-75 Module

Tim,

Attached is a letter I put together regarding the advantages of Tecogen supplying fully integrated CM-75 modules on the Lakeland CSD project.  Please let me know if I can provide any additional information.

Regards,

Jeffrey Glick
Tecogen
Regional Sales Manager
781-466-6481
781-466-6466 Fax



Integrated Module
Benefits.doc...



T 0285

# TECOGEN

*Natural Gas Engine-Driven Products*

June 3, 2005

Mr. Timothy Brock
Atlantic Energy Services, Inc.
92 Congress Street, Suite #4
Saratoga Springs, NY 12866

Subject: Advantages of Single Source Supply of Tecogen Integrated Cogeneration Module

Dear Tim,

Within the last couple of weeks it has been brought to our attention here at Tecogen that the Tecogen CM-75 modules to be supplied on the Lakeland CSD project will not have the Tecogen factory packaged integrated system. At the current time, Tecogen is being asked to supply all eleven units without the factory supplied fully integrated system. Instead, Tecogen has been asked to supply our standard CM-75 modules along with the emission system components shipped loose. The packaging of the emission system, plumbing module, exhaust system, and associated piping is to be done by others. While this arrangement of packaging by others has been done in the past, I believe in the case of the Lakeland CSD project, might not be best for the school district. In fact, it was stated in the specification addendum number H-5, E-5, TC-5 dated October 29, 2004 that *"Equipment provided as an Integrated Unit from Tecogen is the equipment indicated within the "by Tecogen" boundary.*

By purchasing a fully packaged system from Tecogen, the school district is assured that the system has been packaged and tested as a complete system by the cogeneration module manufacturer. This means that the quality of workmanship on the integrated system will be consistent with the high standards Tecogen exhibits on the cogeneration module itself. The school can also be confident that the engineering Tecogen has invested into the packaging of the integrated system will be taken advantage of. These engineering advancements include:

- Piping arrangement to minimize pressure drop and allow for a compact package
- Piping and component support to prevent damage to critical components of the system
- Thermal expansion compensation to maintain piping integrity
- Acoustic considerations
- Selection and installation of insulation for all components supplied within the integrated package
- Selection of materials to prevent catalytic converter substrate damage

*45 First Avenue*
*Waltham, MA 02451*

- Emissions testing of completed package at factory prior to shipment to assure compliance
- Testing of the entire package at factory to confirm that all systems operate satisfactorily

By allowing Tecogen to supply the entire integrated module system, the Lakeland Central School District would also be receiving a complete warranty on the entire cogeneration module and emission system. By allowing the second party to supply the packaging of the emissions system and plumbing components, a single source equipment warranty would not be possible.

I hope this information is helpful and provides you with some feel for why Tecogen promotes the supply of our fully integrated modules. If I can assist you anyway possible, please don't hesitate to contact me.

Sincerely,

*Jeffrey Glick*

Jeffrey Glick
Tecogen Regional Sales Manager

E
X
H
I
B
I
T

U

**CONFIDENTIAL**

wschuster

| | |
|---|---|
| **From:** | "Glick, Jeffrey" <Jeffrey.Glick@Tecogen.com> |
| **To:** | <tbrock@atlanticenergyservices.com> |
| **Cc:** | <tcasabonne@atlanticenergyservices.com>; "Schuster, Wes" <Wes.Schuster@AmericanDGInc.com>; "Brian Willemsen (E-mail)" <bwillemsen@rlkistler.com>; "John Bailey (E-mail)" <jbailey@rlkistler.com>; "Ray Hickey (E-mail)" <rhickey@advancedcomfortsys.com> |
| **Sent:** | Monday, June 06, 2005 5:52 PM |
| **Attach:** | CM-75 High Voltage.pdf; CM-75 Low Voltage.pdf |
| **Subject:** | Special Tecogen Module Pricing for Atlantic Energy Services Projects |



Tim,

Thanks for the opportunity for allowing Tecogen and our local representatives to provide you with direct pricing for your projects. Ray Hickey has forwarded your request for an equipment quotation that would cover a total of 25 completely integrated Tecogen CM-75 modules. If this pricing is acceptable to you, Tecogen would supply the units directly to Atlantic Energy Services based on each project's schedule. Atlantic Energy Services can then assign the units to the mechanical contractor you have selected for each project. By approaching these six projects in such a fashion, Atlantic Energy can be assured that they are receiving genuine Tecogen integrated modules at the best possible pricing and delivery. As a complete package, Atlantic Energy will also be able to receive a warranty directly from Tecogen on the cogeneration module and accessories.

Although we are not positive of the exact unit voltages, I am pretty confident the breakdown we have assumed is close to the correct mix. The final pricing will need to be adjusted based on the actual unit voltages. The scope of supply for each of the units we are quoting here is identical. Each module will be supplied with our fully integrated package which includes our emissions control system including a pump & valve module, exhaust heat exchanger, and exhaust muffler. The pricing also includes the costs for startup, freight and extended one-year warranty.

Equipment Pricing
Based on a total of 25 units (18 high voltage / 7 low voltage), the total price would be $1,934,440. I have attached a pricing page for both the high and low voltage units. The pricing pages provide the individual unit prices along with a list of the included options. A comparison of these new prices with what has already been quoted on the Auburn H.S. and Chemung County projects should highlight the savings we are offering. In addition to lower equipment price from Tecogen, additional savings will be generated by removing the cogeneration module supply from the mechanical contractor's scope.

Maintenance Contract Pricing
Tecogen has previously provided Atlantic Energy with several quotations for complete maintenance contracts. Below I have listed maintenance contract prices for your reference. These prices are based on the location of the site and the number of units at each individual location. The pricing discount Tecogen is presenting assumes the maintenance service would be provided by Tecogen.

Chemung County Health Center $1.15/hr
Lakeland Central School District $1.00/hr
Waterloo High School $1.15/hr
Auburn Middle School $1.35/hr
Mechanicville $1.35/hr

6/6/2005

Ellenville $1.40/hr

Notes on Pricing
The above quoted prices are based on delivery of all units before March 31, 2006. New pricing will apply for any units that are delivered after this date.

I hope these prices are acceptable to Atlantic Energy Services and that both Tecogen and Atlantic Energy can come to a swift agreement on the supply of this equipment. I am sure that with both our companies working together these projects will be complete successes.

Please let me know if you need any further clarifications on any of this information.

Regards,

Jeffrey Glick
Tecogen
Regional Sales Manager
781-466-6481
781-466-6466 Fax

    <<CM-75 High Voltage.pdf>>  <<CM-75 Low Voltage.pdf>>

CONFIDENTIAL

6/6/2005

**E**
**X**
**H**
**I**
**B**
**I**
**T**

**V**

FAXED



ATLANTIC
ENERGY
SERVICES
INC.



EXHIBIT
# 82
8/28/67 GB

June 10, 2005                    VIA Fax: 914-632-4772

Mr. Edward Horvath
J&M Heating and Air Conditioning, Inc.
48 Grand Street
New Rochelle, NY 10801

RE: Lakeland Central School District Energy Performance Project — Cogeneration Units

Dear Ed,

It has been brought to my attention that due to contractual obligations between Atlantic Energy Services, Inc. and the Lakeland Central School District and per the terms of our energy savings guarantee insurance policy, Atlantic Energy Services, Inc. is required to purchase and provide the cogeneration units for this project. As a result we need to remove the purchase of the cogeneration units from J&M's scope of work.

Per your schedule of values, Atlantic Energy Services, Inc. (AES) will deduct $955,000 from your contract for the (11) cogeneration units. AES will purchase (11) Tecogen CM75LE packaged cogen units from Tecogen and will assign the units to J&M for installation. Freight to the site, start-up services and first year warranty will be provided by Tecogen with the purchase of the units. Rigging, installation, piping, ductwork, etc. of the cogen units will remain in J&M's contract.

Please forward to my attention a credit cost proposal for (11) cogeneration units so that I can prepare a change order to your contract for the school district's approval. Upon the district's approval AES will place an order with Tecogen and will coordinate lead times, scheduling and delivery with your office.

Please contact me with any questions or concerns regarding this matter. Thank you in advance for your cooperation.

Sincerely,

Tim Casabonne
Project Manager
Atlantic Energy Services, Inc.

