# Tecogen Ex. 89

IN THE MATTER OF:

TECOGEN, INC. vs.

AEGIS ENERGY SERVICES, INC. ET AL

DEPOSITION OF:

TIM CASABONNE
DATE: DECEMBER 4, 2007

**PERLIK and COYLE REPORTING**
*Certified Professional Reporters*

*1331 Main Street*
*Springfield, MA 01103*
*Tel.(413) 731-7931   Fax(413) 731-7451*

**COMPRESSED TRANSCRIPT & WORD INDEX**

93

1 figure is the final number that Ray gave to J & M
2 Heating and Cooling -- Ray being Ray Hickey from
3 Advanced Comfort.
4   Q.  Why did you create these notes?
5   A.  I believe it was an exercise to compare
6 the schedule of values that J & M had listed as
7 part of their contract with Atlantic Energy versus
8 the Advanced Comfort price quotes and Atlantic
9 Energy special pricing documents.
10  Q.  Why were you doing that as of June 10th,
11 2005?
12  A.  I believe because Atlantic Energy was
13 considering purchasing and providing cogeneration
14 units for the Lakeland project.
15  Q.  Why was Atlantic Energy considering that
16 as of June 10th, 2005?
17      MR. CURCIO:  Objection.
18      THE WITNESS:  I believe it was to
19 serve two purposes.  One was to ensure that we
20 were getting the best price for the cogen
21 equipment.
22      Two, that we were going to satisfy our
23 requirements with our agreement with the Lakeland
24 School District.

94

1   Q.  (BY MS. FROHLICH) Were there any
2 specific requirements in your agreement with the
3 Lakeland School District that Atlantic was
4 concerned with satisfying?
5   A.  I believe the main -- our main concern
6 was that we were going to achieve the energy
7 savings that was identified in the energy audit
8 which became part of the contract.
9   Q.  Had the energy audit been performed
10 based upon Tecogen modules?
11  A.  I don't know.
12  Q.  Let me show you Exhibit 24 -- and I
13 believe you may have looked at this on the first
14 day of your deposition.  Do you recall that?
15 (Indicating.)
16  A.  (Witness examining document.)  Yes.
17  Q.  These e-mails were sent on June 14th,
18 2005, correct?
19  A.  Yes.
20  Q.  The day before these e-mails you met
21 with Lee Vardakas, correct?
22  A.  Yes.
23  Q.  Tim Brock and Bill Marzano also attended
24 that meeting, correct?

95

1   A.  Yes.
2   Q.  Did anyone else participate in that
3 meeting?
4   A.  I can't recall.
5   Q.  Who proposed the meeting?
6   A.  I think it was Mr. Vardakas.
7   Q.  Did he tell you why he was proposing the
8 meeting?
9   A.  To inform us of the product that his
10 company offered.
11  Q.  What product was that?
12  A.  The Aegen cogeneration unit.
13  Q.  Where did the meeting occur?
14  A.  At our office in Saratoga.
15  Q.  How long did the meeting last?
16  A.  I don't recall.
17  Q.  Had you heard anything about
18 Aegen-manufactured cogeneration units before the
19 meeting?
20  A.  To the best of my knowledge, no.
21  Q.  Was the Lakeland project the first
22 time -- strike that.
23      In this meeting was anything said about
24 Tecogen modules?

96

1   A.  I would have to assume it was.  I don't
2 know for certain but I'm assuming, yes.
3   Q.  Do you have a specific memory?
4   A.  No.
5   Q.  At the meeting was Atlantic's purchase
6 of twenty Aegen modules at sixty-one thousand
7 dollars each discussed?
8   A.  I don't recall if that specific price
9 was discussed but the purchase of their equipment
10 was discussed.
11  Q.  Was there any discussion that you recall
12 about the price of Aegen modules?
13  A.  Again I know we discussed pricing but
14 specifically, I don't recall what price we
15 discussed.
16  Q.  In this e-mail, Exhibit 24, Mr. Vardakas
17 sent a sample Aegis maintenance agreement,
18 correct?
19  A.  Yes.
20  Q.  Was the June 13th meeting with
21 Mr. Vardakas the first time you had discussed
22 maintenance for the Lakeland project with
23 Mr. Vardakas?
24  A.  I'd have to say yes.

