# Tecogen Ex. 91

# Energy Performance Contract



And

AUBURN ENLARGED CITY SCHOOL DISTRICT

Section 1    SCOPE OF WORK ...................................................................................................... 3

Section 2    FACILITIES SUBJECT TO AGREEMENT ................................................................ 3

Section 3    PERFORMANCE OF WORK ..................................................................................... 3

Section 4    MONITORING AND REPORTING SERVICES ........................................................ 4

Section 5    EFFECTIVE DATE AND DURATION OF ENERGY SAVINGS GUARANTEE .......... 5

Section 6    ENERGY SAVINGS AND COMPENSATION TO ATLANTIC ENERGY SERVICES, INC. ........ 5

Section 7    PROCUREMENT OF EQUIPMENT AND SERVICES ............................................. 7

Section 8    SUBCONTRACTORS .................................................................................................. 7

Section 9    HAZAROUS MATERIALS ......................................................................................... 7

Section 10   STORAGE, EQUIPMENT LOCATION AND ACCESS ............................................ 7

Section 11   TITLE AND OWNERSHIP ......................................................................................... 8

Section 12   WARRANTIES ............................................................................................................ 8

Section 13   STANDARD OF PERFORMANCE ............................................................................ 8

Section 14   PERFORMANCE EVALUATION COMMITTEE ....................................................... 8

Section 15   DAMAGE OR DESTRUCTION OF EQUIPMENT ................................................... 9

Section 16   CASUALTY AND/OR CONDEMNATION OF FACILITIES .................................... 9

Section 17   FORCE MAJEURE ..................................................................................................... 9

Section 18   DISTRICT'S OPERATION AND MAINTENANCE OBLIGATIONS ....................... 9

Section 19   UPGRADING OR ALTERING THE EQUIPMENT ................................................ 10

Section 20   MODIFICATION OF BASE YEARS ......................................................................... 11

Section 21   MUTUAL REPRESENTATIONS AND WARRANTIES ........................................... 11

Section 22   EVENTS OF DEFAULT ........................................................................................... 12

Section 23   REMEDIES UPON DEFAULT OR DISPUTE .......................................................... 12

Section 24   INDEMNIFICATION ................................................................................................ 12

Section 25   CONSEQUENTIAL DAMAGES ............................................................................... 13

Section 26   ADDITIONAL REPRESENTATIONS AND WARRANTIES OF DISTRICT ........... 13

Section 27   COMPLIANCE WITH LAWS AND STANDARD PRACTICES ............................... 13

Section 28   SEVERABILITY ........................................................................................................ 13

Section 29   NOTICES AND CHANGES OF ADDRESS ............................................................. 14

Section 30   GOVERNING LAW ................................................................................................... 14

Section 31   COUNTERPARTS ..................................................................................................... 14

Section 32   ASSIGNMENT ........................................................................................................... 14

Section 33   WAIVER ..................................................................................................................... 14

Section 34    *AMENDMENT* ...................................................................................................................... *15*
Section 35    *COMPLETE AGREEMENT*.................................................................................................... *15*
Section 36    *FURTHER DOCUMENTS*...................................................................................................... *15*
Section 37    *INSURANCE* .......................................................................................................................... *15*
Section 38    *GRANTS/INCENTIVES/REIMBURSEMENTS*...................................................................... *16*
Section 39    *CHANGES TO THE AGREEMENT* ........................................................................................ *17*
Section 40    *CONTRACT EXECUTORY* .................................................................................................... *17*

*SCHEDULE "A" DESCRIPTION OF FACILITIES* ................................................................................ *18*

*SCHEDULE "B" SCOPE OF WORK*...................................................................................................... *19*

*SCHEDULE "C" ENERGY SAVINGS GUARANTEE*............................................................................. *21*

*SCHEDULE "D" ENERGY SAVINGS CALCULATIONS METHOD* ..................................................... *22*

*SCHEDULE "E" CERTIFICATE OF SUBSTANTIAL COMPLETION AND ACCEPTANCE* .................. *2*

*SCHEDULE "F" EXTENDED MAINTENANCE AND SERVICE*............................................................. *3*

*SCHEDULE "G"  PAYMENT SCHEDULE* ............................................................................................. *8*

*SCHEDULE "H" GENERAL CONDITIONS OF THE CONTRACT*....................................................
*SCHEDULE "I"   ADDENDUM – DESIGN AND CONSTRUCTION*.................................................*

This Agreement (hereinafter the "Agreement") for energy management services is made and entered into this _____ day of _____, 20__, by and between Atlantic Energy Services, Inc., located at 92 Congress Street, 2nd Floor, Saratoga Springs, New York 12866 (hereinafter "AES") and Auburn Enlarged City School District, a District with offices located at 78 Thornton Avenue, Auburn, NY 13021 (hereinafter "District").

**WITNESSETH:**

**WHEREAS,** District owns, operates, manages and controls certain hereinafter-designated buildings; and

**WHEREAS,** Article 9 of the New York State Energy Law authorizes the District to enter into an Energy Performance Contract, and

**WHEREAS,** District desires to reduce its energy costs with respect to energy utilization at the buildings; and

**WHEREAS,** AES provides services including design and installation of energy efficient equipment and the operation of such equipment and other services as are set forth herein; and

**WHEREAS,** AES may assist in locating and negotiating financing for the purposes of this Agreement; and

**WHEREAS,** AES may assist in obtaining state, federal or private grants, incentives and/or reimbursements for AES and/or for the District.

**WHEREAS,** AES responded to a request for proposal issued by the District.

**NOW, THEREFORE,** in consideration of the mutual obligations hereinafter set forth, the parties hereto agree as follows:

**Section 1      SCOPE OF WORK**

AES shall perform for District those services described in this agreement and detailed in Schedule "B".

**Section 2      FACILITIES SUBJECT TO AGREEMENT**

The buildings or structures, owned, maintained and/or operated by District, which are the subject of this Agreement, are set forth on Schedule "A".

**Section 3      PERFORMANCE OF WORK**

3.1      Upon execution of the Agreement and payment of the initial fee (see Schedule "G"), AES shall

3

commence, undertake and finalize the design, acquisition and installation of all machinery and equipment, as set forth in the scope of work described in Schedule "B".

3.2     Upon completion of the installation and the commencement of operations, AES shall advise District of substantial completion and District shall execute "Certificate of Substantial Completion and Acceptance", attached hereto and hereinafter referred to as Schedule "E".

3.3     From the date of execution of the Agreement until all the terms and conditions hereof have been fully completed, District agrees that it will cooperate and assist AES in obtaining all necessary permits and approvals for completion of the tasks set forth in Schedule "B", including, but not limited to, making applications for permits and approvals in District's name, and receiving permits and authorization in District's name.

