IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TECOGEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-11823 RCL |
| | ) | |
| v. | ) | |
| | ) | |
| AEGIS ENERGY SERVICES, INC., | ) | July 28, 2008 |
| AEGENCO, INC., and AEGIS | ) | |
| GENERATION COMPANY | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants respectfully note that many of the "facts" in plaintiff's statement of material facts include attorney argument or gloss to which defendants take exception. Defendants further note that many of these "facts" are not used in plaintiff's motion for partial summary judgment, and were not presented in support thereof. Plaintiff apparently has taken an opportunity to try and tell its side of the case to the Court through its version of a Statement of Undisputed Facts. Defendants submit that this is not the proper vehicle for attorney argument. Defendants have attempted to identify where there is dispute or denial of the asserted facts.

1. Undisputed.

2. Denied. Aegis has relocated to 55 Jackson Street, Holyoke, MA 01040.

3. Denied. Aegis has relocated to 55 Jackson Street, Holyoke, MA 01040.

4. No response required.

5. Undisputed.

6. Denied. It is undisputed that Tecogen's self-supporting statements, brochure, and supporting literature make these claims.

7. Denied. It is undisputed that Tecogen's brochure and supporting literature make these claims.

8. Denied. Tecogen development was sporadic and limited in scope from 1977 through 2005. Trial testimony will refute Tecogen's claims.

9. Denied. Tecogen has sold directly to end users. Trial testimony will refute Tecogen's claim.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Denied. Tecogen did not give Aegis an exclusive distributorship. Tecogen's affiliate, AmericanDG ("ADG") competed directly with Aegis in this market. Ohmstead Deposition, p.86, ll.3- p.90, l.19; Defendants' Exhibit I.

14. Denied. Plaintiff's statement mischaracterizes Spiro Vardakas' testimony, and Defendants' answer. It is undisputed that Aegis designed, installed, and serviced cogeneration systems in Massachusetts and Connecticut that used Tecogen Modules.

15. Denied. It is undisputed that as of June 2005, neither Aegis Energy nor any of the other Defendants was an exclusive distributor for Tecogen Modules in the State of New York, south of Orange and Dutchess Counties. Defendants' Answer, ¶ 14.

16. Denied. Plaintiff's statement mischaracterizes Lee Vardakas' Testimony. L. Vardakas Dep. at 16.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed. Defendants do not deny that plaintiff's letter of Exhibit 10 has been quoted correctly.

21. Undisputed. Defendants do not deny that plaintiff's letter of Exhibit 10 has been quoted correctly. Defendants note that 1993 proposed agreement was not signed.

22. Defendants do not deny that plaintiff's letter of Exhibit 10 has been quoted correctly. Defendants have not verified, but do not dispute ADG's date of incorporation.

23. Denied. Defendants cannot substantiate the veracity of Panora's testimony regarding the creation of plaintiff's affiliate. Defendant has a different impression of ADG as a competitor of Aegis, and will refute this statement with trial testimony.

24. Denied as to "Tecogen kept Aegis informed of the creation of AmericanDG and plans for the company as they began to evolve." Undisputed as to S. Vardakas' testimony.

25. Undisputed as to S. Vardakas' selected testimony as to "learning quite a bit about AmericanDG during the end of '02 in discussion with Tecogen and its principals." Any mischaracterization of what exactly Aegis learned about ADG will be refuted with trial testimony.

26. Defendants do not deny that ADG's self-supporting press release makes this statement.

27. Undisputed.

28. Denied. Defendants do not deny that the letter dated August 1, 2002 has been quoted correctly. Plaintiff mischaracterizes S. Vardakas' deposition testimony and the extent of shared savings agreements on Aegis' business, and any such mischaracterization will be refuted with trial testimony.

29. Undisputed as to the statement quoted from the testimony of S. Vardakas to Mass. DTE at 3. Deny as to the mischaracterization of S. Vardakas' deposition testimony.

30. Undisputed.

31. Undisputed.

32. Undisputed as to S. Vardakas' deposition testimony that Aegis did not offer Tecogen that Aegis was developing and then installing Aegen modules. S. Vardakas also stated that it was assumed Tecogen was aware of the Aegen cogeneration modules

through direct competition on a project in New York (Augustana) with a Tecogen sales representative.