CC:    Timothy Brock, Atlantic Energy Services, Inc
       Jeff Glick — Tecogen
       Chris Cafer — Energy Concepts
       Ray Morningstar — Lakeland Central School District

*92 Congress Street, 2nd Floor, Saratoga Springs, New York 12866*
*(518) 587-3252 Phone (518) 587-4328 Fax (877) 237-4524 Toll Free*

T 0405

EXHIBIT

W



**AEGIS ENERGY SERVICES INC.**

413/746-5400 • FAX 413/746-3242
WWW.AEGISENERGYSERVICES.COM

2097 RIVERDALE STREET, WEST SPRINGFIELD, MA 01089 • P.O. BOX 2511, SPRINGFIELD, MA 01101-2511

## PRICE QUOTATION FOR ATLANTIC ENERGY SERVICES

| Prepared for: | Prepared by: |
|---|---|
| Atlantic Energy Services, Inc. | Lee Vardakas |
| 92 Congress Street, Suite 4 | AEGENCO, Inc. |
| Saratoga Springs, NY 12866 | 2085 Riverdale Street |
| (518) 587-3252 | West Springfield, MA 01089 |
| | (413) 746-1146 |

Date: June 14, 2005

### ITEMIZED DESCRIPTION FOR CHEMUNG COUNTY NURSING HOME

Four (4) AEGEN ThermoPower TP-75LE Cogeneration Modules  (75 kW, 60 Hz, 208 V, 3-phase).  Each module will include:

- Industrial Natural Gas Engine (V-8, 454 Cid)
- Engine Jacket, Oil, and Exhaust Heat Recovery
- 3-Way NSCR Emissions Package
- Acoustical Enclosure (Indoor Type)
- Intelisys Microprocessor Controls
- Open Protocol Interface (Modbus-Based)
- Remote Monitoring and Control System Including Modem
- Standard Electrical Protective Switchgear Panel Plus Integrated Utility Grade Relay Package
- Steel Skid and Vibration Isolators
- Complete Factory Assembly
- Factory Full-Load Run Test
- UL Approved Panel
- Installation Manual and Training
- Integrated Pump and Valve Module with Pump, Isolation Valve, Thermostatic Mixing Valve, Expansion Tank, and Pressure Relief Valve
- Silencer
- Start-up Assistance for AEGEN TP-75LE Modules by a Factory-Certified Technician.

1

## TOTAL COST



This price is contingent on delivery of 20 total AEGEN modules on all Atlantic Energy Service projects by 1/1/2006.

Standard parts and labor warranty are included on each module (covers defects in parts for 12 months from date of start-up). For best and broadest coverage, AEGENCO recommends that owner enter into separate maintenance agreement with factory authorized service provider.

## ITEMIZED DESCRIPTION FOR ADDITIONAL MODULES

Five (5) AEGEN ThermoPower TP-75LE Cogeneration Modules  (75 kW, 60 Hz, 480 V, 3 phase). Each module will include:

- Industrial Natural Gas Engine (V-8, 454 Cid)
- Engine Jacket, Oil and Exhaust Heat Recovery
- 3-Way NSCR Emissions Package
- Acoustical Enclosure (Indoor Type)
- Intelisys Microprocessor Controls
- Open Protocol Interface (Modbus-Based)
- Remote Monitoring and Control System Including Modem
- Standard Electrical Protective Switchgear Panel Plus Integrated Utility Grade Relay Package
- Steel Skid and Vibration Isolators
- Complete Factory Assembly
- Factory Full-Load Run Test
- UL Approved Panel
- Installation Manual and Training
- Integrated Pump and Valve Module with Pump, Isolation Valve, Thermostatic Mixing Valve, Expansion Tank, and Pressure Relief Valve
- Silencer
- Start-up Assistance for AEGEN TP-75LE Modules by a Factory-Certified Technician.

Standard parts and labor warranty are included on each module (covers defects in parts for 12 months from date of start-up).  For best and broadest coverage, AEGENCO recommends that owner enter into separate maintenance agreement with factory authorized service provider.

## TOTAL COST



This price is contingent on delivery of 20 total AEGEN modules on all Atlantic Energy Service projects by 1/1/2006.

Notes:

1.  Delivery: 10 to 12 weeks after receipt of order.
2.  Price excludes any applicable sales or use tax.
3.  FOB:  West Springfield, MA
4.  Terms: 15% with order, balance within 30 days of delivery (subject to credit approval).
5.  Quotation valid for 90 days.

Lee Vardakas
General Manager

3

E
X
H
I
B
I
T

X





June 16, 2005                           VIA Fax: 914-632-4772

Mr. Edward Horvath
J&M Heating and Air Conditioning, Inc.
48 Grand Street
New Rochelle, NY 10801

**RE: Lakeland Central School District Energy Performance Project — Cogeneration Units**

Dear Ed,

I would like to rescind my letter to you dated June 10th, 2005, regarding the purchase of the cogeneration units for the Lakeland CSD performance contract.

The purchase and installation of the cogeneration units will remain in J&M's contract as originally agreed.

We look forward to the successful completion of the project.

Sincerely,

Tim Casabonne
Project Manager
Atlantic Energy Services, Inc.

CC:    Timothy Brock, Atlantic Energy Services, Inc
       Jeff Glick — Tecogen
       Chris Cafer — Energy Concepts
       Ray Morningstar — Lakeland Central School District
       Greg Chiapperino - Triton

*Ray Morningstar*
*Lakeland Central*
*School*
*1086 Main street*
*head of human*
*resources*

*92 Congress Street, 2nd Floor, Saratoga Springs, New York 12866*
*(518) 587-3252 Phone (518) 587-4328 Fax (877) 237-4524 Toll Free*

**E**
**X**
**H**
**I**
**B**
**I**
**T**

**Y**



# Purchase Order

| Order Date: | PO No: | Job: |
|---|---|---|
| June 17, 2005 | 05AES002 | Atlantic Energy Services, Inc. |

**Seller:** Aegis Energy Services, Inc.
2097 Riverdale Street
West Springfield, MA 01089
413-746-5400

**Ship To:** Atlantic Energy Services, Inc.
92 Congress Street
Saratoga Springs, NY 12866
518-587-3252

Delivery date of goods: (on or before):  To be Determined

Per Our Attached Specification dated:  NA

Completion of services date (on or before): To be Determined

Per your quote dated:  June 16, 2005

| Item No. | Quantity | Vendor Catalog No. | Description of Goods or Services | Price per Item | Extended Price |
|---|---|---|---|---|---|
| 1 | 5 | AEGEN ThermoPower TP-75LE | Cogeneration Module (75kW, 60 Hz, 3-phase) Voltage to be determined | NA | $310,000.00 |

Misc. Notes:  1. Units to be equipped with the logo "ATLANTICGEN".
2. Delivery dates and locations will be determined at a later date.

Sub-total:  $310,000.00
Sales Tax:  Exempt
**Total: $310,000.00**

*#62K each*

## ** Send all invoices to the attention of Accounts Payable to the address listed below.**

## **Our Purchase Order No. MUST appear on all invoices, shipping labels and packages.**

NOTE: This order expressly limits acceptance to the terms stated on the face and back of this form and on any Purchase order supplement attached hereto.  Any additional or different terms, whether or not materially different, set forth in any communication from the seller are objected to and hereby rejected.

Approved By AES:  *Timothy J. Brock, President*            Dated: 6/17/05

Accepted By:                                    Dated:

92 Congress Street ♦ Suite 4 ♦ Saratoga Springs, NY ♦ 12866 ♦ (518) 587-3252 ♦ (518) 587-4328 fax

T 0195

Jul.20. 2005  1:47PM    518 884 8411    No.2339  P. 4/4

 ATLANTIC ENERGY SERVICES INC.

# Purchase Order

| Order Date: June 16, 2005 | PO No: 05AES001 | Job: Chemung County Health Center |
|---|---|---|

**Seller:** Aegis Energy Services, Inc.
2097 Riverdale Street
West Springfield, MA 01089
413-746-5400

**Ship To:** Chemung County Health Center
103 Washington Street
Elmira, NY 14901
607-737-2028

Delivery date of goods: (on or before):  10-12 Weeks from date of order

Per Our Attached Specification dated:  NA

Completion of services date (on or before): NA

Per your quote dated:  June 16, 2005

| Item No. | Quantity | Vendor Catalog No. | Description of Goods or Services | Price per Item | Extended Price |
|---|---|---|---|---|---|
| 1 | 4 | AEGEN ThermoPower TP-75LE | Cogeneration Module (75kW, 60 Hz, 480 V, 3-phase) | NA | $119,000.00 |

Misc. Notes:   1. Units to be equipped with the logo "ATLANTICGEN".

2. PO is contingent upon the design engineer's approval of the
AEGEN unit as an acceptable substitute to the TECOGEN, INC
CM-75 integrated module listed in the project plans and
Specifications.

Sub-total:  $119,000.00
Sales Tax:  Exempt
**Total: $119,000.00**

*$29K each*

** **Send all invoices to the attention of Accounts Payable to the address listed below.** **

**Our Purchase Order No. MUST appear on all invoices, shipping labels and packages.** **

NOTE: This order expressly limits acceptance to the terms stated on the face and back of this form and on any Purchase order
supplement attached hereto. Any additional or different terms, whether or not materially different, set forth in any communication
from the seller are objected to and hereby rejected.