**Page 133**

1  Mr. Page requesting more funds for the project.
2  In addition to that, Mr. Page had to submit
3  documentation to the Department of Health
4  requesting them to approve more money.
5       I believe the okay to proceed was based
6  on the Department of Health's notification to
7  Mr. Page that the budget increase was accepted.
8            MS. FROHLICH: This will be 222.
9            (Plaintiff's Deposition Exhibit
              No. 222 offered and marked.)
10
11     Q.  (BY MS. FROHLICH) Mr. Casabonne, I'm
12 showing you what has been marked as Exhibit 222.
13 This is a letter from Pat Bonnell, executive vice
14 president, Kimble to you dated June 14th, 2005
15 regarding the Chemung County nursing facility dash
16 Tecogen units, correct?
17     A.  Yes.
18     Q.  As of June 14, 2005 Kimble was the
19 mechanical contractor for the Chemung project,
20 correct?
21     A.  I don't know if we had awarded them the
22 contract at that date but sometime around that
23 date; yes.
24     Q.  Kimble had bid on the project -- strike

**Page 134**

1  that.
2       Kimble's bid on the project had the
3  purchase of Tecogen cogeneration units included
4  within the spoke of the mechanical work, correct?
5      A.  Yes.
6      Q.  In this letter he was offering to take
7  the purchase of those four Tecogen units out of
8  Kimble's original proposal, correct?
9      A.  Yes.
10     Q.  Did you ask him to make that change?
11     A.  Yes.
12     Q.  Why did you do that?
13     A.  Because Atlantic Energy was interested
14 in providing the units directly for the project.
15     Q.  Why was Atlantic interested in doing
16 that?
17     A.  Because we were able to get the
18 equipment for a better price than Kimble
19 Mechanical.
20     Q.  On the date of this letter from Kimble,
21 which is June 14th, 2005, you had received a price
22 quote sent by Lee Vardakas for Aegen-built
23 cogeneration units for Chemung, correct?
24     A.  What was the date of the Aegen?

**Page 135**

1      Q.  June 14. I don't believe it's in front
2  of you.
3      A.  I can't confirm the date but if you have
4  the document that states that.
5      Q.  Let me show you Exhibit 31.
6  (Indicating.)
7      A.  (Witness examining document.)
8      Q.  Let me ask you a new question:
9  Exhibit 31 is a June 14th, 2005 price quotation
10 for four Aegen ThermoPower modules for the Chemung
11 County Nursing Home.
12          Was this the first price quote that you
13 received for Chemung County Nursing Home involving
14 Aegen modules?
15     A.  Yes.
16     Q.  Let me also show you Exhibit 32. I
17 think you've looked at these the first day of your
18 deposition.
19          This is a quotation prepared by Lee
20 Vardakas dated June 16th, 2005 which is two days
21 after Exhibit 31. Do you know why this quote was
22 sent to Atlantic? (Indicating.)
23     A.  (Witness examining document.) I'm going
24 to guess it was to correct something that was in

**Page 136**

1  the previous quotation to make some type of
2  modification but I can't see any pricing
3  information so that would be my guess. It is
4  probably a change of price.
5           Let me -- I see there's a difference in
6  the voltage for the four units. That's more
7  likely the case, correcting the voltage.
8           MS. FROHLICH: Let's mark this as
9  223.
10          (Plaintiff's Deposition Exhibit
              No. 223 offered and marked.)
11
12     Q.  (BY MS. FROHLICH) Mr. Casabonne, would
13 you please identify Exhibit 223? (Indicating.)
14     A.  It's a chain of e-mails between myself
15 and Clough Harbour related to the Chemung project.
16 It looks like they're all dated June 27th, '05.
17     Q.  If you would look at the bottom of the
18 first page, there's an e-mail from Thomas Ferreri
19 to you on June 27th, 2005 at 7:42 a.m.
20          The first sentence says "Attached is a
21 letter from NYSEG faxed to us on 6/24/05." It
22 then goes on to say, "The preliminary review is
23 complete but final review will not be started
24 until NYSEG receives their estimated cost of five