District will use its best efforts to so assist AES and provide any further document or approval not inconsistent with this Agreement for the purpose of fulfilling this provision.

## Section 4    MONITORING AND REPORTING SERVICES

AES shall provide to District comprehensive energy savings monitoring and reporting services, as described below.

4.1     District will provide AES with complete energy usage information and energy-using equipment information, as requested by AES. This information will include, but not be limited to:

    a)     Copies of all utility and fuel bills for District Facilities; for the past two years and ongoing through out the term of the agreement.

    b)     Direct access, by telephone modem or other reasonable means installed at AES' expense, to any and all energy management systems or building automation systems installed in District Facilities, with permission granted to AES to download any and all information from these systems and to store such information for the duration of this Agreement;

    c)     Permission to install, at AES' expense, add-on devices to any and all utility and energy use meters, which devices will enable AES to directly observe District facility utility usage, with permission granted to AES to download any and all information from these systems and to store such information for the duration of this Agreement;

    d)     Permission, as an agent of the District, to obtain and utilize any and all energy usage information from any and all utilities or energy suppliers providing service to District Facilities, with permission granted to AES to download any and all information from these systems and to store such information for the duration of the Agreement. In connection herewith, District agrees to execute such permission or authorization forms, which utilities or

energy suppliers may from time to time require to release District information to AES;

e)   Copies of any and all energy-using equipment repair orders or invoices for repairs or maintenance work not subject to the direct control of AES; and

f)   Completion of an annual report, in a form mutually acceptable to AES and the District, which details any and all significant plus or minus two percent (±2%) changes in District facility operational variables as defined in Schedule "D".

g)   The District will have access to all information obtained by AES and that AES will not have access to the main computer network of the District.

Failure by the District to provide this information in timely fashion (no more than 45 days) will suspend the Energy Savings Guarantee described in Schedule "C" until the information is provided.

4.2   After receiving the above-listed information in timely fashion, AES shall provide to the District the following reports:

a)   An annual report, which compares District Facility's current energy use to base year energy use and estimated energy savings from the energy conservation projects subject to this Agreement.  AES will explain discrepancies between current energy use and estimated energy savings (if any), and any proposed adjustments to energy savings estimates due to changes in operational variables (as defined in Schedule "D") or extraordinary weather conditions (deviations from long term averages).

b)   An annual energy savings guarantee reconciliation report, which will calculate annual energy savings according to the Energy Savings Methodologies defined in Schedule "D".  AES will explain any variations between annual energy savings and estimated energy savings.

Both reports shall initially be submitted by AES to the District in draft (preliminary) form.  AES and the District agree to use their best efforts to resolve any discrepancies in the draft report as soon as possible and to arrive at mutually acceptable reports.  AES and the District will indicate their acceptance of the reports by signing said reports.

**Section 5     EFFECTIVE DATE AND DURATION OF ENERGY SAVINGS GUARANTEE**
The "Effective Date" and duration of the energy savings guarantee shall be as defined in Schedule "C" - "Energy Savings Guarantee".

This Guaranteed Savings Agreement is contingent upon State Education Department (SED) approval of this Energy Performance Project.

**Section 6     ENERGY SAVINGS AND COMPENSATION TO ATLANTIC ENERGY SERVICES,**

INC.

6.1     Base Compensation. The base compensation, (the "Base Compensation") for the performance of the Scope of Work attached as Schedule "B" shall be $851,691 plus applicable taxes and shall be paid to AES in accordance with Schedule "G" - "Payment Schedule".

AES agrees to assist the District in procuring financing for this project after this Agreement is executed.

*Add: , upon NYSED Approval.*

6.2     Within 60 days of the date of this Agreement, AES will obtain bids from the subcontractors selected to work on this project and communicate the results to the District. If these bids are substantially higher that what AES has projected, then the parties may agree to increase the Base Compensation or, alternatively, to reduce the scope of the project. If within 14 days of the Districts receipt of the notification from AES the parties cannot agree to increase the compensation or to reduce the scope, then either party is free to terminate the agreement with no liability to either party.

6.3     Energy Savings Guarantee. Upon execution of the Schedule "E"- "Certificate of Substantial Completion and Acceptance", Schedule "C" - "Energy Savings Guarantee" shall commence.

   a) At the end of one (1) year from execution of the Certificate of Substantial Completion and Acceptance, AES shall prepare and send to District a report setting forth the District's actual energy and dollar savings amount.

6.4     Calculation of Savings. Monitoring and accounting for the purpose of the energy cost savings documentation will be carried out according to the following procedure:

   a)     District agrees to send AES copies of all monthly energy bills for the Facilities within forty-five (45) days after receipt thereof by District, and copies of all other data, documents or other information required by AES for the determination of total savings.

   b)     AES will calculate the energy consumption savings achieved at the Facilities by comparing energy consumption for the current period with consumption during the corresponding Base Line period in the manner set forth in Schedule "D".

   c)     If savings are lower than projected savings in the first year, AES shall send a written report to District and the party responsible for equipment maintenance alerting them to the failure to meet savings goals and suggesting a course of corrective action. District shall cooperate with AES in finding and correcting the failure at no additional cost to District.

6.5     Reconciliation of Accounts. Within thirty (30) days after receipt of copies of the last utility monthly bills of each guaranteed year, AES shall submit to District a complete statement of account reflecting total savings, program costs, and any excess savings or savings shortfall. If in any year(s)

the annual energy savings do not meet the Guaranteed Savings amount, then AES shall within thirty (30) days thereof, pay to District the amount of the shortfall.

## Section 7    PROCUREMENT OF EQUIPMENT AND SERVICES

Materials, equipment, supplies and services procured by AES as part of the services will be procured by AES as agent for the District. AES will use reasonable efforts to obtain warranties from these suppliers and contractors and the vendor's best pricing for the procured items. AES will be given authority to execute contracts, subcontracts, or purchase orders as agent for the District. District shall immediately notify AES upon discovery or notification of any emergency, which may affect the operation of the equipment, including interruption and/or fluctuations in the energy supply to the Facilities, material malfunction of any of the equipment, weather-related emergency or dangerous condition which may affect the operation of the equipment or cause the loss or destruction thereof.

## Section 8    SUBCONTRACTORS

Prior to commencement of the work, AES shall provide District with a list of all subcontractors AES intends to use on the project for approval by District, which approval shall not be unreasonably withheld.