33. Denied. The statement mischaracterizes S. Vardakas' testimony.

34. Denied. Statements mischaracterize a comparison of Aegis' cogeneration module with Tecogen's cogeneration module. See, e.g., Panora Deposition, p.125, 1.14 – p.136, 1.5.

35. Denied. Statement mischaracterizes L. Vardakas' testimony. See, e.g., L. Vardakas Dep., p.158, ll.18-21.

By way of introduction to this section, Aegis takes exception to Tecogen's characterization of certain sales as "Secret" sales. This characterization reflects attorney argument, not fact.

36. Undisputed.

37. Denied. It is undisputed that the letter includes a diagram with the words "teco-drive". Statement mischaracterizes S. Vardakas' testimony, which will be refuted with trial testimony.

38. Denied. Statement mischaracterizes S. Vardakas' testimony. See, S. Vardakas Dep., p.71, ll.17-18.

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. Denied. Statement mischaracterizes activities leading up to the installation of a share saving plan for Whitney Place. Mischaracterized statements will be refuted with trial testimony.

43. Denied. Statement mischaracterizes S. Vardakas' testimony. <u>See</u>, S. Vardakas Dep., p.145, l.12. Statement mischaracterizes Glick's testimony as to what Tecogen knew. At least one ADG employee, Robert Olmstead, was aware of Aegis' activity at Whitney Place prior to this lawsuit.

44. Undisputed.

45. Undisputed.

46. Undisputed.

47. Denied. Statement mischaracterizes S. Vardakas' testimony. It is undisputed that Aegis did not tell Tecogen it was in discussions with Augustana to install an Aegen module at that site. S. Vardakas Dep., p.68, ll.4-8. Aegis made no attempt to conceal this information, and had bid directly against a Tecogen sale representative for the project. S. Vardakas Dep., p.68, l.24 – p.69, l.7.

48. Undisputed.

49. Denied. Statement mischaracterizes deposition testimony of S. Vardakas and Glick.

50. Denied as to what Tecogen may have learned and when. Aegis does not dispute that Ray Hickey worked on the Chemung County bid.

51. Denied as to what Tecogen's actual intentions may have been. Aegis does not dispute Exhibits 21 or 22 were sent from Glick to Hickey.

52. Denied. Trial testimony will show that Atlantic Energy is an Energy Service Company or a Performance Contractor, not a shared savings consultant.

53. Denied as to Tecogen's *characterization* of Exhibits 14 and 24. Aegis does not dispute the facts of Exhibit 24. Statement mischaracterizes the deposition testimony of T. Casabonne.

54. Undisputed.

55. Denied. Statement mischaracterizes Exhibit 26. Exhibit 26 is not a statement of T. Casabonne. It is a note written by Glick. The note does not state "Tecogen modules for the Chemung project."

56. Denied. It is not known if Atlantic had the authority to "hire" the engineering firm. Exhibits do not support this statement.

57. Denied. Statement mischaracterizes T. Casabonne's testimony. See, e.g., p.119, ll.1-4. Aegis does not dispute that Exhibit 27 gives a list of attendees.

58. Undisputed.

59. Undisputed.

60. Undisputed.

61. Undisputed.

62. Undisputed that Exhibit 28 is an email stating that maintenance contract for Chemung County is attached. There is no mention of a Lakeland Project maintenance contract in the email.

63. Denied. Statement mischaracterizes Exhibit 29. It is undisputed that on or about January 24, 2005, a large packet of documents concerning the Chemung County project

was sent to NYSEG as part of the preliminary review of the project. It is undisputed that this document included a discussion of Tecogen modules.

64. Undisputed.

65. Denied as to dates. Aegis does not dispute that Tecogen assisted Atlantic and the project engineer with technical questions about Tecogen modules.

66. Denied as to unverified and unsupported information concerning Ray Hickey's relationship with Tecogen and Advance Comfort Systems. Aegis does not dispute that Advanced Comfort sent a quote to Atlantic Energy on or about January 26, 2005.

67. Aegis does not dispute that Advanced Comfort sent a revised price quotation to Atlantic Energy on or about March 1, 2005. Aegis notes that Exhibit 33 includes a second revision by T. Casabonne, dated August 1, 2005 on the same document.