Approved By AES:  *Timothy J. Brock, President*                     Dated: 6/16/05

Accepted By:                                                        Dated:

92 Congress Street ● Suite 4 ● Saratoga Springs, NY ● 12866 ● (518) 587-3252 ● (518) 587-4328 fax

**E
X
H
I
B
I
T

Z**



**AEGIS ENERGY SERVICES INC.**

413/746-5400 • FAX 413/746-3242
WWW.AEGISENERGYSERVICES.COM

*2097 RIVERDALE STREET, WEST SPRINGFIELD, MA 01089 • P.O. BOX 2511, SPRINGFIELD, MA 01101-2511*

23 June 2005

Mr. Tim Casabonne
Atlantic Energy Services, Inc.
92 Congress Street, Suite 4
Saratoga Springs, NY 12866

Dear Tim:

Thank you for your two purchase orders for 9 cogeneration modules:

- ▪ PO # 05AES001   4 modules – Chemung Health Center
- ▪ PO # 05AES002   5 modules – Later Project

This letter serves as confirmation of our receipt and acceptance of both orders.

Enclosed are 4 copies of the submittals for the Chemung Health Center project. Please feel free to give Lee or me a call if you have any questions on the submittals.

Sincerely,

*John P. da Silva*

John da Silva
Marketing Manager

Enclosures

T 0194

E
X
H
I
B
I
T

AA

## Glick, Jeffrey

**From:** Brian Willemsen [bwillemsen@rlkistler.com]
**Sent:** Monday, July 18, 2005 12:25 PM
**To:** Jeff Glick (E-mail)
**Subject:** FW: ccnf cogeneration project

Jeff,

Gary Morenus is my aquantence in buildings & grounds for Chemung County. He would like copy of Bob Page letter. Please email him to below address. brian

-----Original Message-----
**From:** Gary Morenus [mailto:GMorenus@co.chemung.ny.us]
**Sent:** Monday, July 18, 2005 11:51 AM
**To:** Brian Willemsen
**Subject:** ccnf cogeneration project

Brian,

Thanks for the input on this cogeneration project. If you could have that gentleman send me the letter I would be appreciative. Thanks.

Gary Morenus

*607 - 737 - 2832*

*Building and grounds*

Confidentiality Notice:

This transmission, including any attachments, is for the sole use of the intended recipient(s) or entity named above and may contain confidential and privileged information. If you received this and are not the intended recipient(s), you are hereby notified that any disclosure, copying, unauthorized distribution or the taking of any action in reliance on the contents of this information is prohibited. If you have received this transmission in error, please immediately contact the sender as indicated above to arrange the proper handling of the information.

*Plus Brian Willemsen*

T 0201

7/18/2005

**Glick, Jeffrey**

| | |
|---|---|
| **From:** | Glick, Jeffrey |
| **Sent:** | Monday, July 18, 2005 2:57 PM |
| **To:** | 'GMorenus@co.chemung.ny.us' |
| **Cc:** | Brian Willemsen (E-mail) |
| **Subject:** | Chemung County Health Center - Nursing Facility Cogen Project |

Gary,

Tecogen's local representative, Brian Willemsen asked me to forward you the attached letter regarding the cogeneration modules being specified at your facility.  We sent this letter to Bob Page at your facility and to Troy McClure from Clough Harbor Associates and to Tim Casabonne at Atlantic Energy.

Please contact me if you have any questions.

Regards,

Jeffrey Glick
Tecogen
Regional Sales Manager
781-466-6481
781-466-6466 Fax



Chemung County -
Robert Page J...

1

T  0202

# TECOGEN

Natural Gas Engine-Driven Products

*TECOCHILL*®
*TECOGEN*®
*TecoFROST*™

July 18, 2005

Mr. Robert Page
Chemung County Health Center – Nursing Facility
103 Washington Street
PO Box 588
Elmira, NY, 14902

Dear Mr. Page:

As you are aware, we at Tecogen were surprised and dismayed to learn that the planned purchase of the four Tecogen CM-75 cogeneration units for the Chemung Project was revised in favor of a new product – one of unequal engineering specifications – manufactured by Aegis Energy Services. We feel this to be severe misjudgment given that the Aegis product is new, untested in the marketplace, unsupported by a local/experienced service organization, and is a product with limited certifications, if any. To purchase and install the Aegis system in the Chemung Nursing Facility would be an unwise and irresponsible act.

Tecogen, as you know, has manufactured its cogeneration module for over twenty years, having produced and installed approximately 800 CM-60/75 modules in that period. The Tecogen product is the standard for small packaged cogen modules in this country, having been successfully used in many applications, including dozens of sites in Upstate New York alone. I believe some members of your staff may have visited several of these local sites (Geneva General Hospital and the Clifton Springs Hospital and Clinic). As such you are likely aware that the Tecogen product is supported by a factory service center based in Newark, NY (four service technians/129 CM-75's) with the closest serviceman within a one hour drive of the Chemung facility. The Aegis unit, by comparison, has only recently been introduced to the market and has a very limited track record. To our knowledge they have no service operation in your area. We feel strongly that this substitution should not be made without a careful and impartial product comparison, especially in the areas of product track record, product safety certifications, and local service infrastructure.

Relative to the product certifications, please understand that cogeneration modules such as those manufactured by Tecogen or Aegis are natural gas/electrical appliances for which certification is a fundamental requirement, especially in a public elder-care facility. Tecogen, at great expense and engineering time, has obtained full certifications for its products. I wish to elaborate on what true certification means as it is often misunderstood. The specific certifications for the CM-75 are listed in Table 1 (attached) along with web links confirming the listing. As shown, the overall product – *in total, as a complete device* – has been certified by ETL/Intertek, a Nationally Recognized Testing Laboratory (or NRTL) to the *AGA (American Gas Assoc.) Standard for Gas-Fired Engine Driven Cogeneration Appliances (2-89)*. This certification requires that the entire machine design be reviewed by the NRTL engineers for properly listed electrical and fuel supply components and that the components themselves are correctly installed and applied. The entire product, in its final design configuration, is then tested by the NRTL to confirm the published performance specifications, as well as to ensure that the required alarms safely stop the machine when these events are simulated. Also, and as shown in Table 1, the Tecogen manufacturing facility is inspected quarterly by an ETL/Intertek engineer for continued design compliance and to confirm that the mandated processes required to maintain certification are still being conducted on each unit (i.e., quality control steps, specialized shop tests for voltage surge, etc.). Our most recent inspection was on May 10, 2005.

The Tecogen CM-75 has also been certified for safe interconnection to utility electric system by three standards: (a) The Institute for Electric and Electronic Engineers (IEEE) P1547/D07, (b) The New York State Interconnect Requirement (NYSIR), and (c) The California Electric Rule 21. These interconnection certifications generally require the same format as the product safety certification above; the units are reviewed and tested by an NRTL (see Table 2 for the tests) after which quarterly inspections are conducted for design and QC compliance. In this case, ETL/Intertek was used for most tests, although Underwriters Laboratories was used for the anti-islanding

45 First Avenue
Waltham, MA 02451
781.466.6400  (fax) 781.466.6466

T 0197

– 2 –                                                           July 18, 2005

certification, a safety that protects utility workers if an outage occurs. These certifications are important as they impact the facility's liability relative to the electric company's property and workers.

It is worth mentioning also that Tecogen has also obtained certification of its switchgear against water spray to IPX4 (an international electrical certification) by ETL/Intertek. This was necessary because our integrated design locates the plumbing module above this high voltage switchgear, a location which many inspectors would disallow unless the cabinet was certified against water ingress. The Chemung County project had planned to use this plumbing module in the Tecogen design and if the Aegis machine is likewise to use the Aegis version of this accessory then switchgear water spray certification is an important and valid requirement.

At Tecogen, we take great pride in these certifications. For our customers, the certifications and quarterly inspection serve as essential "third-party" checks of our product designs, manufacturing procedures, and QC systems. They also impact favorably our company's ability to obtain the normally required levels of product liability insurance. Moreover, we learned early on in this business that few building inspectors and careful facility managers would accept the installation of an uncertified appliance that generates pressurized hot water and high voltage electricity, so most projects simply could not proceed without such certifications. In the case of Chemung and the new Aegis product, we are not certain of its certification status. However, given the information available on Aegis' web site and in checking the various agency web sites for listed products, it would appear doubtful that the Aegis product has any certifications except on the component level (not applicable to the entire unit).

Several weeks ago, when we learned of the change, Wes Schuster (Tecogen Sales VP) immediately placed a call to Mr. Brock (Atlantic Energy's President) asking for the opportunity to re-quote and better the Aegis price. Our call was not returned. As we discussed, our offer remains on the table.

I urge you to be wary of accepting an uncertified appliance for installation into its facility, especially where there is no economic incentive to do so. Thank you for your thoughtful consideration of this matter and please contact me if you have any questions (781-466-6401, Robert.Panora@Tecogen.com).