**173**

1 you seen Exhibit 233 before today? (Indicating.)
2    A.   (Witness examining document.)  Yes.
3    Q.   Would you please identify this document?
4    A.   It's a submission of the technical data
5 for the cogen installation at the Chemung County
6 Health Center from Clough Harbour and Associates
7 to NYSEG dated January 24th, 2005.
8    Q.   NYSEG is the utility, is that correct?
9    A.   Yes.
10   Q.   What was the purpose of this submission
11 package?
12   A.   I believe this is follow-up to the
13 initial preliminary package that was submitted.
14 This provides additional documentation on the
15 equipment being installed.  I believe there's
16 drawings -- site-specific drawings.
17        The intent is for the utility to review
18 and approve this information so that the Chemung
19 Health Center can put their cogeneration system
20 online.
21   Q.   This package was based upon the use of
22 Tecogen cogeneration units in the Chemung project,
23 is that right?
24   A.   Yes.

**174**

1        MS. FROHLICH:  234.
2            (Plaintiff's Deposition Exhibit
             No. 234 offered and marked.)
3
4    Q.   (BY MS. FROHLICH)  Would you please
5 identify Exhibit 234? (Indicating.)
6    A.   (Witness examining document.)  This is
7 Appendix C of the standard interconnect
8 application submitted by NYSEG to the Chemung
9 County Health Center.
10   Q.   This application was based upon the use
11 of Tecogen units in the Chemung County project,
12 correct?
13   A.   Yes.
14       MS. FROHLICH:  235.
15           (Plaintiff's Deposition Exhibit
            No. 235 offered and marked.)
16
17   Q.   (BY MS. FROHLICH)  Would you please
18 identify Exhibit 235? (Indicating.)
19   A.   (Witness examining document.)  This is a
20 fax from Bob Page at Chemung County to myself
21 dated June 27th, '05.  He's faxed to me a letter
22 from NYSEG.
23       The letter is requesting payment to
24 continue with the technical review of the project.

**175**

1    Q.   Do you recall seeing an e-mail earlier
2 in this deposition today referencing NYSEG giving
3 preliminary approval and requesting the payment of
4 the final review fee of five thousand dollars --
5    A.   (Interposing) Yes.
6    Q.   -- in order to go forward?
7    A.   Yes.
8        MS. FROHLICH:  This will be
9 Exhibit 236.
10           (Plaintiff's Deposition Exhibit
            No. 236 offered and marked.)
11
12   Q.   (BY MS. FROHLICH)  Can you identify
13 Exhibit 236 for us? (Indicating.)
14   A.   This is a document from Atlantic Energy
15 to the New York State Department of Health dated
16 September 20, 2004 regarding the Chemung County
17 Health Center project.
18       Atlantic Energy has provided the
19 Department of Health with information on the
20 project being proposed at the Chemung County
21 Health Center.
22   Q.   Was this in connection with the request
23 for the certificate of need from the Department?
24   A.   Yes.

**176**

1    Q.   This information was -- this package was
2 based upon use of Tecogen units in the Chemung
3 project as well, correct?
4    A.   Yes.
5        MS. FROHLICH:  This will be 237.
6            (Plaintiff's Deposition Exhibit
             No. 237 offered and marked.)
7
8    Q.   (BY MS. FROHLICH)  Mr. Casabonne,
9 Exhibit 237 is a signed proposal and addendum to
10 that proposal involving the Auburn East Middle
11 School cogeneration project, correct?
12 (Indicating.)
13   A.   Yes.
14   Q.   These documents were signed in October
15 of 2004, correct?
16   A.   Yes.
17   Q.   Page one of the proposal, which is the
18 third page of the exhibit, in item two states that
19 "the cogeneration system will consist of one
20 Tecogen model," correct?
21   A.   Yes.
22   Q.   Did Atlantic begin working on the design
23 of a cogen plant for Auburn after the execution of
24 these documents?