## Section 9    HAZARDOUS MATERIALS

AES has performed an inspection of the facility and is not aware of the existence of hazardous material at the site. District agrees that prior to the commencement of the work required in Schedule "B", it will remove at its own cost and expense any known hazardous materials, including asbestos and lead containing materials, and advise AES in writing of the commencement and the date of conclusion of such removal. In the event that any hazardous material, including asbestos and lead, is discovered by AES during the term of this Agreement, AES shall notify District of such discovery, obtain at least three (3) bids and award the contract for removal of such hazardous materials to the best and lowest bidder. In the event of such occurrence and removal during the term of this Agreement, AES is authorized to add the cost of such removal, including, but not limited to, AES construction management costs, overhead, profit, and administrative costs, to the cost of this Agreement unless District chooses to make such payments from other
funds available to it.

## Section 10    STORAGE, EQUIPMENT LOCATION AND ACCESS

District and AES, upon final execution of this Agreement, shall select mutually satisfactory space, at no cost to AES, in the Facilities for the location and operation of the equipment as set forth in Schedule "B". At all times during the term of this Agreement, District shall provide access and parking to the Facilities for AES and its contractors or subcontractors during regular business hours, or such other hours as may be agreed upon by AES and District, in order to fulfill AES obligations to install and complete the requirements of Schedule "B" hereof and for the continued operation, maintenance and repair of the equipment subsequent to

7

the completion of installation.

AES, its contractors and subcontractors shall coordinate their activities with District's Director of Facilities and that work which would substantially disrupt District's business shall be performed during non-operating hours of District's business. Furthermore, AES, its contractors and subcontractors shall perform third shift installation work to the extent practical in order to ensure minimum disruption of District's business. In addition, AES, its contractors or subcontractors shall have reasonable access to the facilities of the District in the event of an emergency

## Section 11    TITLE AND OWNERSHIP

AES shall, upon receipt of final payment as provided for in this Agreement, deliver title to all equipment and machinery by bill of sale or other appropriate document to District.

## Section 12    WARRANTIES

### 12.1  Vendors Warranties

AES shall assert on District's behalf, any warranty claims related to purchased goods and services. If such claims cannot be resolved by AES through negotiations, District will be responsible for any legal action, and AES will provide technical and administrative support to District as necessary. AES will assign all manufacturer warranties to all equipment and machinery installed pursuant to the terms of this Agreement to District.

### 12.2  AES Warranties

For a period of one year from the date of original installation of equipment, AES warranties that all equipment furnished under this Agreement shall be of good quality and new unless otherwise required or permitted herein, that the equipment shall be free from defects and that said equipment shall conform with all requirements of the Agreement. All labor is warranted to be free from defects and workmanship for one year from the date the work is performed.

## Section 13    STANDARD OF PERFORMANCE

AES shall perform the services described in this Agreement with reasonable care, in compliance with applicable law, and in accordance with industry practices and standards generally applicable to energy management services. If during the performance of these services or within one (1) year following their completion, any of AES services fail to meet these standards, the District shall promptly notify AES in writing, and AES shall at its sole cost and expense re-perform such services or furnish the District other remedial services to support corrective action.

## Section 14    PERFORMANCE EVALUATION COMMITTEE

Within thirty (30) days after the end of the first year following date of Substantial Completion, a committee consisting of a District representative and an AES representative shall meet and make a final determination

of the energy savings for the year, as described in Schedule "D" - "Energy Savings Calculation Method" and Schedule "C" - "Energy Savings Guarantee.

**Section 15    DAMAGE OR DESTRUCTION OF EQUIPMENT**

After final payment District assumes and shall bear the risk of damage, loss, theft, or destruction, partial or complete, of the equipment, however arising, except to the extent that the same may be caused by negligence or willful acts or omission of AES. If any significant item of equipment is irreparably damaged, destroyed, or stolen by the negligence or willful misconduct of District, its representative or employee, and if District fails to repair or replace said item within a reasonable period of time, AES may terminate this Agreement by delivery of a written notice to District whereupon both parties shall have no further liability to each other. Any such termination shall not be considered an event of default on the part of either party.

**Section 16    CASUALTY AND/OR CONDEMNATION OF FACILITIES**

This provision applies in the event that the Facilities or any of them are condemned or are damaged by any flood, fire, or other casualty not arising as a result of any act of AES, or any damage resulting from an act of God, rendering more then fifty percent (50%) of any structure listed in the Facilities Description Schedule "A", incapable of being occupied. In the event such destroyed or damaged Facility is not reconstructed or restored within one hundred eighty (180) days from the date of such damage or destruction, AES and District shall amend this Agreement as it relates to any Facility or Facilities by delivery of a written notice and prompt negotiation. Either party shall not consider such amendment an event of default. Payments for all completed work and delivered equipment shall be due to AES within a reasonable period of time subsequent to delivery of such notice of an amendment.

**Section 17    FORCE MAJEURE**

AES shall not be liable for delays in delivery or other performance due to causes, whether or not foreseeable, beyond its reasonable control or that of subcontractors or suppliers, if any, including, without limitation, events referred to as acts of God, acts or omission of any government or agency thereof, change of law, strikes or labor disputes, unavoidable transportation delays, civil disturbance, war, terrorism or threat thereof (whether actual or perceived), or fires, floods, earthquakes, explosions or other emergency. As a result thereof, this Agreement shall (1) remain in effect and in the event of such delay due to the provisions of this section, the date of performance will be extended for a period of time equal to the time lost by reason of such delay, plus a reasonable time to resume performance, or (2) if as a result of such event, the Agreement cannot reasonably be performed, it shall be terminated on ten (10) days' written notice in which event AES shall be entitled to payment for those portions of the Agreement completed and performed to the date of the event and for equipment and materials acquired but not yet incorporated into the project less any allowances for charges for restocking or return to the supplier or manufacturer.

**Section 18    DISTRICT'S OPERATION AND MAINTENANCE OBLIGATIONS**

9

AES enters into this Agreement for the purpose of providing energy saving to District and for the purpose of being compensated for its efforts. Projected energy savings at the Facilities affects a portion of the compensation to AES. Savings are affected by procedures, methods of operation and maintenance. District agrees that it shall, as part of its obligations under this Agreement, adopt procedures and methods of operation and maintenance protocols set forth in the equipment manufacturers' operation recommendations. District agrees that it shall, as part of its obligations under this Agreement, utilize the installed equipment in a manner consistent with the Energy Savings Calculations as found in Schedule "D". The District understands that the Energy Savings Calculations are dependant upon a minimum hourly usage of the co-generation units for the on-site production of electricity. Failure to utilize the co-generation units as per the minimum amounts required will result in increased energy costs and may result in a reduction of the Energy Savings Guarantee. AES, at its cost, shall provide District personnel or agents with training in procedures, methods of operation and maintenance protocols for all equipment and energy conservation measures provided under this agreement.