68. Undisputed.

69. Undisputed.

70. Denied as to Atlantic initially requesting a price quotation. See, e.g., Casabonne Dep., p.17, ll.11-22. Aegis does not dispute that the email of Exhibit 35 was sent by Glick to Brock, with a copy to Casabonne. Aegis does not dispute that Tecogen provided Atlantic with a price quote for the sale and maintenance of 25 Tecogen Modules, including four for the Chemung County Project.

71. Undisputed.

72. Denied. Supporting evidence of Casabonne Deposition does not support statement. Aegis does not dispute that *Aegenco* sent a price quotation to Atlantic Energy on June 14, 2005 for the Chemung County Project.

7

73. Denied. Aegis does not dispute that Aegenco was incorporated, or that Aegenco sent a price quotation on June 16, 2005 to Atlantic Energy for the Chemung County Project. Aegis denies that five additional cogeneration modules were for the Lakeland Project.

74. Aegis does not dispute that it received a purchase order from Atlantic for the Chemung County Project. Aegis does not dispute that the purchase order states that the PO is contingent upon the design engineer's approval of the Aegen unit as an acceptable substitute to the Tecogen CM-75 Integrated module. Aegis notes that there is no "terms and conditions" attached to Exhibit 38, but does not dispute that Exhibit 38 was correctly quoted.

75. Denied. Supporting evidence is mischaracterized. Letter of Exhibit 39 does not state that a review was complete, or that the review was based on Tecogen modules, or that NYSEG was "ready to move on to the next stage". Referenced Casabonne Deposition testimony does not support this letter. Trial testimony will show that the initial, preliminary review is only an official notification, and a thorough review only starts after payment of the required fee.

76. Aegis does not dispute that the June 27, 2005 email exchange was correctly quoted. Through trial testimony, Aegis will dispute the asserted requirement of "another full preliminary review and preliminary review fee."

77. Undisputed.

78. Denied as to what Gary Morenus actually stated. It is undisputed that a meeting was held to discuss, *inter alia*, the cogeneration module change from a Tecogen module to an Aegen module.

79. Undisputed.

80. Undisputed as to the statement in the email being correctly quoted.

81. Undisputed as to the statement in the email being correctly quoted.

82. Denied as to Atlantic's understanding. Aegis does not dispute that Mr. Casabonne testified that he understood Clough Harbour's concern was that they would need to reevaluate the document that had been submitted to the utility for the interconnect approval. Aegis does not dispute that Mr. Casabonne believed that concerns of a time delay or that the documents would not be approved were brought up. Casabonne Dep., p.10, ll.9-18.

83. Denied as to attorney comparison. Denied as to mischaracterization of the data in Exhibit 43. Aegis notes that Exhibit 43 at 001807 includes approval for the certification of a Beckwith Electric Intertie/Generator Protection Relay, which was proposed with the Aegen cogeneration module, thus allowing the Aegen cogeneration module to be completely certified *without* being listed in this chart. Trial testimony will support this. See also, S. Vardakas Dep., p.153, ll.22-24.

84. Undisputed as to the statement in the email being correctly quoted.

85. Denied. Daniel Westbrook of NYSED asked Martin Weber of Dodge Chamberlin, the architect for the *Lakeland Project* (not Chemung County) asked if each individual component in the Aegen cogeneration module was listed/labeled and what are the standards. Mr. Weber replied, "FYI per your request. This analysis indicates that the substituted product is superior in all respects to the originally designed and specified cogen units. The complaint filed by Teco-gen is completely without merit." Exhibit 45, at 2.

86. Denied as to characterization ("only two sites at which Aegen Modules had been installed and were operating as of that date"), or that Lee Vardakas sent the email. Aegis does not dispute that John DaSilva sent a July 11, 2005 email to Tim Casabonne of Atlantic Energy giving Mr. Casabonne references of Augustana Lutheran and JML Care Center.

87. Denied as to the attorney argument. Trial testimony will show that Tecogen "added its voice to the chorus of concerns" sooner than July 18, 2005. It is undisputed that Tecogen sent a letter to Chemung dated July 18, 2005. The contents of the letter are in dispute. See, responses to Nos. 83 and 85, *supra*. See also, Lee Vardakas Dep., p.129, l.2-p.133, l.16.

88. Denied. The contents of this letter are in dispute. Aegis will refute the contents of this letter with trial testimony. See, responses to Nos. 83 and 85, *supra*. See also, Lee Vardakas Dep., p.129, l.2-p.133, l.16.