Sincerely,

*Robert A. Panora*

Robert A. Panora
President & COO


CC:    Troy McClure – Clough Harbour Associates (tmcclure@CHA-LLP.com)
       Tim Casabonne – Atlantic Energy Services, Inc. (tcasabonne@atlanticenergyservices.com)

– 3 –                                                July 18, 2005

## Table 1 – Tecogen CM-75 Product Safety Certifications

| Product Safety Certification | | |
|---|---|---|
| **Name** | **Description** | **Requirements for Maintaining Compliance** |
| ETL Listed Marking – Report #484603 http://etlwhidirectory.etlsemko.c om/WebClients/ITS/DLP/produc ts.nsf/6a421efeead6f216852568d 4005862af/fee54098eef089da85 256a69004853bc?OpenDocumen t&ExpandSection=2&Highlight= 2,Tecogen -_Section2 | Labeled for compliance with the AGA Standard for Gas-Fired Engine Driven Cogeneration Appliances (2-89) | • Third party (ITS) Quarterly Inspections to ensure quality control<br>• 100% Production Line Testing – Dielectric Withstand Test<br>• Third party authorization required to use alternate parts |
| IPX4 | Control and switchgear enclosures have been certified to IPX4 (International classification system per IEC 60529 for ingress protection against water) | N/A |
| **Interconnection Compliance** | | |
| **Name** | **Description** | **Requirements for Maintaining Compliance** |
| IEEE P1547/D07 | Certified by Intertek Testing Services to be in compliance with this Draft Standard for Interconnecting Distributed Resources with Electric Power Systems. *(See Type Testing Summary Below)* | • Third party (ITS) Quarterly Inspections to ensure firmware revision control<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |
| NYSIR http://www.dps.state.ny.us/SIRD evices.PDF | Accepted as Type Tested and Approved Equipment by the New York State Public Service Commission Standard Interconnect Requirements. *(See Type Testing Summary Below)* | • Website listing of most current firmware version<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |
| California Rule 21 http://www.energy.ca.gov/distge n/interconnection/certification.ht ml | Certified to meet the Type Testing and Production Testing requirements of California Rule 21. Also certified as Non-Islanding. *(See Type Testing Summary Below)* | • Third party (ITS) Quarterly Inspections to ensure firmware revision control<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |

– 4 –                                                    July 18, 2005

**Table 2 – Tecogen CM-75 Electric Interconnection Tests Required for Interconnection Certification to P1547, NSIR, and Rule 21 (all passed)**

| Type Testing | | | |
|---|---|---|---|
| **Standard** | **Section** | **Description** | **Reference Standard** |
| IEEE P1547/D07 | 4.2.1 | Voltage Disturbances | |
| | 4.2.2 | Frequency Disturbances | |
| | 4.3.2 | Limitation to Flicker | |
| | 4.3.3 | Harmonics | |
| | 4.3.4 | Immunity Protection (Radiated RFI) | IEEE C37.90.2 |
| | 4.3.5 | Surge Immunity | IEEE C37.90.1, IEEE C62.45 |
| | 4.3.5 | Electrical Fast Transient Immunity | IEEE C37.90.1, IEEE C62.45 |
| | 4.3.5 | 100 kHz, 500A Ringwave | IEEE C62.41, IEEE C62.45 |
| | 4.3.5 | 1.2 x 50 uS Surge | IEEE C62.41, IEEE C62.45 |
| UL1741 | 44 | Dielectric Voltage-Withstand | |
| | 45.2.2 | Power Factor | |
| | 45.4 | Harmonic Distortion | Same as P1547/D07 Section 4.3.3 |
| | 46.2 | Voltage and Frequency Variation | Same as P1547/D07 Section 4.2.1 & 4.2.2 |
| | 46.2.3 | Automatic Restart, 5 minutes | |
| | 46.4 | Power Loss, Control Circuitry | |
| | 47.3 | Short Circuit Test | |
| | 46.3 | Anti-Islanding | |

T 0200

E
X
H
I
B
I
T

BB

# TECOGEN

*Natural Gas Engine-Driven Products*

July 11, 2005

Mr. Timothy J. Brock, President
Atlantic Energy Services, Inc.
92 Congress Street, Suite #4
Saratoga Springs, New York 12866



Dear Mr. Brock:

As you are aware, we at Tecogen were very surprised and dismayed to learn that the purchase order for the eleven Tecogen units for the Lakeland School Projects was cancelled as a subcontractor cost-saving measure in favor of a new product – not specified in the project engineering specifications – and manufactured by the Aegis Energy Corporation. We feel this to be severe misjudgment given the newness of the Aegis product, their manufacturing inexperience, and the liability involved in this major mechanical equipment purchase. Tecogen, as you know, has manufactured this product for over twenty years, having produced approximately 800 CM-60/75 modules in that period. This product is the standard for small packaged cogen modules in this country, having been successfully used in many applications, including over a dozen schools in Upstate New York alone. The Aegis unit, by comparison, has only recently been introduced to the market and has a very limited track record. We feel strongly that this substitution should not be made without a careful and impartial product comparison especially in the areas of product track record and product safety certifications.

Relative to the product certifications, please understand that the Tecogen and Aegis products are natural gas/electrical appliances for which certification is a fundamental requirement, especially in a public facility. Tecogen, at great engineering expense, has obtained full certifications for its products. I wish to elaborate on what true certification means as it is often misunderstood. The specific certifications for the CM-75 are listed in Table 1 (attached) along with web links confirming the listing. As shown, the overall product – *in total, as a complete device* – has been certified by ETL/Intertek, a Nationally Recognized Testing Laboratory (or NRTL) to the *AGA (American Gas Assoc.) Standard for Gas-Fired Engine Driven Cogeneration Appliances (2-89)*[1]. This certification requires that the entire machine design be reviewed by the NRTL engineers for properly listed electrical and fuel supply components and that the components themselves are correctly installed and applied. The entire product, in its final design configuration, is then tested by the NRTL to confirm the published performance specifications, as well as to ensure that the required alarms safely stop the machine when these events are simulated. Also, and as shown in Table 1, the Tecogen manufacturing facility is inspected quarterly by an ETL/Intertek engineer for continued design compliance and to confirm that the mandated processes required to maintain certification are still being conducted on each unit (i.e., quality control steps, specialized shop tests for voltage surge, etc.). Our last inspection was on May 10, 2005.

The Tecogen CM-75 has also been certified for safe interconnection to utility electric system by three standards: (a) The Institute for Electric and Electronic Engineers (IEEE) P1547/D07 (b) The New York State Interconnect Requirement or NYSIR , and (c) The California Rule 21. These interconnection certifications generally require the same format as the product safety certification above; the units are reviewed and tested by an NRTL (see Table 2 for the tests) after which quarterly inspections are conducted for design and QC compliance. In this case ETL/Intertek was used for most tests, although Underwriters Laboratories was used for the anti-islanding certification, a safety that protects utility workers if an outage occurs. These certifications are important as they impact the facility's liability relative to the electric company's property and workers.

---

[1] The AGA standard has, in recent years, been superceded by UL Standard 2200 whose requirements cover stationary engine generator assemblies rated 600 volts or less that are intended for installation and use in ordinary locations. New cogen equipment, including our established competitors, are certified to this standard. Tecogen product certification will eventually be updated to UL 2200  by ETL/Intertek.

*45 First Avenue
Waltham, MA 02451
781.466.6400  (fax) 781.466.6466*

September 1, 2005

It is worth mentioning also that Tecogen has obtained certification of its switchgear against water spray to IPX4 (an international electrical certification) by ETL/Intertek. This was necessary because our integrated design locates the plumbing module above this high voltage switchgear, a location which many inspectors would disallow unless the cabinet were certified against water ingress. Lakeland was to use this plumbing module in the Tecogen design and if the Aegis machine is likewise to use the Aegis version of this accessory then switchgear water spray certification is an issue.

At Tecogen, while we take great pride in these certifications, our motivation for the incurring the expense was self-interest. The certifications and quarterly inspection serve as essential "third party" checks for our designs and QC systems while also impacting our ability to obtain the required levels of product liability insurance. Moreover, we learned early on in this business that few building inspectors and careful facility managers would accept the installation of an uncertified appliance generating pressurized hot water and high voltage electricity. In the case of Lakeland and the new Aegis product, we are not certain of their certification status. However, given the information available on their web site and in checking the various agency web sites for listed products, it would appear doubtful that the Aegis product has any certifications except on the component level.

As we discussed, I urge Atlantic Energy to be wary of accepting an uncertified appliance for installation into their customer facility, especially where there is no economic incentive to do so. Thank you for your thoughtful consideration of this matter and please contact me if you have any questions (781-466-6401, Robert.Panora@Tecogen.com).