                                                                      177

1  A. Atlantic would have hired a design
2  engineer to take on the design. I don't know when
3  they were hired.
4  Q. Was that design engineer Energy Concepts
5  Engineering?
6  A. Yes.
7      MS. FROHLICH: This will be marked
8  as Exhibit 238.
9          (Plaintiff's Deposition Exhibit
           No. 238 offered and marked.)
10
11 Q. (BY MS. FROHLICH) Will you look at
12 Exhibit 238? (Indicating.)
13 A. (Witness examining document.)
14 Q. Can you please identify this document?
15 A. This is a drawing prepared by Energy
16 Concepts. It's dated January 25th, '05 and it's a
17 drawing related to the boiler room cogen plan at
18 the Auburn East Middle School.
19 Q. If you would look at the upper left
20 quadrant of the drawing, do you see the words in
21 parenthesis "by Tecogen"?
22 A. Yes.
23 Q. Do you have an understanding as to what
24 that meant?

                                                                      178

1  A. That meant that the cogeneration unit
2  would be provided by Tecogen.
3      MS. FROHLICH: 239.
4          (Plaintiff's Deposition Exhibit
           No. 239 offered and marked.)
5
6  Q. (BY MS. FROHLICH) Mr. Casabonne, can
7  you please identify Exhibit 239? (Indicating.)
8  A. (Witness examining document.) This is a
9  copy of the guaranteed savings agreement between
10 Atlantic Energy and Auburn Enlarged School
11 District.
12 Q. Directing your attention to page
13 seventeen, it appears that both parties signed
14 this contract, correct?
15 A. Yes.
16 Q. This was signed in January of 2005,
17 correct?
18 A. Yes.
19 Q. If you would turn to page three, it is
20 numbered three. In section one, "Scope of Work,"
21 this contract states "AES shall perform for
22 district those services described in this
23 agreement and detailed in Schedule B." Did I read
24 that correctly?

                                                                      179

1  A. Yes.
2  Q. If you will turn to page nineteen --
3  page numbered nineteen -- that page is entitled
4  "Schedule B Scope of Work," correct?
5  A. Yes.
6  Q. If you look at item number two, Scope of
7  Work in East Middle School Boiler Room." The
8  first item listed is "install one Tecogen CM-75
9  cogeneration unit," correct?
10 A. Yes.
11     MS. FROHLICH: Let's mark as
12 Exhibit 240.
13         (Plaintiff's Deposition Exhibit
           No. 240 offered and marked.)
14
15 Q. (BY MS. FROHLICH) Is Exhibit 240 part
16 of the specifications for the Auburn cogeneration
17 project? (Indicating.)
18 A. It appears to be; yes.
19 Q. Are these all of the specifications for
20 the Auburn project?
21 A. No.
22 Q. Do you know when -- strike that. When
23 were the specifications for the Auburn project
24 prepared -- approximately; I don't need an exact

                                                                      180

1  date?
2  A. They had to be prepared for the project
3  to be submitted to the State Education Department
4  and that typically happens after the energy audit
5  is complete and the agreement is signed so if the
6  agreement was signed in January, '05, sometime in
7  that time frame.
8      MS. FROHLICH: This will be
9  Exhibit 241.
10         (Plaintiff's Deposition Exhibit
           No. 241 offered and marked.)
11
12 Q. (BY MS. FROHLICH) Mr. Casabonne,
13 Exhibit 241 consists of a fax cover sheet dated
14 May 18th, 2005 from John Bailey at R. L. Kistler
15 to bidders regarding the Auburn East Middle School
16 Tecogen unit, correct?
17 A. Yes.
18 Q. And attached to the fax cover sheet is a
19 one-page bid dated May 17th, 2005 for one Tecogen
20 unit for the Auburn East Middle School, correct?
21 A. Yes.
22 Q. And attached as the third page of this
23 document is a drawing entitled "Tecogen integrated
24 unit field" -- it looks like reassembly or