AES shall have the right to monitor District's compliance with the procedures, methods of operation and maintenance protocols and, in doing so, shall have the right to inspect the Facilities with prior notice to determine if District is complying with the obligations of this section of the Agreement. District shall be entitled to participate in any such inspection. If during such inspection, AES determines that District has failed to meet its obligations as set forth in this section, then AES shall not be responsible in any way for any energy savings lost as a result of District's actions and appropriate adjustment shall be made to such energy savings..

## Section 19    UPGRADING OR ALTERING THE EQUIPMENT

19.1    Actions by AES. AES shall at all times have the right to replace, delete or substantially alter any item of lighting or cogeneration equipment, add additional equipment of equal or comparable quality, revise any procedures described by Schedule "D", or take other energy savings actions, at no additional cost to District, subject to District's prior written approval, which approval shall not be unreasonably withheld. All replacements, deletions, substantial alterations, or additions of equipment or revisions to procedures shall be documented and appended to this Agreement.

19.2    Actions by District. District agrees to maintain the Facilities in good repair and to protect and preserve the building envelope and the operating conditions of all mechanical systems, equipment and other energy consuming systems located at the Facilities. District may not move, remove, alter, or change in any way the cogeneration equipment provided by AES or any part thereof without first consulting AES, except in an emergency.

**Section 20    MODIFICATION OF BASE YEARS**

As set forth in Schedule "D" hereof, energy savings are developed based on the current use and condition of the Facilities. A material change in the use or condition of the Facilities or any of them occurring after the date of the development of the baseline energy usage set forth in Schedule "D" shall require District to give ten (10) days written notice prior to any such actual or intended material change in the use or condition of the Facilities or any of them. Material change shall mean any change that could increase or decrease the energy usage at the Facilities or any of them, as a result of (a) the way in which a Facility is used, (b) the hours of operation of any of the Facilities, or the equipment contained in any of the Facilities, including, but not limited to, equipment machinery and energy systems contained in the Facilities, (c) the structure of the Facilities, (d) the occupancy rate of the Facility, (e) type or amount of equipment used in any of the Facilities, and (f) any other condition affecting energy usage within any of the Facilities. Material change on projects involving co-generation shall also mean any deviations from the minimum on site generation requirements as noted in Schedule "D". Upon receipt of such notice and within forty-five (45) days thereafter, AES shall determine if the said material change affects the energy savings, and shall calculate the effect of such change and give District notification of AES baseline modification resulting from such material change. Baseline change shall become effective within thirty (30) days of delivery by AES of its notice to District, unless District objects within such 30 day period, in which case the dispute shall be resolved in accordance with Section 23.

**Section 21    MUTUAL REPRESENTATIONS AND WARRANTIES**

The parties hereto warrant and represent to each other as follows:

a)    It is a duly organized and valid existing entity with full power and authority to consummate the transactions contemplated by this Agreement.

b)    It has received the requisite authorization from its governing body empowering it to execute, deliver and perform this Agreement, the signatories hereto are duly authorized and upon execution of this Agreement it constitutes a legal, valid and binding obligation subject to State Education Department approval.

c)    The execution of these documents will not violate any existing law, rule or regulation of which either party is aware nor will the execution of this Agreement violate any existing contract between either party and any third party, nor has either party received any notice from any individual, corporation or other entity, including, but not limited to, the State of New York or any of its departments that this Agreement potentially violates any rule, regulation, ordinance, decree in a manner that would adversely affect the ability of either party hereunder to perform its obligations hereunder.

11

**Section 22    EVENTS OF DEFAULT**

22.1.   Events of Default by District. Each of the following events or conditions shall constitute an "Event of Default" by District:

a)      Any failure by District to pay AES its compensation required by Section 6 for a period of more than forty-five (45) days after the date of the invoice thereof;

b)      Any representation furnished by District in this Agreement which was false or misleading in any material respect when made; or

c)      Any other material failure by District to perform or comply with the terms and conditions of this Agreement, including breach of any covenant contained herein, provided that such failure continues for thirty (30) days after written notice to District demanding that such failure to perform be cured or, if cure cannot be affected in such thirty (30) days, without commencement of a cure and subsequent completion thereof as quickly as is reasonably possible.

22.2    Events of Default by AES. Each of the following events or conditions shall constitute an "Event of Default" by AES:

a)      Any representation or warranty furnished by AES in this Agreement which was false or misleading in material respect when made; and

b)      Any other material failure of AES to perform or comply with the terms and conditions of this Agreement, including breach of any covenant contained herein, provided that such failure continues for thirty (30) days, after written notice to AES demanding that such failure to perform be cured or, if cure cannot be affected in such thirty (30) days, without commencement of a cure and subsequent completion thereof as quickly as is reasonably possible.

**Section 23    REMEDIES UPON DEFAULT OR DISPUTE**

Any controversy or claim arising out of or relating to this Agreement shall first be submitted to the Performance Evaluation Committee. If after thirty (30) days of submission by either party the Committee is unable to resolve the dispute, then the parties are free to pursue any available legal remedies.

**Section 24    INDEMNIFICATION**

AES and District agree to indemnify, defend and hold each other harmless from any and all claims, actions, costs, expenses, damages and liabilities, including reasonable attorney's fees, arising out of, connected with or resulting from the negligence or misconduct of their respective employees or other agents in connection

12

with the scope of this Agreement.

## Section 25    CONSEQUENTIAL DAMAGES

AES shall be liable to the District for any consequential or incidental damages due to the negligence or willful acts or omissions which occur during or as a result of the installation of energy saving equipment and devices by AES, its employees, contractors or subcontractors. Damages shall include, but shall not be limited to, damages resulting from District's loss of equipment, loss of production, loss of profits or revenues. AES liability for any such said damages shall in no event exceed $5,000,000.

## Section 26    ADDITIONAL REPRESENTATIONS AND WARRANTIES OF DISTRICT

District hereby warrants and represents to AES that:

    a)      District has provided AES with all records and information heretofore requested by AES and all the information in such records and any records subsequently to be provided by District to AES will be in all respects, to the best of the District's knowledge, true and accurate in all material aspects except as may be conditioned by District in writing; and

    b)      District presently intends to continue to use the Facilities in a manner similar to the present use, except as to those changes which District has already disclosed to AES; and

    c)      District will provide AES with information with respect to any existing warranties for any equipment which exists at the Facilities within ten (10) days of the execution of this Agreement.

## Section 27    COMPLIANCE WITH LAWS AND STANDARD PRACTICES

AES shall perform its obligations hereunder in compliance with any and all applicable federal, state and local laws, rules and regulations, including applicable licensing requirements, in accordance with sound engineering and safety practices, in a workmanlike manner and in compliance with any and all reasonable rules of District relative to the Facilities. District shall be responsible for obtaining all governmental permits, consents, and authorizations as may be required to perform its obligations hereunder.