89. Denied. Lee Vardakas Dep., p.129, ll.2-21.

90. Denied as to mischaracterization of Casabonne's testimony. Casabonne testified that the July 18, 2005 letter came *before* any meeting. Casabonne Dep., p.16, ll.10-17.

91. Denied as to the mischaracterization of Exhibit 48. Robert Page states that he has been contacted a couple of times *by Tecogen*. He further states that similar concerns have been raised by the County's Building and Grounds Dept. He does not give a timeline as to whether the Building and Grounds Dept. raised their concerns before Tecogen's repeated contacts.

92. Denied as to mischaracterization of Casabonne's testimony. See, Casabonne Dep., p.162, ll.5-9. Aegis does not dispute that Casabonne's notes state, "Lee Vardakas gave

presentation to group, three years in production, two years in service." Aegis disputes that Lee Vardakas stated Aegis would provide a list of references for twelve plus or minus sites with Aegen cogeneration modules. Trial testimony will support this.

93. Denied. Trial testimony will show that CHA was uncertain if a preliminary application had to be resubmitted.

94. Denied as to mischaracterization that whole "group" had the stated concern. Aegis does not dispute that Casabonne stated in deposition testimony his understanding of the discussion was that "going with the Aegen equipment would require additional review time by Clough Harbour, potential resubmissions to the Department of Health, NYSERDA and utility, NYSEG, which would delay the schedule."

95. Aegis does not dispute that Casabonne stated in deposition testimony his understanding that Clough Harbour had a concern about resubmittal to NYSEG.

96. Aegis does not dispute that Casabonne stated in deposition testimony his understanding that Clough Harbour made a statement that documentation was needed from Aegis; packaged unit must be type-tested in New York State.

97. Denied. Tecogen was attempting to covertly obtain Aegis' purchase order so it could under bid and dislodge Aegis from the Chemung County Project. Defendants' Exhibit CC.

98. Denied as to mischaracterization of cost of cogeneration modules. Exhibit 50, at 3, and at T0063. Aegis does not dispute Casabonne's July 27, 2005 email.

99. Undisputed.

100. Denied as to mischaracterization of Exhibit 52 that switch to Aegen units *would* delay the project. See, Exhibit 52, "County *feels* that changing the cogen units at this stage of the project will cause delays and is not acceptable."

101. Undisputed that the minutes are correctly quoted.

102. Denied. Exhibit 10 does not support all of the assertions of this paragraph. Aegis does not dispute that New York State was a non-exclusive territory for Tecogen sales representatives.

103. Aegis does not dispute that the email Brian Willemsen of R.L. Kistler sent to Glick on December 19, 2003 discusses the issue of engineering credit for the Lakeland Project. Aegis does not dispute that Tecogen was aware that Aegis was bidding on the Lakeland Project at least as early as December 2003.

104. Aegis does not dispute the email from Glick to Lee Vardakas on June 30, 2004. The first page of Exhibit 54 is not related to this email, and is not addressed.

105. Undisputed.

106. Aegis does not dispute that Tecogen is listed as an acceptable manufacturer for the Lakeland Project. Aegis disputes any implication that the contract award must go to a listed manufacturer. Cafer Dep., p.21 @ 10:30 – p.25 @ 10:35, Defendants' Exhibit FF.

107. Denied. Trial testimony will show that Tecogen's integrated module is not shipped as one complete package. Tecogen's integrated modules must be broken down, shipped, and then reassembled at the project site.

108. Aegis does not dispute that Tecogen's 6/30/04 letter of transmittal to Atlantic Energy identifies photos of a recent integrated installation, although no photographs

have been presented. Aegis does not dispute that Tecogen's fax to Energy Concepts seeks Energy Concepts' support to allow Tecogen to supply an integrated Tecogen CM-75 module for the Lakeland Project.

109. Aegis does not dispute that Tecogen assisted with technical and engineering questions regarding Tecogen modules in the August 2004 – March 2005 timeframe. Aegis disputes any implication that the contract award must go to an acceptable manufacturing entity listed in government standardized applications, when in fact, any equal and comparable equipment may be accepted. Cafer Dep., p.21 @ 10:30 – p.25 @ 10:35, Defendants' Exhibit FF.