Sincerely,

*Robert A. Panora*

Robert A. Panora
President & COO


CC: Kenneth Connolly, Superintendent of Schools, Lakeland Central School District

– 3 –                                    September 1, 2005

## Table 1 – Tecogen CM-75 Product Safety Certifications

| Name | Description | Requirements for Maintaining Compliance |
|------|-------------|------------------------------------------|
| ETL Listed Marking – Report #484603 http://database.ul.com/cgi-bin/XYV/cgifind.new/LISEXT/1FRAME/srchres.html?begin=0&collection=/data3/verity_collections/lisext&vdkhome=/usr/app/verity_sw_rev24/common&query=FTSR%3CIN%3ECCN+and+not+GUIDEINFO&SORT_BY=text lines:asc,ccnshorttitle:asc | Labeled for compliance with the AGA Standard for Gas-Fired Engine Driven Cogeneration Appliances (2-89) | • Third party (ITS) Quarterly Inspections to ensure quality control<br>• 100% Production Line Testing – Dielectric Withstand Test<br>• Third party authorization required to use alternate parts |
| IPX4 | Control and switchgear enclosures have been certified to IPX4 (International classifcation system per IEC 60529 for ingress protection against water) | N/A |
| **Interconnection Compliance** | | |
| Name | Description | Requirements for Maintaining Compliance |
| IEEE P1547/D07 | Certified by Intertek Testing Services to be in compliance with this Draft Standard for Interconnecting Distributed Resources with Electric Power Systems. (See Type Testing Summary Below) | • Third party (ITS) Quarterly Inspections to ensure firmware revision control<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |
| NYSIR http://www.dps.state.ny.us/SIRDevices.PDF | Accepted as Type Tested and Approved Equipment by the New York State Public Service Commission Standard Interconnect Requirements. (See Type Testing Summary Below) | • Website listing of most current firmware version<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |
| California Rule 21 http://www.energy.ca.gov/distgen/interconnection/certification.html | Certified to meet the Type Testing and Production Testing requirements of California Rule 21. Also certified as Non-Islanding. (See Type Testing Summary Below) | • Third party (ITS) Quarterly Inspections to ensure firmware revision control<br>• 100% Production Line Testing – Voltage/Frequency Variation Test |

T 0275

September 1, 2005

**Table 2 – Tecogen CM-75 Electric Interconnection Tests Required for Interconnection Certification to P1547, NSIR, and Rule 21 (all passed)**

| Type Testing | | | |
|---|---|---|---|
| Standard | Section | Description | Reference Standard |
| IEEE P1547/D07 | 4.2.1 | Voltage Disturbances | |
| | 4.2.2 | Frequency Disturbances | |
| | 4.3.2 | Limitation to Flicker | |
| | 4.3.3 | Harmonics | |
| | 4.3.4 | Immunity Protection (Radiated RFI) | IEEE C37.90.2 |
| | 4.3.5 | Surge Immunity | IEEE C37.90.1, IEEE C62.45 |
| | 4.3.5 | Electrical Fast Transient Immunity | IEEE C37.90.1, IEEE C62.45 |
| | 4.3.5 | 100 kHz, 500A Ringwave | IEEE C62.41, IEEE C62.45 |
| | 4.3.5 | 1.2 x 50 uS Surge | IEEE C62.41, IEEE C62.45 |
| UL1741 | 44 | Dielectric Voltage-Withstand | |
| | 45.2.2 | Power Factor | |
| | 45.4 | Harmonic Distortion | Same as P1547/D07 Section 4.3.3 |
| | 46.2 | Voltage and Frequency Variation | Same as P1547/D07 Section 4.2.1 & 4.2.2 |
| | 46.2.3 | Automatic Restart, 5 minutes | |
| | 46.4 | Power Loss, Control Circuitry | |
| | 47.3 | Short Circuit Test | |
| | 46.3 | Anti-Islanding | |

E
X
H
I
B
I
T

CC

**Schuster, Wes**

From:          Schuster, Wes
Sent:          Friday, July 22, 2005 9:37 AM
To:            Ray Hickey (E-mail); Brian Willemsen (E-mail)
Cc:            Glick, Jeffrey; Panora, Robert
Subject:       Atlantic Energy

CONFIDENTIAL

Ray & Brain,

Confirming our discussion, Ray will ask Tim Casabonne to supply us with a copy of Aegis' quote so that we can meet or better their price. Brian will try the mechanical manager at Cloth Harbor even though we were told not to call anymore. We will not float our prices by Atlantic Energy yet. We will also look for any other potential compliance or code violation issues that might set Aegis' position back. Ray has learned that union labor is required at Lakeland and we don't think that Aegis nor J&M considered that seriously when making their deal. It has become a real issue only recently.

However, if the only card we have to turn is exposing our pricing then Tecogen is prepared to go to $66,000 for four units for Chemung and to $62,000 for 25 units (includes 11 Lakeland and other future units to be installed through Q1 of 2006). For either quantity a commission of ▮▮▮▮/ unit applies. These are extraordinary prices and exceed normal pricing practices and multiplier practices. These prices are one time only prices and are purely to dislodge Aegis from winning these orders and more importantly from starting servicing in these territories.

Bob and I can be reached by cell phone only next week. Try me first at 978-578-5008 and Bob (will be on the West Coast) at 781-956-3507.

Wesley Schuster
Executive Vice President
Tecogen
781-466-6480
wes.schuster@tecogen.com



EXHIBIT
#84
8/28/07  CB

T 0071

1

E
X
H
I
B
I
T

DD

# ADVANCED COMFORT SYSTEMS

**CONFIDENTIAL**

11B Commerce Drive   Ballston Spa, NY 12020   (518)884-8444  Fax:884-8411

July 29, 2005

Atlantic Energy Services, Inc.
92 Congress Street,
Suite #4
Saratoga Springs, NY 12866

Attention:  Tim Casabonne, Project Manager

**REFERENCE: CHEMUNG COUNTY NURSING FACILITY**

QUOTATION: Q05-021R1

Advanced Comfort Systems, Inc., as the representative for *TECOGEN, INC.,* offers the following
model CM-75-LE, integrated, quantity of four (4), as listed in the specifications and documents as G-1
through G-4 with the following features and / or accessories:

- Packaged engine/generator set with enclosure
- 460-3-60 power requirement
- Exhaust silencer, hospital grade, <u>mounted</u>
- Catalytic converter, <u>mounted</u>
- External hot water exhaust heat exchanger, <u>mounted</u>
- Associated exhaust, hot water and heat recovery piping, <u>mounted</u>
- Hot water pump rated at 22 GPM and 68'HD
- Microprocessor control
- Skid support system for above
- Dial up modem (requires dedicated phone line by customer)
- Start-up service by TECOGEN SERVICE
- First year parts warranty

**FOB FACTORY FREIGHT ALLOWED TO JOB SITE...............$220,000.00**
**Terms Net 30 Days No Taxes Included**

Ray Hickey
Sales Engineer

Your Purchase Order is to be addresses to:

TECOGEN, Inc.
45 First Avenue
P.O. Box 9046
Waltham, MA 02454-9046
FAX  781-466-6466



EXHIBIT
#94
8/20/08 LB

# ADVANCED
# COMFORT
# SYSTEMS

11B Commerce Drive   Ballston Spa, NY 12020   (518)884-8444   Fax:884-8411

*Tecogen, Inc.,* will provide first year labor warranty for any part(s) that are deemed defective per the *Tecogen* warranty.

T 0062

E
X
H
I
B
I
T

EE

# O'BRIEN&LEVINE

### Court Reporting Services



**YOUR BOSTON CONNECTION...WORLDWIDE**

# Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

Transcript of the Testimony of:

# Jeffrey Glick

# August 28, 2007

www.court-reporting.com
mail@court-reporting.com

195 State Street
Boston, MA 02109
(617) 399-0130  888.825.DEPO(3376)

Linda Bernis   25455

ORIGINAL

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

1

1          UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF MASSACHUSETTS

3    --------------------------------------------x

4    TECOGEN, INC.,

5                    Plaintiff,

6    v.                       No. 05-11823 RCL

7    AEGIS ENERGY SERVICES, INC.,

8    AEGENCO, INC. AND AEGIS GENERATION COMPANY,

9                    Defendant.

10   --------------------------------------------x

11

12

13

14        DEPOSITION OF JEFFREY GLICK, a witness

15   called on behalf of the Defendant, taken

16   pursuant to the provisions of the

17   Massachusetts Rules of Civil Procedure,

18   before Linda Bernis, a Registered

19   Professional Reporter and Notary Public in

20   and for the Commonwealth of Massachusetts,

21   at the offices of McCarter & English, 265

22   Franklin Street, Boston, Massachusetts, on

23   Tuesday, August 28, 2007, commencing at 9:30

24   a.m.

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

16

1          reps would get a list of who the contractors

2          are that are bidding and would follow-up

3          with bids to those contractors.

4     Q.   Once J&M receives these bids from reps and

5          other reps, other equipment, perhaps other

6          cogens, J&M then decides which one it wants

7          to go with?

8     A.   That is correct.  Based on price, based on

9          what meets specification.

10    Q.   At that point, does J&M issue a PO?

11    A.   That is typically the case, yes.

12    Q.   So now your rep has a PO -- for sake of

13         argument, we'll talk about in general.

14         Strike that.  Let's talk specifically about

15         Lakeland.

16              J&M receives the PO -- I'm sorry.

17         J&M issues the PO to your rep.  What does

18         your rep do at that point?

19    A.   The rep exposes it to us, exposes it to

20         Tecogen.  If it's acceptable to Tecogen, we

21         enter it into our system.

22    Q.   I want to back you up for a minute.

23              When your reps are bidding, sending

24         a bid to J&M, are they working with Tecogen

17

1          on a price?

2    A.    They are absolutely working with Tecogen.

3    Q.    Very closely?

4    A.    Yes.

5    Q.    Are you the person in the case of Lakeland

6          that they would have been working with?