185

1  Exhibit 246.
2              (Plaintiff's Deposition Exhibit
                No. 246 offered and marked.)
3
4       Q.   (BY MS. FROHLICH) Can you please
5  identify Exhibit 246? (Indicating.)
6       A.   (Witness examining document.) This is a
7  copy of a cogen screen model, as we call it in the
8  office, prepared by Atlantic Energy for the Auburn
9  East Middle School project.
10      Q.   What is the purpose of this document?
11      A.   It's to determine the savings that will
12  be generated by installing a cogeneration unit.
13      Q.   In the table entitled "Input," a Tecogen
14  unit is included in the equipment list, correct?
15      A.   Yes.
16      Q.   The date in the bottom right-hand corner
17  of Exhibit 246 is 6/9/2005, correct?
18      A.   Yes.
19      Q.   So as of June 9, 2005 was Atlantic still
20  planning on using Tecogen -- a Tecogen unit in the
21  Auburn project?
22            MR. CURCIO: Objection.
23            THE WITNESS: I don't know.
24      Q.   (BY MS. FROHLICH) Do you know, was this

186

1  document actually printed on 6/9/2005?
2       A.   I don't know.
3       Q.   Did you prepare Exhibit 246?
4       A.   No.
5       Q.   But it came from Atlantic's files, is
6  that correct?
7       A.   Yes.
8       Q.   On the first day of your deposition you
9  were shown Exhibit 161.
10           I'd like to direct your attention to
11  page four at the bottom of the page. Do you see
12  the July 26th, 2005 e-mail from you to Chris Cafer
13  at two o'clock?
14      A.   Yes.
15      Q.   In the first sentence of that e-mail you
16  indicate that "The design for the Auburn project
17  was based on a Tecogen unit," correct?
18      A.   Yes.
19      Q.   Did the Auburn project specifications
20  and drawings specify Tecogen units for the
21  project?
22      A.   I believe it was Tecogen or Kraft.
23      Q.   Well, the Auburn project specs and
24  drawings were not designed around an Aegen module,

187

1  were they?
2            MR. CURCIO: Objection.
3            THE WITNESS: To the best of my
4  knowledge, no.
5       Q.   (BY MS. FROHLICH) If Aegen modules had
6  not been brought to Atlantic's attention in 2005
7  would a Tecogen unit have been used in the Auburn
8  project?
9            MR. CURCIO: Objection.
10           THE WITNESS: Most likely.
11      Q.   (BY MS. FROHLICH) If you look at your
12  e-mail, you state that "the Aegen unit was not NYS
13  type-tested as a packaged unit," correct?
14      A.   Yes.
15      Q.   What was the source for your information
16  in that regard?
17      A.   I'm not certain.
18           MS. FROHLICH: 247.
19             (Plaintiff's Deposition Exhibit
                No. 247 offered and marked.)
20
21      Q.   (BY MS. FROHLICH) Showing you what's
22  been marked as Exhibit 247, can you identify this
23  document? (Indicating.)
24      A.   (Witness examining document.) This is a

188

1  letter from the Auburn Enlarged City School
2  District to NYSEG dated March 7, 2005 requesting
3  exemption from their service rate number eleven.
4       Q.   Have you seen this before today?
5       A.   Yes.
6            MR. CURCIO: Mine also has a Tecogen
7  letter underneath it. Was that your intent to
8  staple them together?
9            MS. FROHLICH: This is how it came.
10           THE WITNESS: Yes; this is one
11  package.
12      Q.   (BY MS. FROHLICH) Which gets to my next
13  question. The request in this letter was based
14  upon the use of a Tecogen cogeneration unit in the
15  Auburn project, correct?
16      A.   Yes.
17           MS. FROHLICH: 248.
18             (Plaintiff's Deposition Exhibit
                No. 248 offered and marked.)
19
20      Q.   (BY MS. FROHLICH) Would you please
21  identify this letter?
22      A.   It's a letter from NYSEG to the Auburn
23  Enlarged City School District dated
24  March 22nd, '05 approving their request to be