## Section 28    SEVERABILITY

Any provision of this Agreement which is determined by a court to be prohibited or unenforceable, shall be ineffective as to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement provided such severance will not unjustly enrich either party or frustrate the purposes of this Agreement.

## Section 29    NOTICES AND CHANGES OF ADDRESS

All notices to be given by either party to the other shall be in writing and will be effective upon receipt at the addresses below when sent to the addressee by facsimile, certified mail, return receipt requested, overnight courier or hand delivery:

> **To:**
> Atlantic Energy Services, Inc.
> 92 Congress Street
> 2nd Floor
> Saratoga Springs, New York 12866
> Attention of: Timothy J. Brock, President
>
> **If to District:**
> Auburn Enlarged City School District
> 78 Thornton Avenue
> Auburn, NY 13021
> Attn: Mr. J.D. Pabis, Assistant Superintendent

Or such other address as either party may herein designate by notice to the other.

## Section 30    GOVERNING LAW

This Agreement shall be governed under the laws of the State of New York without regard to the principles of conflicts of laws.

## Section 31    COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same document.

## Section 32    ASSIGNMENT

32.1    This Agreement may not be assigned by AES without the prior written consent of District, which approval shall not be unreasonably withheld, provided that the assignee has requisite experience, capability and financial stability reasonably equivalent to or greater than that of AES as determined by the District.

32.2    AES may, without the consent of District, assign any funds due or to become due under this Agreement.

## Section 33    WAIVER

14

No failure on the part of either AES or District to exercise and no delay in exercising any right under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right.

## Section 34    AMENDMENT

No amendment or waiver of any provision of this Agreement or any consent to any departure by either party there from, shall in any event be effective unless the same shall be in writing and signed by the parties to this Agreement and then such amendment or waiver shall be effective only to this specific instance and for the specific purpose for which given.

## Section 35    COMPLETE AGREEMENT

This Agreement, including Schedules "A" through "I" hereof, constitutes the entire agreement between District and AES, and it is agreed that such Schedules are integrated into and form a part of the entire Agreement.

## Section 36    FURTHER DOCUMENTS

The parties will execute and procure any further documents, instruments or acts reasonably necessary to carry out the intention and facilitate the performance of the terms of this Agreement, inclusive of project and savings information for the application, verification and payment of Grants, Incentives and Reimbursements.

## Section 37    INSURANCE

37.1    Comprehensive General Liability.   AES shall, during the term of this Agreement, maintain Comprehensive General Liability in the amount of Five Million and 00/100 Dollars ($5,000,000.00) per occurrence, Five Million and 00/100 Dollars ($5,000,000.00) aggregate of Bodily Injury Liability and Five Million and 00/100 Dollars ($5,000,000.00) for Property Damage Liability.

37.2    Worker's Compensation Insurance.   AES shall procure and maintain, during the term of this Agreement, Worker's Compensation Insurance in accordance with the New York State Worker's Compensation Act for all employees of AES and shall require all subcontractors to carry such insurance during the term of their participation in this Agreement.

37.3    AES shall add District as an additional insured on any policy of insurance AES carries with respect to this Agreement, at no cost to the District.

37.4    AES shall deliver to District proper certificates evidencing the acquisition and continuation of the insurance required hereby and shall require all subcontractors to provide such certificates evidencing coverage required of them.

37.5     Liability coverage may be by way of a single liability policy or a combination of an underlying liability policy and an umbrella policy reaching the limits set forth herein.

**Section 38     GRANTS/INCENTIVES/REIMBURSEMENTS**

38.1     Contractor Based Funding

The District understands that Contractor based Grants, Incentives and Reimbursements that are available to AES such as the NYSERDA Commercial / Industrial Performance Program provide performance-based incentives to contractors for the implementation of cost-effective electrical efficiency improvements or demand reduction. These funds require that AES enter into a project specific contract with NYSERDA and that the District complete applications and or forms to verify that the work was completed. The District agrees to allow AES to enter into contracts with NYSERDA or other entities to obtain grants for AES. District further agrees to allow and assist AES to provide project and energy savings information, as may be required, so as to receive the program incentive payments.

38.2     District Based Funding

AES will in turn assist the District to apply for District based Grants, Incentives and Reimbursements such as NYSERDA's Advanced Monitoring Program, Smart Loan Fund and or the Technical Assistance Fund. These funds are paid to the District by NYSERDA and may be used by the District to fund part of the project, financing and or energy studies. AES may charge a percentage fee or reimbursement fee for the technical services and engineering required to obtain such Grants, Incentive and Reimbursements for the District. AES will notify the District prior to applying for such Grants, Incentives and or Reimbursements inclusive of any engineering or technical service fees if applicable.

38.3     Mutual Assistance and Cooperation

The parties agree to assist each other in the application and verification of the Grants, Incentives and or Reimbursements that may be available to either party from private, state or federal resources. The parties will execute and procure any further documents, instruments or acts reasonably necessary to submit application and payment of such grants inclusive of project completion verification and associated energy and demand savings.

From the date of execution of the Agreement, until all the terms and conditions hereof have been fully completed, inclusive of the guarantee term, the parties agree to cooperate and assist each other in completing all necessary contracts, permits and affidavits for approvals and payment of such assistance programs.

While both parties shall assist each other in the application, verification and submittal of requests for

16

payments, neither party will be held responsible in the event that a particular Grant, Incentive or Reimbursement is not obtained in so long as the parties fully cooperated and assisted each other in the application, verification and payment process.

**Section 39    CHANGES TO THE AGREEMENT**

*upon NYSEG approval,*

*Add:*

The parties agree that changes to the Agreement can be made to accommodate increases or changes in the scope of work in the facility or for the purpose of adding additional facilities. Such changes may involve the scope of work and may affect the energy savings, compensation to AES, monitoring and verification fee and the Grants, Incentives and or Reimbursements (if applicable).

The parties agree that AES will perform changes on a time and material basis subject to a 10% overhead and 10% profit markup by AES or by a mutually agreed upon lump sum amount.

**Section 40    CONTRACT EXECUTORY**

This contract shall be deemed executory only to the extent of the monies appropriated and available for the purpose of the contract, and no liability on account therefore shall be incurred beyond the amount of such monies. It is understood that neither this contract nor any representation by any public employee or officer creates any legal or moral obligation to request, appropriate or make available monies for the purpose of the contract.

*Contract shall not be deemed executory until approval of the State Education Department is obtained.*

IN WITNESS WHEREOF, and intending to be legally bound, the parties hereto subscribe their names to this instrument on the date first above written.