110. Aegis does not dispute that Casabonne's Deposition transcript at 54-55 is accurately restated by plaintiff. Aegis disputes any implication that the contract award must go to an acceptable manufacturing entity listed in the specifications, when in fact, any equal and comparable equipment may be accepted. Cafer Dep., p.21 @ 10:30 – p.25 @ 10:35, Defendants' Exhibit FF.

111. Aegis does not dispute that the Bid Addendum of October 2004 adds five Tecogen drawings for clarification of the cogeneration equipment. Aegis disputes any implication that the contract award must go to the manufacturing entity listed in specification, when in fact, any equal and comparable equipment may be accepted. Cafer Dep., p.21 @ 10:30 – p.25 @ 10:35, Defendants' Exhibit FF.

112. Denied as to when bids were due. Exhibit does not indicate or support a precise due date. Aegis does not dispute the November 5, 2004 date Advanced Comfort sent a price quotation to J&M heating and A/C, Inc. Aegis does not dispute that this bid includes a Tecogen Integrated model CM-75-LE.

113. Aegis does not dispute the contents of the February 10, 2005 facsimile from Glick to Hickey. Exhibit 61 by itself does not support that this facsimile is for the Lakeland Project.

114. Aegis does not dispute that J&M Heating and A/C, Inc. was the mechanical contractor responsible for purchasing and installing the cogeneration modules at Lakeland. Aegis does not dispute that Advanced Comfort sent a price quote to J&M on or about February 11, 2005, which identified an integrated cogeneration module. The Exhibit does not identify a "New York Commission".

115. Denied. Statement mischaracterizes S. Vardakas' testimony. See, S. Vardakas Dep., p.114, l.21 – p.115, l.1 ("He [J&M] indicated that he didn't like the Tecogen rep that was involved in the project and didn't want to do business with him and would we give him a price.").

116. Undisputed.

117. Denied. See, S. Vardakas Dep., p.57, ll.8-9 ("I know we competed with All Systems in the metropolitan down state New York."). Trial testimony will show that Aegis had bid Tecogen modules against a Tecogen sales representative, and had bid Aegen modules against Tecogen modules, before the Lakeland Project. See also, Ohmstead Deposition, p.86, ll.3- p.90, l.19, Defendants' Exhibit I.

118. Denied. Tecogen was well aware before April 18, 2005 that Aegis was involved in the Lakeland Project. See, Response to No. 103 above.

119. Denied as to why J&M sent a purchase order to Aegis for 11 Tecogen modules for the Lakeland Project. The proffered exhibit does not support plaintiff's assertion. Aegis does not dispute that Aegis received a purchase order from J&M, the mechanical

contractor responsible for purchasing and installing the cogeneration modules at Lakeland, on April 27, 2005.

120. Denied as to what Advanced Comfort knew or did not know. The proffered exhibit does not support plaintiff's assertion. Tecogen was well aware before April 18, 2005 that Aegis was involved in the Lakeland Project. See, Response to No. 103 above. Aegis does not dispute that the facsimile from Advanced Comfort to J&M discusses the February 11, 2005 quotation.

121. Aegis does not dispute that sales representatives and dealers were sent an interoffice memorandum from Wes Schuster on or about May 2, 2005. Denied as to whether Tecogen had been experiencing "material price increases at a rate that has been unprecedented," or whether Tecogen had been absorbing the cost increases. Exhibit states these self-supporting assertions without an underlying basis.

122. Denied. The proffered exhibit does not support plaintiff's assertions.

123. Denied. The proffered exhibit does not support what or when Tecogen knew about Aegis' involvement in the Lakeland Project. Trial testimony will show that there was only one project in New York with more than 10 cogeneration modules; the Lakeland Project. See, Response to No. 103 above.

124. Denied. Trial testimony will refute the delay in payments to Tecogen, and demonstrate that it was acceptable and anticipated that Tecogen would get reimbursed as payments were made by the end user on individual projects. Trial testimony will also show that Aegis was a successful purchaser and installer with many projects involving Tecogen cogeneration modules. See also, Glick Dep., p.45, ll.9-18.

125. Aegis does not dispute that it received a price quotation from Tecogen on May 6, 2005 that identified emissions controls unit shipped loose, not integrated, for the Lakeland Project, which included terms and conditions for payment net 15 days. Aegis does not dispute that this price quotation included a commission to the Tecogen representatives who were involved in the presale activities.