7    A.    Yes.

8    Q.    I'm going to back up even further.  In

9          general, what is your sales region?

10   A.    My region is the east coast, Mississippi

11         east and other parts of the country, but

12         mostly Mississippi east.

13   Q.    You would be the Tecogen point man for

14         something like this?

15   A.    That is correct.

16   Q.    You said the rep will expose the Tecogen and

17         if it's acceptable to Tecogen then you will

18         enter it into your system.  What does it

19         mean to be acceptable to Tecogen?

20   A.    The price, terms and conditions, scope,

21         delivery schedule, that type of thing.

22         Those four.

23   Q.    Price is pretty much known, though, at this

24         point because they have been working with

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

41

1          the Upstate New York reps, within a couple

2          of days.

3     Q.   You said you saw a brochure.  Can you

4          describe the brochure?  Was it for a bid, a

5          proposal?

6     A.   No, it was a sales brochure, two-page

7          brochure faxed to me.

8     Q.   Were you asked to make that available for

9          discovery in this litigation?

10    A.   I believe, that was in the documentation

11         that I gave.  I think it was.

12    Q.   I probably just didn't see it.

13              What did you and Mr. Panora discuss

14         with regard to the information received that

15         Aegis was building its own cogen?

16    A.   I can't tell you specifically what we

17         discussed because I just don't remember, but

18         it was pitney of understanding now what was

19         going on.  A wake-up call.

20    Q.   Did Tecogen have an idea of how they were

21         going to deal with this information?

22    A.   No.  Not that day.

23    Q.   What actions did you take or were instructed

24         to take based on the information that you

42

```
 1        now had?
 2   A.   Well, I knew at that point that all
 3        information, all communication with Aegis
 4        whether it be commercial, technical, would
 5        stop right then and there.
 6   Q.   I want to make sure I'm clear.  All
 7        information with Aegis would stop?
 8   A.   Right.  I wasn't going to call and give them
 9        prices.  We weren't going to talk about
10        business.  All of a sudden, we had a
11        competitor in our neighborhood, in our
12        backyard.
13   Q.   Did you contact Aegis?
14   A.   I believe, I probably did, but I can't tell
15        you for sure.  I probably called and asked
16        him what this is all about.
17   Q.   Do you recall that conversation at all?
18   A.   No.  But, I suspect, I called that day and
19        expressed my shock at what I was seeing.
20   Q.   Were there any subsequent discussions inside
21        Tecogen where you were involved to discuss
22        how to handle the situation of Aegis
23        building its own cogen?
24            MS. FROHLICH:  Let me caution you
```

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

69

1    Q.    Can you turn your attention to Bates number

2          T0330.  Can you explain what these terms and

3          conditions are for?

4    A.    If net 15 days terms were not acceptable, we

5          would revert to our standard payment which

6          is net 30.  In this case, we would only

7          build two at a time, ship two.  If we didn't

8          get paid for those two, we wouldn't build

9          the next two.  We would ship two at a time.

10   Q.    In a project like Lakeland, how are the reps

11         paid?  Are they paid for all 11 at once?

12   A.    You mean the commission?

13   Q.    No.  The monies they would receive from the

14         mechanical contractor.

15   A.    It varies from project to project.  Some

16         projects there's a progress payment.  It

17         could be as early in the process as order of

18         equipment.  They might have paid 25 percent

19         down.  They could be sitting on a

20         down-payment.  It's case-by-case.  Different

21         jobs; different things.  Some are, the

22         equipment is delivered they get 50 percent.

23   Q.    Do you recall what the Lakeland scheme was?

24   A.    I don't think I ever saw them.

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

70

1    Q.    Are your reps generally small outfits?

2          MS. FROHLICH:  Objection.

3    A.    All sizes.  Mom and pop shops.  In

4          Connecticut, I have a father and mother, two

5          sons, a sister-in-law.  I have sites -- my

6          Hawaii/California rep has 200 people.  We go

7          all ranges.

8    Q.    Some reps could afford this kind of a

9          payment structure and some reps couldn't;

10         would that be a true statement?

11   A.    It really is how they are being paid on the

12         project.  I don't think any rep is going to

13         take money out of their own pocket and pay

14         this.

15   Q.    Would a rep give you a purchase order for

16         cogens before they had a purchase order from

17         a mechanical contractor in their hand?

18   A.    Not likely.

19   Q.    Did ADG ever have to meet terms like this?

20   A.    No.

21   Q.    Now, at this time, May 6, 2005, I want to be

22         clear.  You're not sure or are you sure if

23         -- strike that.

24               Do you recall if you knew that

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

71

| | | |
|---|---|---|
| 1 | | Aegis was building cogens at about this time |
| 2 | | frame, May 6, 2005? |
| 3 | A. | Categorically, we would not be talking to |
| 4 | | them like this if we knew they were building |
| 5 | | them.  Don't know yet.  Uninformed at this |
| 6 | | point. |
| 7 | Q. | But you are aware they are bidding on |
| 8 | | Lakeland? |
| 9 | A. | It's now very obvious.  In fact, the way I'm |
| 10 | | writing to Lee, it looks as though he is |
| 11 | | taking the lead.  I'm sure already told Ray |
| 12 | | Hickey and those guys that, you know, back |
| 13 | | away, they are involved. |
| 14 | Q. | On Exhibit 74.  Turn your attention to |
| 15 | | T0325.  See the price at the bottom of the |
| 16 | | page reads, $64,504. |
| 17 | A. | Yes. |
| 18 | Q. | Is that the price for a particular cogen you |
| 19 | | were offering to Aegis? |
| 20 | A. | I guess, clarify that, please. |
| 21 | Q. | What does that number represent? |
| 22 | A. | That's for what we call a high voltage |
| 23 | | 75-kilowatt unit and has several options |
| 24 | | that have been included.  It's for one of |

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

76

```
 1          of a building, a customer has paid the

 2          contractor and the contractor is sitting on

 3          the money and we're owed it net 30, have had

 4          a history with the contractor, we'll ask for

 5          a two-party check to the owner directly.

 6    Q.    Have you ever asked for a two-party check

 7          from your reps?

 8    A.    I don't think it's ever happened before, no.

 9          It's usually a contractor thing.

10    Q.    Have you ever worked with J&M before as a

11          mechanical contractor?

12    A.    Never heard of them before this project.

13    Q.    Do you have any knowledge that J&M is

14          delinquent on bills?

15    A.    J&M, no.

16    Q.    Have you ever required a two-party check

17          from Aegis before?

18    A.    Never.

19    Q.    Mr. Glick, please review what we've marked

20          as Exhibit 76 and identify it for us?

21              MR. CURCIO:  I would also like to

22          add, counsel, that -- this is off the record

23          for one second.

24              (Off the record discussion.)
```

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

78

| | | |
|---|---|---|
| 1 | A. | I would assume so.  If they were giving us a |
| 2 | | purchase order they must have one. |
| 3 | Q. | Did you accept this purchase order? |
| 4 | | MS. FROHLICH:  Objection. |
| 5 | A. | No. |
| 6 | Q. | To your knowledge, did Tecogen accept this |
| 7 | | purchase order? |
| 8 | A. | Let me say, I believe, we started to order |
| 9 | | components based on this.  It was entered |
| 10 | | into our production schedule, so, I believe, |
| 11 | | we did.  Internally we accepted it. |
| 12 | Q. | Did you notify Aegis that you accepted this |
| 13 | | purchase order? |
| 14 | A. | No, I did not.  Not at this time. |
| 15 | Q. | Why not? |
| 16 | A. | There was an internal debate within Tecogen |
| 17 | | about accepting it. |
| 18 | Q. | Why was that? |
| 19 | A. | Terms again.  It was based on the terms. |
| 20 | Q. | When you say based on the terms, can you be |
| 21 | | more specific? |
| 22 | A. | Let me step back.  For all intents and |
| 23 | | purposes, it was accepted.  Sending order |
| 24 | | confirmations to Aegis was not done on a |

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

93

1    A.    Yes.

2    Q.    At the top, it says, four identical units.

3          Does that reflect the four units requested

4          by Aegis in the PO?

5    A.    Yes, it does.

6    Q.    So these 11 units in total were the 11 units

7          for the Lakeland project, correct?

8    A.    They were.

9    Q.    When you fill out an order entry form and

10         enter it into your system so that

11         manufacturing can start ordering parts, does

12         that mean Tecogen has accepted the purchase

13         order?

14               MS. FROHLICH:   Objection.

15   A.    It means that we are going to go buy the

16         parts like you said.   We are going to start

17         cutting some POs for parts.   For all intents

18         and purposes, we have accepted it.

19   Q.    What were the terms and conditions on

20         payment at the time you entered this order

21         entry form?

22   A.    Net 30.   And we were going to be given a

23         copy of the payment bond from the contractor

24         to the school.   The contractor, J&M, since

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

99

1    Q.    Did you receive this fax?

2    A.    I don't remember. . I don't think I saw it in

3          my file, but I must have received it.

4    Q.    I note it's Bates number T0084.  I'll

5          represent it was produced to us by Tecogen.