189

1  exempt from the standby service tariff.
2      Q.   This letter came from Atlantic's files.
3  Have you seen this letter before today?
4      A.   Yes.
5           MS. FROHLICH: 249.
6           (Plaintiff's Deposition Exhibit
            No. 249 offered and marked.)
7
8      Q.   (BY MS. FROHLICH) Would you please
9  identify Exhibit 249? (Indicating.)
10     A.   This is a letter from Energy Concepts to
11 the State Education Department dated May 4th, 2005
12 responding to questions related to the Auburn East
13 Middle School performance project.
14     Q.   Have you seen this document before
15 today?
16     A.   Yes.
17     Q.   Was this document prepared by Energy
18 Concepts?
19     A.   Yes.
20     Q.   Would you look at page three under
21 specifications.
22          The fifth bullet point states "The unit
23 specified is the Tecogen CM/60/CM75 integrated
24 unit," and then it refers to a drawing as well as

190

1  the Tecogen manual?
2      A.   Yes.
3      Q.   To your knowledge was the Tecogen unit
4  specified -- strike that.
5           Would you look at page two. Do you see
6  the last bullet point on the page about
7  IEEEP1547/DO7 and NYS type-testing?
8      A.   Yes.
9      Q.   Did you ever discuss that information
10 that's in that bullet point with Chris Cafer at
11 Energy Concepts?
12     A.   I don't recall.
13          MS. FROHLICH: I have no further
14 questions.
15          MR. CURCIO: Noting the hour I'm
16 going to say I have no questions. We are done.
17          (The deposition was concluded.)

191

1          SIGNATURE PAGE - ERRATA SHEET
2          To be signed by deponent and returned to
   counsel within thirty (30) days.
3
4          I, the undersigned, TIM CASABONNE, do
   hereby certify that I have read the foregoing
   transcript of my testimony given in the matter of
5  TECOGEN, INC. vs. AEGIS ENERGY SERVICES, INC.,
   AEGENCO, INC., and AEGIS GENERATION COMPANY, on
6  DECEMBER 4, 2007 and that, to the best of my
   knowledge, said transcript is true and accurate
7  (with the exception of the following corrections
   listed below:)
8
9  PAGE:  LINE:   CHANGE AND REASON
10 ____:  ____:   _____
11 ____:  ____:   _____
12 ____:  ____:   _____
13 ____:  ____:   _____
14 ____:  ____:   _____
15 ____:  ____:   _____
16 ____:  ____:   _____
17 ____:  ____:   _____
18 ____:  ____:   _____
19
   DEPONENT'S SIGNATURE: _____
20
   Signed under the pain and penalties of perjury
21 this____ of _____, 2006.
22 _____
   NOTARY PUBLIC
23
   My Commission expires: _____
24

192

1  COMMONWEALTH OF MASSACHUSETTS
      COUNTY OF HAMPDEN
2
      I, JOANNE COYLE, a Notary Public within and
3  for the Commonwealth of Massachusetts at large, do
   hereby certify that I took the deposition of TIM
4  CASABONNE, pursuant to Rule 30 of the
   Massachusetts Rules of Civil Procedure, at the
5  offices of Doherty, Wallace, Pillsbury and Murphy,
   P.C., One Monarch Place, Springfield,
6  Massachusetts, on DECEMBER 4, 2007.
7      I further certify that the above-named
   deponent was by me first duly sworn to testify to
8  the truth, the whole truth and nothing but the
   truth concerning his knowledge in the matter of
9  the case of TECOGEN, INC. vs. AEGIS ENERGY
   SERVICES, INC., AEGENCO, INC., and AEGIS
10 GENERATION COMPANY, now pending in the United
   States District Court, District of Massachusetts.
11
      I further certify that the within testimony
12 was taken by me stenographically and reduced to
   typewritten form under my direction by means of
13 COMPUTER ASSISTED TRANSCRIPTION; and, I further
   certify that said deposition is a true record of
14 the testimony given by said witness.
15     I further certify that I am neither counsel
   for, related to, nor employed by any of the
16 parties to the action in which this deposition was
   taken; and further, that I am not a relative or
17 employee of any attorney or counsel employed by
   the parties hereto, nor financially or otherwise
18 interested in the outcome of the action.
19     WITNESS my hand and seal this _____day of
   DECEMBER, 2007.
20
21     _____
       Joanne Coyle
22     Notary Public
       Certified Shorthand Reporter
23     License No. 106693

   My Commission Expires
24 May 12, 2011