AUBURN ENLARGED CITY SCHOOL DISTRICT    ATLANTIC ENERGY SERVICES, INC.

By: _____    By: _____

Title: **President, Board of Education**    Title: *President*

Date: **January 11, 2005**    Date: *1/30/05*

17

## SCHEDULE "A" DESCRIPTION OF FACILITIES

Auburn Enlarged City School District – Phase 1
East Middle School
Franklin Street
Auburn, NY  13021

The Auburn East Middle School is part of the Auburn Enlarged City School District.  The school was originally constructed in 1932 and served as a high school after being built.  As the district expanded and newer buildings were constructed, the facility became a middle school.  Presently, the school has approximately 650 students in grades 6, 7, and 8, and 50 staff personnel.

The original building has been renovated several times and additional construction resulted in a total conditioned floor space of 123,080 square feet.  The last major addition was completed in 1977.

The facility is located on a 55 acre plot off of Franklin Street, on the east side of the City of Auburn, adjacent to the Cayuga Community College (CCC) campus.  The school grounds include a stadium and athletic field with illumination capability.  Another notable feature on the property is a geothermal test well and equipment building housing equipment related to the recovery of geothermal energy from the well.

## SCHEDULE "B" SCOPE OF WORK

1.)  Scope of work at the geothermal well.

     i.  Clear fenced in area of all free standing items, including athletic equipment.
     ii.  Dismantle natural gas production equipment and relocate to the side of the existing building and reassemble.
     iii.  Dismantle water production equipment from area of well head and store in building.
     iv.  Excavate a small pit near well head and line with plastic to contain brine solution that is brought up as part of following steps.
     v.  Pull the deep well pump, tubing and wire from the well, and stack and store in building.
     vi.  Perform wire-line logging of the well bore to collect data that may be used for future studies.
     vii.  Check well head for damage, correct if necessary and reassemble well head.
     viii.  Upgrade/refurbish gas production equipment and install digital control points for performance monitoring.
     ix.  Restore field surrounding the well area to acceptable condition.
     x.  Provide any necessary training to District staff regarding gas well equipment.

2.)  Scope of work in East Middle School boiler room.

     i.  Install one (1) Tecogen CM-75 cogeneration unit.
     ii.  Install one (1) natural gas fired steam boiler rated at 20 boiler horsepower.
     iii.  Modify gas piping to allow for use of well gas or utility supplied gas for newly installed equipment.
     iv.  Installation of required electrical gear for newly installed equipment.
     v.  Installation of required mechanical specialties for newly installed equipment.
     vi.  Install of digital control points to integrate newly installed equipment with existing building energy management system.
     vii.  Provide necessary training for District's staff for new cogeneration unit and new boiler.

3.)  Weatherization

     i.  32 single commercial doors to receive weather stripping
     ii.  3 sets of double commercial doors to receive weather striping
     iii.  1 overhead door (10 feet x 8 feet) to be weather stripped
     iv.  5 crawlspace access hatches to receive weather stripping
     v.  326 windows to receive window to frame caulking (2179 linear feet)
     vi.  10 roof top ventilations to be opened, perimeters sealed (80 linear feet), dampers lubricated
     vii.  1 roof access hatch to receive weather stripping
     viii.  6 rooftop smoke hatch to receive weather stripping
     ix.  2.4 square feet of penetrations into attic space to be sealed
     x.  765 linear feet of roof to wall joint to be sealed – 1970s addition & gymnasium area

    xi.   179 pipe penetrations to be sealed (71 small, 76 medium, 26 large, 6 huge)
   xii.   10 feet of soffit barrier to be installed over one exterior door
  xiii.   Provide necessary training for District staff regarding installed equipment.

## SCHEDULE "C" ENERGY SAVINGS GUARANTEE

AES hereby guarantees to Auburn Enlarged City School District, with offices located at 78 Thornton Avenue, Auburn, NY 13021, that the energy conservation projects described in Schedule "B" will achieve annual energy unit savings as described in Schedule "D". The dollar value of those savings calculated on the base year unit value is $47,392.00

This guarantee will be adjusted if any one of the following conditions occurs:

1. Any alteration in the projects not authorized in writing by AES.
2. District failure to supply AES with the energy use information and information access described in this Agreement.
3. District failure to inform AES in writing or any significant plus or minus two percent (±2%) change in District Facility operational variables as defined in Schedule "D".
4. Any act of any legislative or regulatory body, which invalidates or significantly affects the calculation of any of the factors in the Energy Savings Equation defined in Schedule "D".
5. District failure to properly maintain equipment and maintenance agreement obligations.
6. District failure to operate the co-generate units as required to generate the minimum amount of on-site peak and off peak electricity.

This guarantee will become effective upon District acceptance of the completed projects, as evidenced by District execution of the Completion Certificate set forth in Schedule "E" ("Effective Date"). Once effective, this guarantee shall remain in force until the following occurs: The Customer realizes a total energy savings for all combined periods of at least $851,691 as calculated using the methods defined in Schedule "D".

In the event that the energy savings in any year following issuance, as calculated using the method defined in Schedule "D" is less than the guaranteed annual energy savings of $47,392.00, AES agrees to pay to District the difference between the guaranteed annual energy savings and the sum of the actual energy savings as calculated using the method defined in Schedule "D". AES will make this energy savings guarantee payment in each such year within ninety (90) business days of calculation.

21

## SCHEDULE "D" ENERGY SAVINGS CALCULATIONS METHOD

### 1. Performance Measurement and Verification Methodologies

Performance Verification services are provided utilizing the following industry standards; developed through the office of Energy Efficiency and Renewable Energy US Department of Energy:

- International Performance Measurement and Verification Protocol (IPMVP)
- M & V Guidelines:  Measurement and Verification for Federal Energy Projects

For this project, Atlantic Energy Services, Inc. shall stipulate energy savings as a percentage of calculated savings according to the procedures outlined in the Measurement and Verification Plan.  Measurement and Verification methods for energy/utility savings are categorized by IPMVP Option.  Methods are rank ordered from least to most complex and cost in the following table:

| Category/Method | Description |
|---|---|
| *IPMVP Option A:  Partially Measured Isolation* | |
| Method EUA-1 | No metering of equipment |
| Method EUA-2 | Spot metering |
| *IPMVP Option B:  Retrofit Isolation* | |
| Method EUB-1 | Continuous metering of operating hours |
| Method EUB-2 | Continuous metering of usage |
| Method EUB-3 | Continuous metering of efficiency & reliability |
| *IPMVP Option C:  Whole Facility* | |
| Method EUC-1 | Billing Analysis comparison approach |
| Method EUC-2 | Multivariate regression billing analysis |
| *IPMVP Option D:  Calibrated Simulation* | |
| Method EUD-1 | Computer Simulation Analysis |

The methods used for this guarantee are Method EUA-1 and EUB-1.  Details for each application are provided below.