126. Undisputed.

127. Denied as to attorney argument. Aegis does not dispute that it sent a purchase order on May 17, 2005 that had the same terms and conditions as its May 2, 2005 purchase order.

128. Denied. Glick Dep., p.93, ll.9-18; Defendants' Exhibit EE.

129. Denied as to when Tecogen knew Aegis was manufacturing its own cogeneration modules. S. Vardakas Dep., p.68, l.24 – p.69, l.8.

130. Denied. Trial testimony will demonstrate that Tecogen took aggressive action to dislodge Aegis from its purchase order with J&M. See also, Glick Dep. p.41, l.23 – p.42, l.12; p.103, l. 14 – p.104, l.8; Exhibit EE.

131. Denied. The proffered statements are not supported by the Exhibit or Casabonne's testimony. Aegis does not dispute that Glick offered a meeting with Atlantic Energy in a May 23, 2005 email. Trial testimony will also show that Tecogen was competing with Aegis in servicing Tecogen cogeneration modules.

132. Denied. Casabonne Dep., p.17, ll.11-22.

133. Denied. Casabonne Dep., p.17, ll.11-22.

134. Undisputed.

135. Denied. Trial testimony will show that Aegis did discuss servicing the cogeneration modules on the Lakeland Project prior to June 13, 2005.

136. Undisputed.

137. Undisputed.

138. Undisputed.

139. Undisputed as to what was stated in the June 21, 2005 letter to Aegis (including Tecogen's veiled threat of Tecogen being put in a "quandary" by Aegis for Tecogen's acceptance of Aegis' purchase order and Tecogen's subsequent ordering of parts for the cogeneration modules one day after receiving Aegis' May 18, 2005 purchase order). Glick Dep., p.78, ll.6-11; p.93, ll.9-18; Defendants' Exhibit EE.

140. Undisputed.

141. Denied as to Tecogen's reasons for terminating its relationship with Aegis. The proffered exhibit does not support this assertion. Aegis does not dispute that Tecogen terminated its relationship with Aegis on June 24, 2005.

142. Denied as to Tecogen's reasons for sending letters to Atlantic and Lakeland. See, Glick Dep., p.116, ll.1-12, Defendants' Exhibit EE; July 22, 2005, email from Mr. Wes Schuster, Defendants' Exhibit CC.

143. Denied as to attorney argument. Aegis does not dispute that Aegen cogeneration modules were ultimately installed. However, trial testimony will show that Aegis' reputation and goodwill was compromised, and that this required costly, intense, and aggressive efforts on Aegis' part to repair the damage. In that regard, the outcome did change, and trial testimony will show that the value and profit of the Lakeland Project realized by Aegis was diminished.

144. Aegis does not dispute that Casabonne's testimony has been correctly quoted.

                                        Respectfully submitted,

                                        **AEGIS ENERGY SERVICES INC., and AEGENCO, INC.**

Date: July 28, 2008            By:    /s/ Robert Curcio
                                                  Anthony P. DeLio
                                                  Peter W. Peterson
                                                  Robert Curcio
                                                  **DELIO & PETERSON, LLC**
                                                  121 Whitney Avenue
                                                  New Haven, CT  06510
                                                  Tel.: (203) 787 – 0595
                                                  Fax: (203) 787 – 5818
                                                  Attorneys for Defendants
                                                  *Pro Hac Vice*

                                                  William A. Zucker, BBO # 541240
                                                  David Himelfarb, BBO# 649596
                                                  McCARTER ENGLISH
                                                  265 Franklin Street
                                                  Boston, MA 02110
                                                  (617) 449-6500
                                                  Attorneys for Defendants

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS, was filed electronically on July 28, 2008. Notice of the filing will be sent to those who are currently on the list to receive email notices by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:   /s/ Robert Curcio
      Anthony P. DeLio
      Peter W. Peterson
      Robert Curcio
      DELIO & PETERSON, LLC
      121 Whitney Avenue
      New Haven, CT 06510
      (203) 787-0595
      Admitted *Pro Hac Vice*

      William A. Zucker, BBO # 541240
      David Himelfarb, BBO# 649596
      McCARTER ENGLISH
      265 Franklin Street
      Boston, MA 02110
      (617) 449-6500

      Attorneys for Defendants