6    A.    This came off my fax machine, yes.

7    Q.    You said this is the bond.  Just elaborate

8          for us.

9    A.    It looks like the bond for the project.  It

10         was a bond prepared for J&M Heating for

11         Atlantic Energy.  It was bought from Mutual.

12   Q.    This would be the bond for the Lakeland

13         project?

14   A.    Yes.

15   Q.    Did this satisfy the requirement that you

16         had put down on the order entry form for,

17         need a copy of the project bond is what you

18         stated on the form?

19   A.    That is what I was looking for, yes.

20   Q.    Did you convey to Aegis at the time that

21         this satisfied the requirement for your

22         request for a bond?

23   A.    I don't think I did, no.

24   Q.    Did anyone, to your knowledge, at Tecogen

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

103

1         June 3rd?

2   A.   Correct.

3   Q.   You sent this out on June 3, 2005 to Mr.

4         Brock, correct?

5   A.   Correct.

6   Q.   This came after you received the bond from

7         Aegis, correct?

8   A.   That is correct.

9   Q.   Isn't it true that Aegis in their purchase

10        order requested an emissions control option?

11  A.   They did request an emissions control option

12        ship loose, correct.  Not the integrated

13        system.

14  Q.   Has Aegis ever done their own form of an

15        integrated system before?

16  A.   I believe, they did one.

17  Q.   Where was that?

18  A.   It was at a site in New York City by the

19        name of Tutor, Village Tutor City, next to

20        the United Nations Building.

21  Q.   Did they order the piece parts for the

22        integrated system in Tecogen and integrate

23        it themselves?

24  A.   That's how I believe it took place.  It was

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

104

1          a project ordered about a year before this,

2          year, year and a half before this.

3    Q.    Before you sent this e-mail to Mr. Brock,

4          did you ask Aegis if they were performing

5          their own form of an integration for the

6          Lakeland project?

7    A.    Pretty sure that's what they were going to

8          do.

9    Q.    Did you ask them?

10   A.    No, I did not ask them.  I don't think I

11         did.

12   Q.    I assume from your statement, you surmised

13         that's what they were going to do?

14   A.    Right.  Shipping a few of the loose

15         components needed to build up an integrated

16         unit.  When they did an integrated unit

17         similar to our design or their own design,

18         they were going to be doing it themselves.

19   Q.    So when you notified Atlantic Energy via Mr.

20         Brock and Mr. Casabonne that Tecogen can

21         supply an integrated system, you were fully

22         aware that Aegis was capable of supplying an

23         integrated system and surmised they probably

24         would provide an integrated system to J&M,

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

115

```
 1          That was given to us.

 2    Q.    The third sentence in that paragraph reads,

 3          "If this pricing is acceptable to you,

 4          Tecogen would supply the units directly to

 5          Atlantic Energy Services based on each

 6          project schedule."

 7              Do you see that sentence?

 8    A.    I do indeed, yes.

 9    Q.    Did I read it correctly?

10    A.    You did.

11    Q.    Does this proposal phase out Aegis in this

12          contract?

13    A.    I think, at this point, we are absolutely

14          doing that.

15    Q.    Is it being done deliberately?

16    A.    At this point, I believe so, yes.

17    Q.    Is there still an active PO from Aegis?

18    A.    There is a PO in my office.  I don't know if

19          you call it active.  It's sitting there.

20          We're looking at it internally whether to

21          accept it or not.

22    Q.    Did you order parts based on the PO you

23          received from Aegis?

24    A.    We started the process, yes.
```

Jeffrey Glick 8-28-2007
Tecogen, Inc. v. Aegis Energy Services, Inc., et al.

116

1    Q.    At the time you received the PO from Aegis,

2          you were under the impression that Aegis had

3          received a purchase order from J&M, correct?

4    A.    We were.

5    Q.    So Aegis had the contract, correct?

6    A.    Aegis.

7                MS. FROHLICH:  Objection.

8    A.    Aegis had the contract, correct.

9    Q.    You are deliberately trying to phase Aegis

10         out of that contract with this proposal to

11         Atlantic, correct?

12   A.    That is correct.

13   Q.    At this time, is it safe to assume that

14         Tecogen had no intention on accepting Aegis'

15         purchase order?

16   A.    I think that's safe to say, yes.

17   Q.    At the time of this letter, June 6, 2005,

18         you were well aware of the prices that Aegis

19         supplied to J&M for the cogens, correct?

20               MS. FROHLICH:  Objection.

21   A.    He knows what prices I gave to Aegis.  I

22         don't know what Aegis gave to J&M.  I never

23         saw that.

24   Q.    So, at the very least, you were aware of the

E
X
H
I
B
I
T

FF

ORIGINAL

1              IN THE UNITED STATES DISTRICT COURT                09:57

                FOR THE DISTRICT OF MASSACHUSETTS

2

3

4

5      - - - - - - - - - - - - - - x

       TECOGEN, INC.,                    :

6            Plaintiff,                  :

                                         :

7      vs.                               :

                                         : CV 05-11823 RCL

8      AEGIS ENERGY SERVICES,            :

       INC., and AEGIS GENERATION        :

9      COMPANY,                          :

            Defendants.                  :

10     - - - - - - - - - - - - - - x

11

12

13           Deposition of CHRISTOPHER P. CAFER, taken

14     pursuant to the Connecticut Practice Book, before

15     Corinne T. Thomas, LSR, Licensed Shorthand Reporter

16     #00439, and Notary Public within and for the State

17     of Connecticut, held at the offices of DeLio &

18     Peterson, LLC, 121 Whitney Avenue, 3rd Floor, New

19     Haven, Connecticut, on September 27, 2007, at 10:03

20     a.m.

21

22

23

24

25

C. CAFER

2

1    A P P E A R A N C E S:

2    ON BEHALF OF THE PLAINTIFF:

     JULIE A. FROHLICH, ESQ.

3    GOULSTON & STORRS

     400 Atlantic Avenue

4    Boston, Massachusetts  02110-3333

     (617) 482-1776

5    (617) 574-7580 - Facsimile

6    ON BEHALF OF THE DEFENDANT:

     ROBERT CURCIO, ESQ.

7    DELIO & PETERSON, LLC

     121 Whitney Avenue, 3rd Floor

8    New Haven, Connecticut  06510-1241

     (203) 787-0595

9    (203) 787-5818 - Facsimile

10   ALSO PRESENT:

     SPIRO VARDAKAS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C. CAFER

21

| | | |
|---|---|---|
| 1 | project, they do support a project such as this and | 10:29 |
| 2 | there are no glaring changes in what we're familiar | 10:29 |
| 3 | with in our specification table. | 10:29 |
| 4 | Q.   Is it common in your specification writing | 10:29 |
| 5 | to have equipment manufacturers want to communicate | 10:29 |
| 6 | with you to help tailor the specifications for | 10:29 |
| 7 | their equipment? | 10:29 |
| 8 | A.   I would say yes from the standpoint that | 10:29 |
| 9 | exercise in assuring that the specification is | 10:29 |
| 10 | current and doesn't have errors in it is where that | 10:29 |
| 11 | interest comes from.  That contact is typically | 10:29 |
| 12 | instigated by Energy Concepts to ensure that the | 10:29 |
| 13 | document is a viable and correct document.  The | 10:29 |
| 14 | calls that I'll get will be from a cogen vendor or | 10:29 |
| 15 | from a vendor of any product in that entire book | 10:29 |
| 16 | where everything was specified stating, geeze, I'd | 10:29 |
| 17 | really like to participate in your project.  May I | 10:30 |
| 18 | be I allowed to specify or provide you with a | 10:30 |
| 19 | specification? | 10:30 |
| 20 | In that instance, we can look at it and | 10:30 |
| 21 | decide whether or not it's a viable option to do | 10:30 |
| 22 | that. | 10:30 |
| 23 | Q.   Looking at the specification, even though | 10:30 |
| 24 | you stated that W.A. Kraft might require | 10:30 |
| 25 | substantive changes to be implemented in the | 10:30 |

C. CAFER

22

| | | |
|---|---|---|
| 1 | Lakeland project, you still listed them in this | 10:30 |
| 2 | specification.  Why is that? | 10:30 |
| 3 | A.    Because they could provide a product that | 10:30 |
| 4 | would have handled the application.  It would have | 10:30 |
| 5 | required certain design changes on our part to make | 10:30 |
| 6 | that fit as viably as a Tecogen unit. | 10:31 |
| 7 | Specifically, what I mean by that is that | 10:31 |
| 8 | that Tecogen neck unit is based on a 75 kilowatt | 10:31 |
| 9 | generator size.  Individually, each unit is capable | 10:31 |
| 10 | of 75 KW, kilowatt production of electricity.  At | 10:31 |
| 11 | the time, W.A. Kraft, and I don't believe they | 10:31 |
| 12 | still don't, but at the time, W.A. Kraft did not | 10:31 |
| 13 | have a generator of that size.  They had one that's | 10:31 |
| 14 | larger, a 150.  Being a multiple of 75, they could | 10:31 |
| 15 | therefore be considered as a viable supplier of | 10:31 |
| 16 | cogen should we as a design engineer have decided | 10:31 |
| 17 | to take the multiplicity of the units from 75 to | 10:31 |
| 18 | 150. | 10:31 |
| 19 | In a cogen plant that is a 150 cogen -- | 10:31 |
| 20 | excuse me, 150 KW cogen plant, I could elect to | 10:31 |
| 21 | have made that 475 KW units or two 150s.  That | 10:31 |
| 22 | decision is ultimately left to myself from a design | 10:31 |
| 23 | standpoint in does that suit or is that the best | 10:32 |
| 24 | suit for the electrical profile that the facility | 10:32 |
| 25 | may have and the waste tape recovery profile that | 10:32 |