*Adjud*

## 1.1 Energy Conservation Measure Table

226,454

| East Middle School | Annual Savings | | | | Verification Method |
|---|---|---|---|---|---|
| | kW | kWh | Natural Gas ccf | Energy $ | |
| ECM-1 Combined Heat & Power | 369,612 | 233,836 | -17,819 | 47,643 *48,792* | EUB-1 |
| ECM-2 Weatherization | 0 | 0 | 4,458 | 3,129 | EUA-1 |
| First Year Maintenance Costs | N/A | N/A | N/A | -3,380 *-4,529* | N/A |
| First Year Maintenance Savings | N/A | N/A | N/A | 2,000* | N/A |
| Project Totals | 369,612 | 214,446 | -13,361 | 49,392 | |

* Maintenance savings shall be stipulated.     226,454     47,392

## 2 Applications of Methodologies for this Project

### 2.1 ECM-1 Combined Heat and Power

The savings for ECM-1 "Combined Heat and Power" shall be verified through the continuous metering of operating hours for the cogeneration units installed and operating from fuel supplied by the on-site gas well. Savings guarantee calculations shall be valid provided the following operational conditions are met:

- Installed equipment is fueled by natural gas from the on-site gas well.
- Installed equipment is operated in accordance with the sequence of operations detailed in the Energy Audit, Appendix A.
- Installed cogeneration unit is operated for a period of time each month equivalent to or greater than the hours per month shown in the table below:

| Cogeneration Unit Minimum Run Hours | |
|---|---|
| Month | Run-Hours |
| January | 330 |
| February | 300 |
| March | 345 |
| April | 300 |
| May | 299 |
| June | 286 |
| July | 0 |
| August | 230 |
| September | 315 |
| October | 330 |
| November | 330 |
| December | 315 |
| Total | 3,380 |

## 2.2 ECM-2 Weatherization

The savings for ECM-2 "Weatherization" shall be verified through visual inspection of the completed work to assure that the installation is consistent with the scope of work outlined in Schedule B. There is no associated metering of equipment. Savings shall be stipulated. There shall be no adjustments for weather.

a) Savings: Predicted Savings for Weatherization

| Month | therms | $ therms |
|---|---|---|
| January | 806 | 566 |
| February | 746 | 523 |
| March | 632 | 444 |
| April | 424 | 297 |
| May | 203 | 143 |
| June | 0 | 0 |
| July | 0 | 0 |
| August | 0 | 0 |
| September | 119 | 84 |
| October | 310 | 218 |
| November | 470 | 330 |
| December | 748 | 525 |
| TOTAL | 4458 | 3130 |

3

**3.0 Baseline Utility Rates and Facility Usage**

**3.1 Fixed Utility Unit Rates**

The guarantee rates used in calculating annual guaranteed savings will be:

| Auburn East Middle School | Demand $/kW | Usage $/kWh | Fuels $/ccf | Utility | |
|---|---|---|---|---|---|
| | | | | Electric | Fuel |
| Supply – Consortium | $ 0 | $ 0.05869 | $ 0.73590 | | |
| Local Distribution | $ 9.31 | $ 0.02989 | $ 0.16500 | NYSEG | NYSEG |
| Well Gas (value) | N/A | N/A | $ 0.18375 | N/A | Well gas |

-Electric rates will be either the then current market rates at the time of the annual calculations or those described above, whichever are greater.
-Fuel rates will be either the then current market rates at the time of the annual calculations or those described above, whichever is less.
-All rates used for calculated savings were made using the rates applicable the school as denoted in the CEA.
-Heating value of natural gas is stipulated at 1.00 therms per ccf.

**3.2 Baseline Utility Usage**
The baseline energy used for modeling and calculating the annual guaranteed savings will be:

| ELECTRIC | | Peak kW | kWh |
|---|---|---|---|
| 5/9/2003 | 6/10/2003 | 160 | 57700 |
| 6/10/2003 | 7/10/2003 | 140 | 46400 |
| 7/10/2003 | 8/8/2003 | 89 | 37800 |
| 8/8/2003 | 9/9/2003 | 141 | 46300 |
| 9/9/2003 | 10/8/2003 | 146 | 54800 |
| 10/8/2003 | 11/5/2003 | 161 | 55600 |
| 11/5/2003 | 12/9/2003 | 158 | 64400 |
| 12/9/2003 | 1/9/2004 | 184 | 53000 |
| 1/9/2004 | 2/9/2004 | 181 | 57700 |
| 2/9/2004 | 3/9/2004 | 179 | 52600 |
| 3/9/2004 | 4/8/2004 | 164 | 57100 |
| 4/8/2004 | 5/10/2004 | 177 | 53200 |

| NATURAL GAS | | therms |
|---|---|---|
| 5/1/2003 | 6/1/2003 | 1849 |
| 6/1/2003 | 7/1/2003 | 21 |
| 7/1/2003 | 8/1/2003 | 0 |
| 8/1/2003 | 9/1/2003 | 0 |
| 9/1/2003 | 10/1/2003 | 31 |
| 10/1/2003 | 11/1/2003 | 445 |
| 11/1/2003 | 12/1/2003 | 3056 |
| 12/1/2003 | 1/1/2004 | 4645 |
| 1/1/2004 | 2/1/2004 | 20910 |
| 2/1/2004 | 3/1/2004 | 16858 |
| 3/1/2004 | 4/1/2004 | 13141 |
| 4/1/2004 | 5/1/2004 | 7031 |

## SCHEDULE "E" CERTIFICATE OF SUBSTANTIAL COMPLETION AND ACCEPTANCE

Project No:
Contract For:
Contract Date:

PROJECT:


To Owner:


Date of Issuance:
Project or Designated Portion Shall Include:



The work performed under this Contract has been reviewed and found, to the best knowledge, information and belief, to be substantially complete.  Substantial Completion is the stage in the progress of the work when the work or designed portion thereof is sufficiently complete in accordance with the contract documents so the Owner can occupy or utilize the work for its intended use.

The date of substantial completion of the project or portion thereof designated above is hereby established, as _____which is the date of commencement of applicable warranties required by the contract documents, except as stated below:


_____          _____

Atlantic Energy Services                                    Date



_____          _____

Owner                                                           Date

## SCHEDULE "F" EXTENDED MAINTENANCE AND SERVICE

The following itemization sets forth the responsibility between Agency and ATLANTIC ENERGY SERVICES for extended maintenance and servicing of the ECM's. The warranty obligations set forth in this Schedule are in addition to those set forth in Section 12 of this Agreement.