23

| | | |
|---|---|---|
| 1 | they may have.  Sometimes there's a very fine line | 10:32 |
| 2 | that says yeah, it could go either way.  Sometimes | 10:32 |
| 3 | there's a very distinct line that says, no, this | 10:32 |
| 4 | particular engine is of the best fit.  Lakeland was | 10:32 |
| 5 | of the more fine line.  It could have gone either | 10:32 |
| 6 | way, but in my professional opinion and based upon | 10:32 |
| 7 | the profilers there, the 75 KW unit size was a | 10:32 |
| 8 | better marriage to the scope of work than the 150; | 10:32 |
| 9 | therefore, W.A. Kraft, although they can do it and | 10:32 |
| 10 | should not have been excluded and we did not | 10:32 |
| 11 | exclude them, it simply wasn't as good a fit, and | 10:32 |
| 12 | you'll have that typically in a specification. | 10:32 |
| 13 | In many projects, if it's publically funded | 10:32 |
| 14 | or State funded, you have a mandatory | 10:33 |
| 15 | responsibility to bid three vendors in there and in | 10:33 |
| 16 | most cases you'll find very full well that out of | 10:33 |
| 17 | the three vendors, one of them is going to be | 10:33 |
| 18 | superior for some reason in its nature, its size, | 10:33 |
| 19 | its operating performance, its efficiency.  There's | 10:33 |
| 20 | a number of different things that may fall in | 10:33 |
| 21 | there.  So when you list a manufacturer in a | 10:33 |
| 22 | specification, it's understood that one will have | 10:33 |
| 23 | potential advantages over the other, based upon the | 10:33 |
| 24 | absolute and ultimate fit into the project.  That | 10:33 |
| 25 | doesn't mean that the other product is a detriment | 10:33 |

C. CAFER

24

| | | |
|---|---|---|
| 1 | in any way or inferior in a major way. | 10:33 |
| 2 | Q.    You had said "three vendors," but yet you | 10:33 |
| 3 | only listed two.  Does that mean that this | 10:33 |
| 4 | specification is open to more than these two | 10:33 |
| 5 | vendors? | 10:33 |
| 6 | A.    Could be, yes.  It could be because there | 10:33 |
| 7 | was a project being a performance contractor and | 10:33 |
| 8 | through the state education laws, this did not have | 10:33 |
| 9 | to publically bid because the public bid portion of | 10:34 |
| 10 | that was the letting of the contract to the | 10:34 |
| 11 | performance contractor; therefore those laws, and | 10:34 |
| 12 | I'm not intimately completely familiar with all of | 10:34 |
| 13 | them, but those laws have been satisfied in the | 10:34 |
| 14 | selection of the performance contractor itself.  So | 10:34 |
| 15 | after that, it becomes a process between the design | 10:34 |
| 16 | engineer, in our case subconsultant to the | 10:34 |
| 17 | architect and the performance contractor. | 10:34 |
| 18 | There is a constant conversation as to who | 10:34 |
| 19 | a viable entity would be for the selection of | 10:34 |
| 20 | products.  There doesn't have to be a minimum | 10:34 |
| 21 | quantity of selections at that point.  It becomes | 10:34 |
| 22 | the most appropriate selections at that point and | 10:34 |
| 23 | that's a discussion with the performance | 10:34 |
| 24 | contractor.  They will typically look to us and say | 10:34 |
| 25 | who fits this application.  We initially dictate | 10:34 |

C. CAFER

25

| | | |
|---|---|---|
| 1 | that and then they look at it from a standpoint of | 10:34 |
| 2 | yes, we would like to work with them, no; we would | 10:35 |
| 3 | not like to work with them; we had experiences, | 10:35 |
| 4 | good, bad or indifferent; budget considerations, | 10:35 |
| 5 | whatever.  That backs their decision, but we | 10:35 |
| 6 | satisfy our responsibilities to the design | 10:35 |
| 7 | integrity of the project by initially selecting | 10:35 |
| 8 | those people that we think can do the work. | 10:35 |
| 9 | Q.  Does the architect rely on Energy Concepts | 10:35 |
| 10 | to make the decision as to which manufacturer best | 10:35 |
| 11 | meets the specification? | 10:35 |
| 12 | A.  Yes.  And that's almost solely because | 10:35 |
| 13 | their qualifications and their experience, this is | 10:35 |
| 14 | not what they do, this is what we do.  So they rely | 10:35 |
| 15 | on us for the cogen input to that. | 10:35 |
| 16 | Q.  So I'm going to refer you to -- we'll use | 10:35 |
| 17 | Exhibit 67, the second page, Section 1.3. | 10:36 |
| 18 | Do you see that, "quality assurance"? | 10:36 |
| 19 | A.  Uh-huh. | 10:36 |
| 20 | Q.  Under "quality assurance," we have two | 10:36 |
| 21 | sections.  Section A talks about NFPA, AGA and NEC | 10:36 |
| 22 | complaints. | 10:36 |
| 23 | Do you see that?  And B talks about | 10:36 |
| 24 | acceptable manufactures? | 10:36 |
| 25 | A.  I see this. | 10:36 |

C. CAFER

33

| | | |
|---|---|---|
| 1 | of the eight, if eight is the number, seven of | 10:46 |
| 2 | those directly to us with a transmittal copy, one | 10:46 |
| 3 | to Atlantic Energy in this case, so they saw what | 10:46 |
| 4 | was submitted.  It's just so that a box of | 10:47 |
| 5 | documents isn't floating all over the place.  The | 10:47 |
| 6 | paper path is supposed to be to whom they report | 10:47 |
| 7 | to. | 10:47 |
| 8 | Q.    As the engineer for the Lakeland project, | 10:47 |
| 9 | was Energy Concepts responsible for ensuring that | 10:47 |
| 10 | submittals offered equipment that met the | 10:47 |
| 11 | specifications? | 10:47 |
| 12 | A.    Yes. | 10:47 |
| 13 | Q.    And would it be Energy Concepts decision | 10:47 |
| 14 | and approval as to whether that equipment met the | 10:47 |
| 15 | specification? | 10:47 |
| 16 | A.    Both on what would be an official submittal | 10:47 |
| 17 | and what was submitted, and, yes, if we were asked | 10:47 |
| 18 | to evaluate a comparable piece of equipment. | 10:47 |
| 19 | Q.    Is a functional equivalent cogen acceptable | 10:47 |
| 20 | under these contract provisions? | 10:48 |
| 21 | A.    Yes.  If we've been asked and had the | 10:48 |
| 22 | opportunity to evaluate it through that criteria | 10:48 |
| 23 | that I gave you earlier, of which that's certainly | 10:48 |
| 24 | all of the items, yes. | 10:48 |
| 25 | Q.    So you did not have to use a Tecogen cogen | 10:48 |

C. CAFER

34

| | | |
|---|---|---|
| 1 | for this project?  That wasn't an absolute | 10:48 |
| 2 | criteria? | 10:48 |
| 3 | A.    No, it wasn't absolute.  Tecogen was | 10:48 |
| 4 | certainly used an as acceptable product. | 10:48 |
| 5 | Q.    If I could point your attention to Section | 10:48 |
| 6 | 1.4 on the same page of the Exhibit No. 67.  Do you | 10:48 |
| 7 | see under "product data," Section A, it says | 10:48 |
| 8 | "submit manufacturer specifications for cogen | 10:48 |
| 9 | units," et cetera.  At the end it says, "and | 10:48 |
| 10 | installations instructions." | 10:49 |
| 11 | Do you see that? | 10:49 |
| 12 | A.    Yes, I do see that. | 10:49 |
| 13 | Q.    Was an installation manual required for the | 10:49 |
| 14 | submittal? | 10:49 |
| 15 | A.    Yes, because we wrote it in this | 10:49 |
| 16 | specification.  It would be required -- if we | 10:49 |
| 17 | stated we wanted to see installation instructions | 10:49 |
| 18 | as part of the submittal, that would be a document | 10:49 |
| 19 | that would be required at the official submittal | 10:49 |
| 20 | phase. | 10:49 |
| 21 | Q.    Are installation instructions the same as a | 10:49 |
| 22 | manual?  Let me rephrase that. | 10:49 |
| 23 | Can you provide information on installation | 10:49 |
| 24 | without having to provide an installation manual? | 10:49 |
| 25 | A.    Yes. | 10:49 |