### Exterior Door Weather-stripping

Agency: Shall provide, through an approved contractor or by qualified, in-house personnel, the regular inspection and preventive maintenance routine prescribed by the manufacturer including, but not limited to, the following:

1. Door hardware shall be lubricated per the manufacturer's recommendations.
2. Weather stripping shall be inspected annually and repaired as required.
3. Any and all labor pertaining to the fulfillment of a manufacturer's warranty.
4. Any and all paperwork pertaining to the fulfillment of a manufacturer's warranty.
5. Replacement of failed exterior door weather stripping not covered under warranty.

Maintenance records of work performed on the doors and weather-stripping are to be kept by the Agency.

ATLANTIC ENERGY SERVICES: Shall provide coordination for the fulfillment of a manufacturer's or installer's warranty, not to include any labor pertaining to the replacement of failed doors or door hardware.

### DDC System

Agency: Shall provide, through an approved manufacturer's representative or by qualified, in-house personnel, the regular inspection and preventive maintenance routine prescribed by the manufacturer including, but not limited to, the following:

1. System Application Support

   a. Database backup
   b. Database verification
   c. Software upgrades, if required
   d. Firmware upgrades, if required
   e. System training
   f. Existing equipment currently under vendor contract

2. Preventive Maintenance Inspections on the following system equipment.

3

Computer
a.  Modem
b.  Monitor
c.  Printer
d.  Graphic Software
e.  Network Software
f.  Main Controllers
g.  Zone Controllers
h.  Flow Transducers
i.  kWkWh Transducers
j.  Current Transducers
k.  Temperature Sensors

3.  Emergency service, 24 hours per day, 7 day per week
4.  Repair Labor
5.  Repair or replacement of worn parts

A copy of maintenance records of work performed on the DDC system will be supplied to the Agency by ATLANTIC ENERGY SERVICES upon request.

ATLANTIC ENERGY SERVICES: None, including any labor or coordination for the fulfillment of the equipment service routines pertaining to the replacement of failed geothermal well equipment or well gas production and distribution equipment.

## Geothermal Well and Well Gas Production Equipment

Agency: Shall provide through an approved contractor or by qualified, in-house personnel, the regular inspection and preventive maintenance routine once per month to including, but not limited to, the following:

1.  Visually inspect filter differential pressure gage and replace filter if necessary.
2.  Visual inspection of level in odor bottle and needle valve position, fill bottle if necessary.
3.  Visual inspection of screen on service regulator relief valve, and clean screen if necessary.
4.  Fill alcohol drip tank.
5.  All preventative maintenance routines recommended by Field Service, Inc.
6.  Repair or replacement of worn or failed parts.

Maintenance records of work performed on the geothermal well and well gas production equipment are to be kept by the agency.

4

ATLANTIC ENERGY SERVICES: None, including any labor or coordination for the fulfillment of the equipment service routines pertaining to the replacement of failed geothermal well equipment or well gas production and distribution equipment.

## Boilers

Agency: Shall provide a preventive maintenance routine which follows all manufacturer's recommendations for daily operating and preventive maintenance functions for new boiler(s).

Agency: Preventive Maintenance:

1. Major Annual Service (as applicable to specific equipment)

   a. Test fire unit
   b. Check flame signal
   c. Check operation of operating controller
   d. Provide combustion analysis
   e. Repair or replacement of worn or malfunctioning parts.

2. Preventive Inspection Services (as applicable to specific equipment)

   a. Check burner and pilot assembly. Inspect electrodes
   b. Check pilot and main flame signal
   c. Check limit and safety controls
   d. Check operation and lubrication of all linkages
   e. Check water temperature when firing
   f. Measure and record combustion efficiency
   g. Analysis of system equipment
   h. Repair or replacement of worn or malfunctioning parts.

3. Warranty

   a. Shall provide coordination for the fulfillment of the manufacturer's warranty on any new boiler installed, not to include any labor pertaining to the replacement of a failed boiler.

A copy of maintenance records of work performed on the boiler system shall be available upon request.

ATLANTIC ENERGY SERVICES: None, including any labor or coordination for the fulfillment of the equipment service routines pertaining to the replacement of failed boiler or boiler system equipment or heating distribution equipment.

5

## Motors, Pumps, and Mechanical Specialties

To include all mechanical equipment installed to support operation of boiler and cogeneration unit, including connections to existing building mechanical equipment but not including boiler and cogeneration skidded units covered separately.

Agency: Shall provide through an approved contractor or by qualified, in-house personnel, the regular inspection and preventive maintenance routine prescribed by the manufacturer of the mechanical component, including, but not limited to, the following:

1. Motors
2. Pumps
3. Valves and fittings
4. Piping
5. Insulation for pipes, valves and fittings
6. Repair or replacement of worn, damaged or malfunctioning parts.

Maintenance records of work performed on the motor systems shall be kept by the agency.

ATLANTIC ENERGY SERVICES: Shall provide coordination for the fulfillment of a manufacturer's warranty upon request, not to include any labor pertaining to the repair or replacement of failed mechanical equipment.

## Electrical Gear

To include all electrical equipment installed to support operation of boiler and cogeneration unit, including connections to existing building electric service but not including electric gear integral to boiler and cogeneration skidded units covered separately.

Agency: Shall provide through an approved contractor or by qualified, in-house personnel, the regular inspection and preventive maintenance routine prescribed by the manufacturer of the mechanical component, including, but not limited to, the following:

1. Wiring
2. Isolation transformer
3. Relays and motor starters
4. Beckwith generator protection equipment
5. Repair or replacement or worn or malfunctioning parts

Maintenance records of work performed on the electric systems shall be kept by the agency.

ATLANTIC ENERGY SERVICES: Shall provide coordination for the fulfillment of a manufacturer's

warranty upon request, not to include any labor pertaining to the repair or replacement of failed electrical equipment.

A manufacturer's warranty will cover all newly installed electrical and cogeneration and related equipment for one (1) year from substantial completion of the installation.

This warranty covers parts and labor for repair of defective equipment.  It does not cover damages to equipment due to improper use or abuse as described in Section 15 of this agreement.

## SCHEDULE "G" PAYMENT SCHEDULE

The project is estimated to require 180 days from on site commencement through end of construction. The following represents the Payment Schedule.

Billing / Invoice Schedule

| | |
|---|---|
| Execution of Agreement | 35% |
| 30 Days — Mobilization | 10% |
| 60 Days — Gas Well Construction & Cogeneration Mechanical Room preparation/ Weatherization work | 15% |
| 90 Days — Install Equipment | 20% |
| 120 Days — Equipment Start-up/Commissioning | 15% |
| 150 Days — Final Retainage Payment | 5% |

8